# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SIMON and BEVERLY CHAVEZ,
on behalf of their minor son,
MATTHEW CHAVEZ,

       Plaintiffs,

vs.                                                                      No. CIV 05-380 JB/RLP

BOARD OF EDUCATION OF TULAROSA
MUNICIPAL SCHOOLS; the NEW MEXICO
PUBLIC EDUCATION DEPARTMENT; and
VERONICA GARCIA, Secretary of the
NMPED in her individual and official capacity,

       Defendants.

## MEMORANDUM OPINION AND AMENDED ORDER

**THIS MATTER** comes before the Court on the Motion of Defendants New Mexico Public

Education Department and Veronica Garcia to Dismiss First Amended Complaint, filed June 17, 2005

(Doc. 15). The Court held a hearing on this motion on September 7, 2005. The primary issues are

whether: (i) the Plaintiffs, Simon and Beverly Chavez, have exhausted their administrative remedies

against the New Mexico Public Education Department ("NMPED"); (ii) the Plaintiffs' claims satisfy

the Constitution's cases and controversies requirement; (iii) the Plaintiffs are aggrieved under the

Individuals with Disabilities Act (IDEA); and (iv) the Defendants have had notice and a reasonable

opportunity to comply with the final administrative order that was issued. The Court finds that the

Plaintiffs have exhausted their administrative remedies and that the harm they identify is actual,

particularized, and ongoing. Because the Court believes that the Plaintiffs, as prevailing parties, are

prohibited from seeking enforcement of the administrative order in question via the IDEA's judicial

review provision, however, the Court will grant the Defendants motion and dismiss the complaint.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs bring this action on behalf of their son, Matthew Chavez, a public school student who qualifies for receipt of special education based on autism.  He was enrolled in the Tularosa Municipal Schools, an educational agency within the meaning of the IDEA, 20 U.S.C. §§ 1400-1482. New Mexico law establishes the NMPED as the entity that supervises Tularosa and other local school districts.

The Plaintiffs were the prevailing parties according to the Administrative Appeal Officer's March 4, 2005 decision,  see Decision of the Administrative Appeal Officer, Jane B. Yohalem, March 2, 2005 ("AAO Decision").  The Plaintiffs allege that, upon initiating the hearing process, they requested the participation of the NMPED.  See Complaint ¶¶ 18-22, at 5-6.  The NMPED allegedly declined to take part in the process, and the Administrative Appeal Officer ("AAO") ruled that claims against the NMPED could not be heard within that process.  See id. ¶¶ 18-22, at 5-6; AAO Decision at 3.

The Plaintiffs allege that the NMPED's failure to provide Matthew with a free appropriate public education ("FAPE") or compel the Tularosa schools to do so has harmed Matthew.  See id. ¶¶ 21, 65, at 6, 12.  The Plaintiffs also move the Court to hold the NMPED jointly responsible for

---

[1] The Court issued an Order on March 31, 2006 (Doc. 58) denying the Motion of Defendants New Mexico Public Education Department and Veronica Garcia to Dismiss First Amended Complaint.  In that order, the Court included a footnote stating that it would issue an opinion fully detailing its rationale for deciding to deny the Defendant's motion at a later date.  In the course of writing that opinion, the Court developed a more complete understanding of the state of jurisprudence concerning the IDEA, one that has caused the Court to alter its findings with respect to the issues presented in the motion to dismiss. As such, the Court will reverse its previous order on the matter and proceed forward in accordance with the holdings in this Memorandum Opinion and Amended Order.

Matthew's lack of a FAPE and to award injunctive and compensatory relief.  See id., Prayer, at 13.
The Plaintiffs seek judicial enforcement or amendment of an administrative decision "entered in favor
of the Plaintiffs against Defendant Tularosa" pursuant to the IDEA, and judicial review of the same
administrative decision insofar as it denies Plaintiffs' request to join the NMPED in the administrative
hearing process.  See  Amended Complaint ¶¶ 17- 18, at 5, filed May 2, 2005 (Doc. 5)("Complaint").
The Plaintiffs also seek relief against the NMPED under the Americans with Disabilities Act, 42
U.S.C. §§ 12101-12213, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796.  See id. ¶¶ 67-
68, at 13.

## LAW REGARDING RULE 12(b)(6)

In deciding a rule 12(b)(6) motion, all well-pleaded factual allegations in the complaint are
accepted as true and viewed in the light most favorable to the plaintiffs.  See Stidham v. Peace
Officers Standards & Training, 265 F.3d 1144, 1149 (10th Cir. 2001).  The Court is not bound,
however, by conclusory allegations and legal conclusions.  See Hackford v. Babbitt, 14 F.3d 1457,
1465 (10th Cir. 1994).  A rule 12(b)(6) motion should be granted if it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claims entitling him to relief.  See Stidham v. Peace
Officers Standards & Training, 265 F.3d at 1149.

## LAW REGARDING EXHAUSTION

"The IDEA's mandate is explicit: plaintiffs must exhaust IDEA's impartial due process
hearing procedures in order to bring a civil action under sub-chapter II of IDEA or any 'such law[]
seeking relief that is also available' under sub-chapter II of IDEA."  Weber v. Cranston Sch. Comm.,
212 F.3d 41, 53 (1st Cir. 2000).  See Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1063 (10th
Cir. 2002)("We believe that both the language and the policy of the IDEA suggest that if a student

-3-

with a disability seeks to bring a claim for educational injuries, then he must plead and show either that he has exhausted his administrative remedies under the IDEA or that the relief he is seeking is not available under the IDEA."); Ass'n for Cmty. Living v. Romer, 992 F.2d 1040, 1043 (10th Cir. 1993)("Judicial review under 20 U.S.C. § 1415(e)(2) is normally not available until a plaintiff has exhausted the administrative remedies provided under §1415(b)(2) and (c)."). Exhaustion permits agencies to exercise discretion and expertise on issues within their specified purviews, allows technical issues and a factual record to develop fully before judicial review, prevents deliberate disregard of the administrative procedures Congress establishes, and avoids unnecessary judicial decisions by giving agencies an opportunity to correct errors. See Ass'n for Cmty. Living v. Romer, 992 F.2d at 1044 (citations omitted).

"Exhaustion is not required, however, where it would be futile or fail to provide adequate relief." Id. (citations omitted). Exhaustion is also not mandatory "where an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." Ass'n for Cmty. Living v. Romer, 992 F.2d at 1044 (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985), and citing Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303-04 (9th Cir. 1992), and Mrs. W. v. Tirozzi, 832 F.2d 748, 756 (2d Cir. 1987)). "Administrative remedies are generally inadequate or futile where plaintiffs allege structural or systemic failure and seek system-wide reforms." Id. (citing J.G. v. Bd. of Educ., 830 F.2d 444, 446-47 (2d Cir. 1987), and N.M. Ass'n for Retarded Citizens v. New Mexico, 678 F.2d 847, 851 (10th Cir. 1982)).

With respect to the State Complaint Review Procedure ("CRP"), formerly known as the Education Department General Administrative Regulations ("EDGAR"), and its relationship to exhaustion under IDEA, the United States Court of Appeals for the Tenth Circuit has held that

EDGAR is "not an adequate alternative to exhausting administrative remedies under the IDEA."
Ass'n for Cmty. Living v. Romer, 992 F.2d at 1045 (citation omitted).  In reaching that conclusion,
the Tenth Circuit stated:

> [The EDGAR procedures] did not further any of the other purposes of the exhaustion
> requirement. The EDGAR procedures are different in both purpose and scope from
> those in the IDEA and do not provide parents who file complaints with the same
> opportunities for a full administrative hearing and judicial review. Unlike EDGAR, the
> IDEA was carefully tailored to ensure that complainants receive the benefits of a full
> administrative hearing prior to seeking judicial review and that the reviewing court has
> the benefit of an administrative record.  Allowing plaintiffs to file EDGAR complaints
> in lieu of exhausting administrative remedies under the IDEA would undermine these
> important goals.

Id. at 1045 (internal citations and quotations omitted).  Other courts, including the First, Second, and
Ninth Circuits, and the District Court for the District of Minnesota, have agreed with the Tenth
Circuit's determination on the matter.  In Porter v. Board of Trustees of Manhattan Beach School
District, 307 F.3d 1064 (9th Cir. 2002), the Ninth Circuit stated that "[w]e are not aware of any court
that has held that the IDEA requires exhaustion of a state's CRP in addition to exhaustion of the due
process hearing system before filing suit for violations of the IDEA," and held:

> Requiring exhaustion of California's CRP to file suit based on a failure to implement
> an unappealed administrative order would add an additional step of administrative
> exhaustion not contemplated by the IDEA.  Once a due process hearing issues an
> order that is not appealed by either party, the IDEA requires that the order be treated
> as final.  No other administrative procedures are required to be exhausted.

Id. at 1070 (reasoning that where Congress sets forth a detailed exhaustion scheme, as in the IDEA,
courts generally lack discretion to add additional exhaustion requirements, and that requiring parties
to go through the CRP process would add an additional administrative step that the IDEA does not
contemplate; noting also that the U.S. Department of Education has never interpreted its CRP
regulations as creating a mandatory step before filing suit and that, according to the Department, CRP

is not intended to create a mechanism that must be exhausted in addition to the due process system)(citing Assistance to States for the Education of Children With Disabilities, 64 Fed. Reg. 12, 406, 12,646 (March 12, 1999)); Weber v. Cranston Sch. Comm., 212 F.3d at 53 ("The case law confirms that state and federal complaint procedures other than the IDEA due process hearing do not suffice for exhaustion purposes.  Even the CRP procedures, which implement IDEA, are 'not an adequate alternative to exhausting administrative remedies under IDEA.'"); Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 283 (3rd Cir. 1996)(finding no legal authority under which a court might require CRP exhaustion and remarking that the text of the CRP regulations and the Federal Register indicate that CRP is elective and not mandatory); Mrs. W v. Tirozzi, 832 F.2d 748, 758 (2d Cir. 1987)(explaining that the IDEA and its legislative history do not specify exhaustion of possible CRP remedies before commencing an IDEA action).  Thus, while the IDEA's due process hearing procedures must be exhausted before an IDEA action can be filed in federal court, the CRP procedures do not have to be exhausted.

## LAW REGARDING JUSTICIABILITY

Article III of the Constitution limits the jurisdiction of the federal courts to particular "cases" and "controversies."  To satisfy Article III's justiciability requirements, plaintiffs must have standing, their claims must not be moot, and their cases must be ripe.  To have standing, a plaintiff must show: (i) that he or she has suffered an injury in fact – an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (ii) that there is a fairly traceable causal connection between the injury and the defendant's conduct complained of; and (iii) that it is likely that a favorable decision will redress the injury.  See D.L.S. v. Utah, 374 F.3d 971, 974 (10th Cir. 2004); Morgan v. McCotter, 365 F.3d 882, 887-88 (10th Cir. 2004).

Claims become moot when the issues that they present are no longer "live" or the parties lack a legally cognizable interest in the outcome.  See City of L.A. v. Davis, 440 U.S. 625, 631 (1979). A claim may become moot if "(i) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (ii) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Id.  The burden of establishing mootness is a heavy one.  See id.

The ripeness doctrine focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention.  In determining whether a case is ripe, a court must evaluate the fitness of the issues and record presented for judicial review, and the potential hardship to the parties of withholding court consideration.  See Morgan v. McCotter, 365 F.3d at 890-91.  The fitness inquiry involves assessing whether uncertain or contingent future events may not occur as anticipated, and the hardship inquiry involves examining whether the challenged action creates a direct and immediate dilemma for the parties.  See id.

## LAW REGARDING AGGRIEVED PARTIES UNDER IDEA

20 U.S.C. § 1415(i)(2)(A) states, in its entirety, that:

Any party aggrieved by the findings and decision made under subsection (f) or (k) of this section who does not have the right to an appeal under subsection (g) of this section, and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

The United States Court of Appeals for the First Circuit has held that § 1415(i)(2)(A) of the IDEA provides that "[a]ny party aggrieved by the findings and decision made [in the final stage of the due process hearings] shall have the right to bring a civil action in a district court of the United

States." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 115 (1st Cir. 2003).  That provision,

according to the First Circuit in Nieves-Marquez v. Puerto Rico, permits a plaintiff who succeeds at

the administrative level to sue when the educational body neither appeals from, nor complies with,

the final administrative order.  See id. at 115-17.  In holding that such a plaintiff is a "party aggrieved"

for purposes of the IDEA, the First Circuit reasoned that:

> Congress could not have intended to leave plaintiffs without an IDEA statutory
> remedy when they succeed before the hearing officer and the school system does not
> appeal the administrative decision but simply fails to fulfill a continuing obligation to
> provide services.  Statutory phrases must be read not in isolation but in light of the
> statute's overall structure and intent.  Congress could not have intended for a school
> system to be in a better position under IDEA when it refuses to comply with a final
> administrative order and its continuing obligations than when it exercises its statutory
> right to appeal from the order.  Where the school system exercises its right to appeal,
> the court is empowered by IDEA to issue injunctive relief.  It cannot be that a court
> is powerless under IDEA to issue injunctive relief when the school system neither
> appeals from nor complies with a valid administrative order and its continuing
> obligations.  That would leave a gaping hole in IDEA's coverage.

See id. at 115-16 (internal citations omitted).  Additionally, the First Circuit concluded that a contrary

determination would undercut several of the IDEA's statutory policies:

> It would render virtually meaningless the guarantee of a FAPE. 20 U.S.C. § 1415(a).
> It would undercut the integrity of the administrative process, which parties are
> required to exhaust.  See § 1415(i)(2)(A).  It would be contrary to Congress's
> instruction that the administrative order be final unless appealed in a civil action.  §
> 1415(i)(1).  And [it] would produce long delays, contrary to IDEA's policies favoring
> prompt resolution of disputes in order to expedite the provision of FAPE to children
> who may be at a formative stage of economic development.

See id. at 116 (internal case citations omitted).

The Tenth Circuit has not addressed this issue, and there is some division among the courts

that have.  That division stems from interpretation of how Congress' 1986 amendment to the IDEA,

adding § 1415(l), interacts with the Supreme Court's decision in Smith v. Robinson, 468 U.S. 992

-8-

(1984).  In Smith, the Court held that the IDEA's predecessor statute created a comprehensive

remedy that barred application of § 1983.  Section 1415(l) provides, though, that:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures,
> and remedies available under the Constitution, the Americans with Disabilities Act of
> 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29
> U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with
> disabilities, except that before the filing of a civil action under such laws seeking relief
> that is also available under this subchapter, the procedures under subsections (f) and
> (g) of this section shall be exhausted to the same extent as would be required had the
> action been brought under this subchapter.

§ 1415(l).  Several circuit courts have interpreted § 1415(l) as effectively overruling Smith by

allowing § 1983 claims based on IDEA violations once administrative remedies have been exhausted.

See  Marie O. v. Edgar, 131 F.3d 610, 622 (7th Cir. 1997); Heidemann v. Rother, 84 F.3d 1021,

1032-33 (8th Cir. 1996); N.B. v. Alachua County Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996),

cert. denied, 519 U.S. 1092 (1997); W.B. v. Matula, 67 F.3d 484, 493-94 (3d Cir 1995);  Crocker

v. Tenn. Secondary Sch. Athletic Ass'n, 980 F.2d 382, 387 (6th Cir. 1992); Angela L. v. Pasadena

Indep. Sch. Dist., 918 F.2d 1188, 1193 n.3 (5th Cir. 1990); Mrs. W. v. Tirozzi, 832 F.2d 748, 753-55

(2d Cir. 1987).  The Tenth Circuit has held, in comparison, that § 1983 may not be used to remedy

IDEA violations, see Southwest Air Ambulance v. City of Las Cruces, 268 F.3d 1162, 1175 n.5 (10th

Cir. 2001), Padilla v. Sch. Dist. No. 1 in the City & County of Denver, 233 F.3d 1268, 1274 (10th

Cir. 2000).  The Tenth Circuit has recognized that a majority of the circuits have case law holding,

or at least implying, that § 1983 suits may be based on IDEA violations.  See Padilla v. Sch. Dist. No.

1 in the City and County of Denver, 233 F.3d at 1272 n.5.

   In holding the way that it did in Nieves-Marquez, the First Circuit noted that it had not

decided whether claims seeking to enforce IDEA administrative orders could be brought under §

1983.  The courts reaching determinations contrary to the First Circuit's either allow or sit within a circuit that allows IDEA enforcement actions to be brought under § 1983.  See Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d at 278-79 ("[W]hether or not an IDEA decision of a state hearing officer or appellate body is enforceable under IDEA directly, such a decision would seem to be enforceable under section 1983.");  Robinson v. Pinderhughes, 810 F.2d 1270, 1272-74 (4th Cir. 1987)(stating that plaintiffs did not have the right to appeal a favorable decision of the administrative hearing officer because they were not aggrieved, but noting that the plaintiffs could seek enforcement under § 1983); Moubry by & Through Moubry v. Indep. Sch. Dist. No. 696, 951 F. Supp. 867, 885, 886 n.13 (D. Minn. 1996)(ruling that the IDEA does not contemplate an action to enforce an administrative decision because jurisdiction is limited to parties that an administrative decision aggrieves, but recognizing that enforcement might be sought pursuant to § 1983); Reid v. Bd of Educ., Lincolnshire-Prairie View Sch. Dist. 103, 765 F. Supp 965, 969 (N.D. Ill. 1991)(granting motion to dismiss enforcement claim brought under the IDEA, but permitting Plaintiff to amend complaint to state a claim pursuant to § 1983).  Given that the Tenth Circuit has held in Southwest Air Ambulance and Padilla that § 1983 may not be used to remedy IDEA violations, that the Tenth Circuit has not stated an exception to that general rule for the purposes of enforcing IDEA administrative orders, and that it is doubtful that Congress would have contemplated the IDEA administrative process devoid of an ability to have its conclusions enforced, the First Circuit's position and rationale have strong force.  But cf. Miller v. Bd. of Edu. of the Albuquerque Pub. Schs. No. 05-502, 2006 WL 2786759, at *15-16, 22 (July 31, 2006)(Armijo, J.)(citing Robinson v. Pinderhughes, 810 F.2d at 1274-75 in noting that a school district's failure to comply with an administrative order in  favor of a student should be addressed under § 1983).

-10-

Nevertheless, the Court is concerned that the First Circuit's rationale for its decision is based almost entirely on policy grounds and not, first, on the language of the statute.  The Court finds more persuasive the United States Court of Appeals for the Fourth Circuit's decision in <u>Robinson v. Pinderhughes</u>:

> The federal statute provides that "any party aggrieved by the findings and decisions of a local hearing officer may appeal to the state educational agency."  20 U.S.C. § 1415(c). ... [T]he plaintiffs had neither the responsibility nor the right to appeal the favorable decision by the local hearing officer since they were not aggrieved by his decision.
>
> ****
>
> [T]he Education of the Handicapped Act ("EHA")(the IDEA's predecessor) insures benefits to handicapped children and requires participating states to set up an elaborate administrative procedure for deciding complaints.  The federal statute specifically provides for the finality of administrative orders. 20 U.S.C. § 1415(e)(1). It further provides access to state and federal courts for review of adverse administrative orders.  20 U.S.C. § 1415(e)(2).  But the statute does not contain any provision for enforcing final administrative orders.  Access to the courts is provided only to review adverse administrative orders, i.e. to the "party aggrieved." ... Thus, the plaintiffs are left with a favorable administrative decision which they are powerless to enforce. ...
>
> ****
>
> The statute in our case does provide an enforcement scheme when a claimant is faced with an adverse administrative decision; it does not provide, however, for enforcement of a favorable administrative decision.
>
> ****
>
> In our case, while the EHA was available to the child to have his substantive rights established, it was not available to him to have them enforced.
>
> ****
>
> We affirm the district court's dismissal of the plaintiff's claims brought under the EHA, 20 U.S.C. § 1415 ... [T]hey were not a party aggrieved by the hearing officer's decision. ...

The EHA provision ... providing for a cause of action and access to the courts states in pertinent part that: "Any party aggrieved by the findings and decisions [in the administrative proceedings] ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any state court of competent jurisdiction or in a district court of the United States. ..."

The plaintiffs here are not aggrieved. Thus, the statute does not provide for their access to either the state or federal courts. For that reason, their claim under the EHA was properly dismissed.

810 F.2d at 1272, 1273-74, 1275.

The Court is convinced that the Fourth Circuit's reading of the statute is more faithful to its language than the First Circuit's. Moreover, the First Circuit appears to be the only circuit that has come to the conclusion that it did.

The Fourth Circuit's position does not, however, totally foreclose relief in federal court to enforce a favorable administrative position. The Fourth Circuit in Robinson v. Pinderhughes went on to hold that, because of this gap in the EHA's enforcement scheme, the EHA enforcement mechanism is not sufficiently comprehensive and thus Supreme Court precedent does not preclude the relief authorized under § 1983. See 810 F.2d at 1274. Thus, the Fourth Circuit is of the opinion that plaintiffs may be permitted to pursue their remedy under § 1983. See id. at 1274-75. The reason that the Fourth Circuit's holding that § 1983 is available to enforce a favorable IDEA decision is important is that the Fourth Circuit has, like the Tenth Circuit, held that § 1983 cannot be used to remedy a violation of the IDEA. See Sellers v. Sch. Bd. of the City of Manassas, 141 F.3d 524, 529-32 (4th Cir. 1998), cert. denied, 525 U.S. 871 (1998). The Tenth Circuit in Padilla specifically cited the Fourth Circuit's decision in Sellers v. School Board of the City of Manassas for the proposition that § 1415(f) does not allow plaintiffs to sue under § 1983 for an IDEA violation and that § 1415 does not overrule Smith on that point. See Padilla, 233 F.3d at 1273. The Tenth Circuit in Padilla

-12-

stated:

> We agree with the Fourth Circuit that § 1415(f) left intact <u>Smith</u>'s implication that the
> EHA may not provide the basis for § 1983 claims.  <u>See Sellers</u>, 141 F.3d at 529-30.
> ... Based on these cases, it appears the Supreme Court considers <u>Smith</u> to be alive and
> well insofar as it asserts that § 1983 may not be used to remedy IDEA violations.
> Accordingly, we reverse the trial court's denial of the motion to dismiss Plaintiff's
> IDEA-based § 1983 claims against the school district, the board of education, and the
> individual defendants.

233 F.3d at 1273-74.

In <u>Sellers v. School Board of the City of Manassas</u>, the Honorable J. Harvey Wilkinson, Chief

Judge, conceded that § 1415(f) overruled much of <u>Smith</u>'s holding.  He drew a distinction between

constitutional violations and statutory violations.  He noted that "Section 1415(f) sensibly retains

IDEA's comprehensive scheme as the remedy for violations of that Act."  141 F.3d at 531.  The

Fourth Circuit then stated: "In light of the Court's holding in <u>Smith</u>, section 1415(f)'s effect on that

decision, and the spending power concerns implicit in the question of interpretation, we hold that the

<u>Sellers</u> cannot sue under section 1983 for alleged IDEA violations."  141 F.3d at 532.  At the end of

that sentence stating the holding, Chief Judge Wilkinson included footnote 6, which states:

> Because the Sellers do not contend that the defendants failed to abide by a final
> administrative order, then the case is not controlled by our decision in <u>Robinson v.
> Pinderhughes</u>, 810 F.2d 1270 (4th Cir. 1987).  In <u>Pinderhughes</u>, we found an
> exception to the Court's holding in <u>Smith</u> solely with respect to EHA's enforcement
> mechanism because it was not sufficiently comprehensive to preclude reliance on
> section 1983.  <u>Id.</u> at 1274.  The Seller's complaint, however, is based on the more
> general denial of a free appropriate public education and is therefore squarely
> controlled by <u>Smith</u>.

141 F.3d at 532 n.6.

In <u>Padilla</u>, when the Tenth Circuit cited <u>Sellers v. School Board of the City of Manassas</u> the

first time, it cited to pages 530-32.  The Court cannot, however, determine from that cite alone

-13-

whether the Tenth Circuit intended to adopt the <u>Pinderhughes</u> exception.  The Court does note,

however, that later in the <u>Padilla</u> opinion, the Tenth Circuit stated:

> In essence, the dispositive question generally is whether the plaintiff has alleged
> injuries that could be redressed to any degree by the IDEA's administrative
> procedures and remedies. ... Where the IDEA's ability to remedy a particular injury
> is unclear, exhaustion should be required in order to give educational agencies an
> initial opportunity to ascertain and alleviate the alleged problem.

233 F.3d at 1274.  The Tenth Circuit might well find, if the issue was presented to it, that, because,

the Plaintiffs have exhausted all administrative remedies and the state has still not complied with the

final order, § 1983 is available in such a limited situation.

The Court need not decide whether § 1983 is available under the circumstances of this case.

The Plaintiffs have not asserted a § 1983 claim based on violation of the statutory right that the final

order has created.  Instead, they have sought to enforce the final order under the IDEA.  It is

sufficient for the Court to agree with the Honorable Christina J. Armijo, United States District Judge,

in <u>Miller v. Board of Education of the Albuquerque Public Schools</u>:

> The Court also must keep in mind that this case presents an unusual situation where
> the Plaintiffs are appealing from an administrative proceeding at which they prevailed
> and received some form of equitable relief as to most of the substantive issues. ...
> [T]he IDEA does not give Plaintiffs the right to bring a civil action for judicial review
> of the administrative proceedings conducted pursuant to that statute unless and until
> the are "aggrieved" by the result of those proceedings.  <u>See</u> 20 U.S.C. §
> 1415(i)(2)(A); <u>Robinson v. Pinderhughes</u>, 810 F.2d 1270, 1275 (4th Cir. 1987).  It
> follows that there is no basis for the Court to review evidentiary rulings with respect
> to those issues on which the AAO found in Plaintiffs' favor and awarded adequate
> relief.
>
> ****
>
> That a student is aggrieved by a school district's failure to comply with an
> administrative tribunal's decision in favor of the student is a separate and distinct
> claim that may rest on an entirely different legal theory than the relatively
> straightforward IDEA. ... <u>See</u>, <u>e.g.</u>, <u>Robinson</u>, 810 F.2d at 1274-75 (concluding that

-14-

such non-compliance can be addressed under 42 U.S.C. § 1983).

2006 WL 2786759 at **14, 16.  See id. at *22 ("I have no occasion to review the findings of the

AAO and the DPHO regarding these violations during the seventh and eighth grade, because the

administrative tribunals found in Plaintiffs' favor as to these violations, and thus Plaintiffs are not

'aggrieved' by such findings within the meaning of the IDEA.  See Robinson, 810 F.2d at 1275.");

Miller v. Bd. of Educ. of the Albuquerque Pub. Schs., 2006 WL 2786759 at *26 ("The portions of

the AAO's decision which found in Plaintiffs' favor have no preclusive effect to their ADA and

Section 504 claims, because Plaintiffs are not 'aggrieved' by those portions of the AAO's decision,

and consequently they have not been subjected to judicial review in this action."); Robinson, 810 F.2d

at 1275 (concluding that a party must be "aggrieved" by the portion of an administrative tribunal's

decision on which that party seeks judicial review).

## LAW REGARDING NOTICE FOR COMPLIANCE

Under the IDEA, state education agencies have overall responsibility for insuring that the

IDEA provisions are met and that "all educational programs for children with disabilities in the

State[s], including all such programs administered by any other State agency or local agency" are

under their supervision and meet their standards.  20 U.S.C. § 1412(a)(11)(A)(ii).  See Cannaday v.

Bd. of Educ. of the Rio Rancho Pub. Schs., No. 04-1143, 2005 U.S. Dist. LEXIS 42198, at *11-12

(D.N.M.)(Vasquez, J.)(unpublished opinion)(quoting 20 U.S.C. § 1412(a)(11)(A)(ii)); Bitsilly ex rel.

Denet-Yazzie v. Bureau of Indian Affairs, 253 F. Supp. 2d 1257, 1264 (D.N.M. 2003)(Hansen,

J.)(citing same).  The administrative due process proceedings that the IDEA establishes are designed

to provide state and local educational agencies "an initial opportunity to ascertain and address alleged

problems."  Padilla v. Sch. Bd. No. 1 in the City & County of Denver, 233 F.3d at 1274.  See Hoeft

v. Tucson Unified Sch. Dist., 967 F.2d at 1303 ("[S]tates have primary responsibility for ensuring that local educational agencies comply with the requirements of the IDEA. Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their programs. States are given the power to place themselves in compliance with the law."); Crocker v. Tenn. Secondary Sch. Athletic Ass'n, 873 F.2d 933, 935 (6th Cir. 1989). Congruent with that responsibility and with the purposes underlying the IDEA's administrative process exhaustion requirement, the IDEA requires the parties to due process hearings to forward notice of their positions to state education agencies. See 20 U.S.C. § 1415(b)(7)(A).

The IDEA specifies that such notice shall include the name, address, and school of attendance of the child in question, a description of the nature of the child's problem, and a proposed resolution to the problem. See id. Reinforcing the notion that the initiation of administrative proceedings should put a state education agency on effective notice that an issue exists is the limited time aggrieved parties have to appeal the decision of a hearing officer. Parties have only ninety days in which to bring suit appealing such decisions in federal district court. See 20 U.S.C. § 1415(i)(1)(A)-(B).

One court has stated that, if the parties to an IDEA due process hearing invite a relevant state education agency to take part in that hearing and the state education agency declines, that state education agency is deemed to have been placed on notice and given an opportunity to be heard for purposes of its inclusion in an aggrieved party's subsequent action appealing a final administrative order in federal district court. See St. Tammany Parish Sch. Bd. v. Louisiana, 142 F.3d 776, 786 (5th Cir. 1998).

-16-

## ANALYSIS

The Court finds in favor of the NMPED and against the Plaintiffs. While the Plaintiffs have pled sufficient allegations to demonstrate that they have exhausted the relevant administrative remedies and that they can satisfy Article III's justiciability requirements, they cannot pursue enforcement of the AAO's order under the IDEA's judicial review provision, because they are not aggrieved parties under the Act. The Court, having already dismissed the § 1983 claims against Garcia, see Memorandum Opinion and Order, filed October 4, 2006 (Doc. 93), need not address those claims here.

## I.    THE PLAINTIFFS HAVE EXHAUSTED THEIR ADMINISTRATIVE REMEDIES.

The Plaintiffs have satisfied the administrative due process hearing procedures under the IDEA. The NMPED argues that the Plaintiffs must complete the CRP process to exhaust their administrative remedies. See Reply of Defendants NMPED and Veronica Garcia in Support of Motion to Dismiss First Amended Complaint at 3-8, filed August 5, 2005 (Doc. 26)("Defendants' Reply"). Because CRP is not an adequate alternative to the IDEA's administrative remedies, and because requiring the Plaintiffs to complete it would read another administrative step into the IDEA that Congress did not contemplate, exhaustion of the CRP process is not required before the Plaintiffs may bring suit appealing the AAO's order. See Cannaday v. Bd. of Educ. of the Rio Rancho Pub. Schs., No. 04-1143 at *22-26. The Plaintiffs followed the IDEA's administrative procedures to reach a final decision, and that is all that the IDEA's exhaustion provision requires before they may seek review in federal district court.

**II.    THE PLAINTIFFS SATISFY ARTICLE III'S JUSTICIABILITY REQUIREMENTS**.

The Plaintiffs have standing to pursue their claims against the NMPED.  The Plaintiffs have alleged that the NMPED's actions and inactions have harmed Matthew.  See Complaint ¶¶ 21, 65, at 6, 12.  Specifically, they allege that the NMPED's failure to provide Matthew with a FAPE or to compel the Tularosa schools to do so has harmed Matthew.  See id.  They move the Court for injunctive and compensatory relief.  As such, the Plaintiffs allege facts sufficient to demonstrate that Matthew has suffered a concrete, particularized, and actual injury in fact that is traceable to the NMPED's conduct and that is likely to be redressed by a decision of the Court in their favor.  The Plaintiffs, therefore, have established standing to pursue their claims against the NMPED.

The Plaintiffs' claims against the NMPED are not moot.  First, because the NMPED declined to partake in the administrative process and the AAO refused to assert jurisdiction over the Plaintiffs' claims against the NMPED, the AAO's decision does not moot those claims.  Second, it is alleged that the Tularosa schools still have not provided Matthew a FAPE and that the NMPED has yet to compel them to, or to step in and provide one itself; thus, the harm that the Plaintiffs allege the NMPED is responsible for is ongoing.  See id. ¶¶ 21, 65, at 6, 12. As such, the Plaintiffs' claims against the NMPED are not moot.

The Plaintiffs' claims against the NMPED are ripe for review.  The NMPED denied and continues to deny Matthew a FAPE, and, therefore, the issue is ripe.  See id. ¶¶ 21, 65, at 6, 12.  In addition, because the Plaintiffs have exhausted their administrative remedies, the Court believes that a developed record will be presented to it for review.  Further, as the Plaintiffs allege that the harm to Matthew is ongoing and has been for eighteen months, and noting the importance of constant educational stimulus, the Court believes that substantial hardship would be imposed upon the

Plaintiffs if consideration is withheld.  Those points considered, the Court holds that the Plaintiffs'
claims against the NMPED are ripe for review.

**III.    THE PLAINTIFFS ARE NOT AGGRIEVED PARTIES UNDER THE IDEA**.

The NMPED bases its claims that the Plaintiffs cannot seek enforcement of the AAO's order
in  federal court on Robinson v. Pinderhughes, 810 F.2d 1270, 1275 (4th Cir. 1987), and Grace v.
Lexington School Committee, 762 F. Supp. 416, 418 (D. Mass. 1991).  In both Robinson and Grace,
however, in addition to holding that the plaintiffs could not seek judicial enforcement of a favorable
final administrative order under the IDEA, the Fourth Circuit and United States District Court for the
District of Massachusetts also ruled that the plaintiff could seek such enforcement under § 1983.  The
Tenth Circuit may have foreclosed that option in this case.  See Sw. Air Ambulance v. City of Las
Cruces, 268 F.3d at 1175 n.5; Padilla v. Sch. Dist. No. 1 in the City & County of Denver, 233 F.3d
at 1274.  Nevertheless, the Court need not find that the Plaintiffs have no means with which to
enforce their order, a result that would arguably frustrate the purposes of the IDEA, to adopt and
apply the rule that the Fourth Circuit articulated in Robinson v. Pinderhughes.  See 810 F.2d at 1274.
Because the First Circuit's opinion in Nieves-Marquez, 353 F.3d at 115-17, appears to be based
primarily on policy grounds rather than the language of the statute, the Court will decline to follow
that minority position.

Given the Court's statutory interpretation, it is important that the Court scrutinize with care
the AAO's decision to determine whether any potion of the AAO's order did not go the plaintiffs'
way.  See Miller v. Bd. of Educ. of the Albuquerque Pub. Schs., 2006 WL 2786759 at *22.  The
Plaintiffs allege that they were not allowed to proceed against the NMPED in the administrative
process, that the Tularosa schools have yet to comply with the AAO's decision, and that the NMPED

has not compelled the Tularosa schools to do so or taken compliance with the AAO's order upon itself. The Plaintiffs contend that they are, therefore, aggrieved parties under the IDEA. See Complaint ¶¶ 14, 21, 63, 65, at 4, 6, 12; Nieves-Marquez v. Puerto Rico, 353 F.3d at 115-17. In the end, however, the Plaintiffs' argument is no more than that the Tularosa schools and the NMPED have not complied with the final administrative order and, therefore, that the Plaintiffs may seek enforcement of that order in federal district court, pursuant to 20 U.S.C. § 1415(i)(2)(A). This, however, the statute does not allow.[2]

The Plaintiffs have not met their burden. The Plaintiffs have submitted allegations sufficient to demonstrate that they have exhausted the administrative remedies available under the IDEA and that they satisfy the Constitution's justiciability requirements; however, with respect to enforcement of the AAO's order, they cannot demonstrate that they are aggrieved parties under the IDEA. To the extent that the Plaintiffs are appealing the AAO's decision not to join the NMPED in the due process hearing scheme, apart from any effort to enforce the AAO's order, such claim is dismissed. The Court has found no authority for the proposition that the NMPED, or any state education agency, is an indispensable party at a due process hearing. Further, it is unclear how the failure to join the NMPED as a party violated Matthew's rights under the IDEA, how that failure circumvented the procedural requirements of the IDEA, and how, if it was a violation, the Court could remedy it properly. See Cannaday v. Bd. of Educ. of the Rio Rancho Pub. Schs., No. 04-1143 at *15-17. As such, the Court finds in favor of the NMPED and against the Plaintiffs on this motion.

---

[2] Because the Court holds that the Plaintiffs are not aggrieved parties under the IDEA and that is justification enough for dismissal, the Court believes that it is not necessary, at this time, to decide whether the NMPED has had notice and a reasonable opportunity to comply with the AAO's final order.

**IT IS ORDERED** that the Motion of Defendants New Mexico Public Education Department and Veronica Garcia to Dismiss First Amended Complaint is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gail Stewart
Laurel Nesbitt
Steven Grabber Attorney at Law, P.A.
Albuquerque, New Mexico

*– and –*

Tara Ford
Pegasus Legal Services for Children
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Gerald Copper
John Appal
Copper & Annick, P.C.
Santa Fe, New Mexico

    *Attorneys for Defendant Board of Education of Tularosa Municipal Schools*

Andrew S. Montgomery
Jeffrey J. Wechsler
Montgomery & Andrews, P.A.
Santa Fe, New Mexico

    *Attorneys for Defendants New Mexico Public Education Department and Veronica Garcia*

-21-