# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SIMON AND BEVERLY CHAVEZ,
On behalf of their minor son,
MATTHEW CHAVEZ,

       Plaintiffs,

vs.                                         No. CIV 05-380 JB/RLP

BOARD OF EDUCATION OF TULAROSA
MUNICIPAL SCHOOL; the NEW MEXICO
PUBLIC EDUCATION DEPARTMENT,
and VERONICA GARCIA, Secretary of the
NMPED in her individual and official capacity,,

       Defendants.

## MEMORANDUM OPINION AND ORDER

       **THIS MATTER** comes before the Court on Deponent Mary Ann Trott's Motion to Quash Deposition Notice, filed March 3, 2006 (Doc. 51). The Court held a hearing on the motion on March 30, 2006. The primary issues are: (i) whether the Court should consider Trott's proposed testimony expert testimony; and (ii) whether, if the Court does so, it should protect Trott, a non-retained expert witness, by quashing the Plaintiffs' subpoena or requiring the Plaintiffs to pay a reasonable expert-witness fee. For reasons given at the hearing on March 30, 2006, for reasons consistent with the reasons given at that time, and because the Court concludes that the Plaintiffs are effectively seeking expert testimony from Trott without having retained her, the Court will grant the request to quash, but, at this time, deny the alternative request to set compensation.

## FACTUAL BACKGROUND[1]

This case involves provision of a free appropriate public education to a student with autism, Matthew Chavez, in Tularosa, New Mexico. The Plaintiffs, Matthew's parents, Simon and Beverly Chavez, argue that Defendant New Mexico Public Education Department ("PED") has abandoned Matthew and other children with autism living in New Mexico's rural districts, and that such abandonment violates the Individuals with Disabilities Act ("IDEA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("Rehab Act") . See First Amended Complaint for Civil Violations of IDEA and Civil Rights Pursuant to Section 1983, ADA, and Section 504 of the Rehabilitation Act ¶¶ 8, 18-22, 31-55, 65-68, at 3, 5-13, filed May 2, 2005 (Doc. 5)("Complaint").

In her motion, Trott seeks relief under rule 45(c)(3)(B)(ii) of the Federal Rules of Civil Procedure. See Motion at 1. Trott attached an affidavit, which is intended to establish her as an expert witness, to her motion. See Motion, Exhibit A, Affidavit of Mary Ann Trott (executed March 2, 2006)("Affidavit"). While Matthew's parents dispute some of the assumptions upon which Trott relies in her motion, and whether all of Trott's assertions therein are material to or dispositive of the motion, few facts are in dispute. See Plaintiff's Response in Opposition to Motion to Quash Deposition Notice at 1-2, filed March 17, 2006 (Doc. 53)("Response").

Trott represents that she is a public employee who, based on her daily job, is familiar with and can describe the services provided to students with autism in the Albuquerque Public Schools ("APS"). See Affidavit ¶ 8, at 2. Matthew's parents do not dispute that Trott does not have knowledge about Matthew or Tularosa's schools. See Response.

Trott attests that she has a bachelor's degree and a master's degree in special education, and

---

[1] The facts recounted herein reflect circumstances as they existed as of March 30, 2006.

has taken additional course work in the area of communication disorders.  See Affidavit ¶ 3, at 1.

She also states that she has authored two books about how to meet the needs of students with

sensory integration deficits and related behavioral concerns.  See id. ¶ 5, at 1.  Additionally, Trott

represents that she has authored academic journal articles on the same subject matter.  See id. ¶ 6,

at 1-2.

Trott attests that she has taught classes at the university level on Applied Behavior Analysis.

See id. ¶ 4, at 1.  Trott states that she is an educator with approximately thirty years of experience

relating primarily to the provision of educational services to students with sensory impairments and

behavioral needs.  See id. ¶ 1, at 1.  Trott asserts that she is a frequent presenter at national seminars

on issues relating to the needs of children with sensory integration deficits.  See id. ¶ 7, at 2.

Matthew's parents note that New Mexico does not have a credentialing specific to autism,

that the state certifies teachers as special education teachers only, and that the PED lacks experts in

autism.  See Response at 3; Response, Exhibit 1, Defendant the New Mexico Public Education

Department's Responses to Plaintiff's First Requests for Admissions, Requests for Production, and

Interrogatories at 1, 9, in Cannaday v. Bd. of Educ. of Rio Rancho Pub. Schs., No. CV-04-01143

RLP.  Based upon those assertions, Matthew's parents contend that Trott's present job title, "Autism

Resource Teacher," does not establish any expertise in autism.  See Response at 2-3.

Trott attests that she has no knowledge of the underlying facts and circumstances at issue in

this case.  See Motion at 1, 3.  Trott represents that she has not been, in any way, involved in

Matthew's education, that neither the PED nor the Tularosa School District has ever employed her,

and that she is not the APS employee responsible for interacting with the PED.  See Affidavit ¶¶ 9-15,

at 2-3.  Despite Trott's representations, however, Matthew's parents dispute her assertion that she

has no knowledge of the facts in this case.  See Response at 2.

## PROCEDURAL BACKGROUND

Trott and APS are not parties to this litigation.  See Complaint.  Matthew's parents provided Trott notice that her deposition was to be taken on March 6, 2006.  See Certificate of Service, filed January 23, 2006 (Doc. 41).  The counsel for Matthew's parents represent that they have not yet asked Trott any questions.  See Response at 3.  Trott, through her counsel, has notified the counsel for Matthew's parents that, to the extent that she is being deposed as an expert witness, she requests that she be paid reasonable compensation.  See Motion, Exhibit B, Letter from Michael C. Carrico to Gail Stewart (dated February 23, 2006).

Based on an agreement between APS' counsel and the counsel for Matthew's parents, Trott's deposition was noticed by serving APS' counsel.  See Response at 1 n.1.  No subpoena was served directly on Trott because APS' counsel instructed that he would be accepting the notice of deposition on her behalf and that a member of the law firm from APS' counsel would accompany Trott to the deposition.  See id.

In her motion, Trott requests that the Court, pursuant to rule 45(c)(3)(B)(ii), quash the deposition notice served upon her or, in the alternative, require Matthew's parent to compensate her at a rate of $200.00 per hour.  See Motion at 1, 5.  Matthew's parents oppose Trott's motion to quash and seek an order from the Court requiring that her deposition proceed in accordance with the Federal Rules of Civil Procedure.  See Response at 1-2, 6.  Defendants Veronica Garcia, the PED, and the Board of Education of the Tularosa Schools do not take positions on the motion.  See Hearing Transcript at 10:17-11:25 (Wechsler)(taken March 30, 2006)("Transcript"); id. at 10:10-15

-4-

(Coppler).[2]

## LAW REGARDING EXPERT TESTIMONY

The law has, until recently, consistently treated an expert's testimony as something he or she could sell or give away, but that could not be compelled.  Beginning in the 1970s, however, the federal courts began to chip away at this near absolute rule and to recognize some exceptions where the deponent could show extreme necessity.  Nevertheless, the federal rules continue to require the deponent to show a substantial need for the un-retained expert's testimony.

        1.      **RULE 702.**

Rule 702 of the Federal Rules of Evidence, which concerns testimony by experts, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Testimony elicited to establish a comparative standard is expert testimony.  Soc'y for Goodwill to Retarded Children v. Cuomo, 902 F.2d 1085, 1089-90 (2d Cir. 1990)(discussing the use of expert testimony to establish professional standards).  For example, asking a physician from one hospital to testify about her procedures, for the purpose of establishing a comparative professional standard by which to measure the procedures a defendant physician employs at another hospital, is expert testimony.  See id.

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

2.    **RULE 45(c)(3)(B)(ii).**

Rule 45(c)(3)(B)(ii) provides:

> [If a subpoena] requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, . . . the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

Fed. R. Civ. Pro. 45(c)(3)(B)(ii).  Rule 45 was amended in 1991 to include clause (c)(3)(B)(ii).

Explaining the underlying rationale and purpose of that amendment, the advisory note that

accompanies rule 45 states:

> Clause (c)(3)(B)(ii) provides appropriate protection for the intellectual property of the non-party witness; it does not apply to the expert retained by a party . . . .  A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts.  Experts are not exempt from the duty to give evidence, even if they cannot be compelled to prepare themselves to give effective testimony, . . . but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services.  Arguably the compulsion to testify can be regarded as a "taking" of intellectual property.  The rule establishes the right of such persons to withhold their expertise, at least unless the party seeking it [shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated].

Fed. R. Civ. Pro. 45, Advisory Comm. Notes, 1991 Amend., Subdiv. (c).  In short, rule

45(c)(3)(B)(ii) was designed to protect experts from being required to provide expert advice or

assistance without proper compensation.  See Friedland v. Tic – the Indus. Co., No. 04-CV-01263,

2006 WL 2583113, at *2 (D. Colo. September 5, 2006)(citing Cable v. Weinman, 233 F.R.D. 70,

76 (D. Mass. 2006)).  A district court is permitted, but not required to quash or modify a subpoena

if the elements of rule 45(c)(3)(B)(ii) are present.  See In re Pub. Offering PLE Antitrust Litig., 233

F.R.D. 70, 76 (D. Mass. 2006).

With respect to the required demonstration of undue hardship necessary to overcome a motion to quash, "a party must show that the substantial equivalent cannot be obtained through other means.  Where a witness is unavailable or where contemporaneous statements have been made that cannot be reproduced, courts will often order the production . . . ."  Friedland v. Tic – the Indus. Co., 2006 WL 2583113, at *3 (quoting Connelly v. Dun & Bradstreet, Inc., 96 F.R.D. 339, 342 (D. Mass. 1982).  While expense alone is generally not sufficient to establish undue hardship, unusual or extraordinary expense may constitute undue hardship.  See Friedland v. Tic – the Indus. Co., 2006 WL 2583113, at *3 (citing In re Int'l Sys. & Controls Corp. Sec. Litig., 693 F.2d 1235, 1241 (5th Cir. 1982)(finding undue hardship where a second investigation would cost $1.5 million), but granting motion to quash pursuant to rule 45(c)(3)(B)(ii) where "circumstances did not rise to the level of undue hardship sufficient to allow the taking of an unretained expert's intellectual property").  See also Mattel Inc. v. Walking Mountain Prods., 353 F.3d 792, 814 (9th Cir. 2003)(finding that the district court did not abuse its discretion by quashing subpoena).

The following factors, first articulated in Kaufman v. Edelstein, 539 F.2d 811 (2d Cir. 1976), should inform a court's decision whether to use its discretion to allow testimony to be compelled from an un-retained witness:

> [i] the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; [ii] the difference between testifying to a previously formed or expressed opinion and forming a new one; [iii] the possibility that, for other reasons, the witness is a unique expert; [iv] the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and [v] the degree to which the witness is able to show that he has been oppressed by having to continually to testify . . . ."

Id. at 822.  See In re Pub. Offering PLE Antitrust Litig., 233 F.R.D. at 76; Bio-Tech. Gen. Corp. v.

Novo Nordisk, 2003 WL 21057238, at *3 (D.Del. May 7, 2003); Fed. R. Civ. Pro. 45, Advisory

Comm. Notes, 1991 Amend, Subdiv. (c).

      Notwithstanding that rule 45(c)(3)(B)(ii) is not mentioned in Lareme v. N.Y. State Office for

the Aging, No. 03-CV-0356, 2004 U.S. Dist. LEXIS 13217 (N.D.N.Y. July 14, 2004), the Lareme

court's ruling is helpful in determining when that rule's protections apply.  In Lareme v.N.Y. State

Office for the Aging, the court held that the substance of a deponent's testimony, rather than how the

parties designated the deponent, determines whether the deponent's testimony qualifies as expert

testimony.  See id. at *5 & n.1.  Accordingly, the Lareme court asserted that "the critical factor in

determining whether a [deponent] is entitled to a reasonable fee [for providing expert testimony] is

the substance of the testimony."  Id. at 6.  To illustrate that point, the court in Lareme v. N.Y. State

Office for the Aging stated:

> If the treating physician's testimony is limited to pure observation, an explanation of
> treatment notes, etc., then the physician may properly be characterized as a fact
> witness and receive nothing more than the statutory witness fee. If, however,
> testimony is elicited that reasonably may be considered to be opinions based on
> specialized skill and knowledge that fall within Fed. R. Evid. 702, then the physician
> may properly be characterized as an expert witness and is entitled to a reasonable fee
> for time spent in responding to discovery.

See id. at **6-7.  Extending such reasoning, rule 45(c)(3)(B)(ii)'s protections would appear to be

applicable when the substance of a deponent's testimony can be considered expert in nature pursuant

to rule 702.  See Statutory Comm. of Unsecured Creditors v. Motorola, Inc., 218 F.R.D. 325, 326-27

(D.D.C. 2003)(stating that rule 45(c)(3)(B)(ii) applies if an un-retained expert's "opinion or

information does not describe events or occurrences in dispute and results from the expert's study

made not at the request of the party," and that the rule applies to "present" and "past" opinion alike).

<u>ANALYSIS</u>

Matthew's parents seek expert testimony from Trott, an un-retained expert.  Matthew's parents do not show a substantial need for her testimony and do not show that they could not secure like testimony from many other retained experts.  The Court will, therefore, exercise its discretion under rule 45(c)(3)(B)(ii) and grant Trott's request to quash, but, at this time, deny her alternative request to set compensation.

**I.   MATTHEW'S PARENTS SEEK EXPERT TESTIMONY FROM TROTT, AN UN-<u>RETAINED EXPERT, AND, THEREFORE, RULE 45(c)(3)(B)(ii) IS OPERATIVE</u>.**

The Court believes that Matthew's parents seek Trott's testimony to develop a comparative standard by which to judge the appropriateness of the Tularosa School District's program for Matthew.  The Court reaches that conclusion based on the fact that Matthew's parents do not deny that they seek Trott's testimony for comparative purposes or contest that Trott does not have knowledge about Matthew or Tularosa's schools.  <u>See</u> Response.  Asking a special education specialist from one school district to describe how her school district develops and implements educational programs and services for autistic children for the purpose of developing standards by which to measure the appropriateness of educational supports and services of a defendant school district, amounts to seeking expert testimony.  <u>See Soc'y for Goodwill to Retarded Children v. Cuomo</u>, 902 F.2d at 1089-90 (discussing the use of expert testimony to establish professional standards); Fed. R. Evid. 702.  While Matthew's parents assert that they will not ask Trott to make the ultimate comparison of APS' programs with those of Tularosa's, and therefore that they do not seek expert testimony from Trott,  they still seek to elicit expert evidence through Trott's testimony to establish the standards by which others will make a final comparison.  The Court concludes,

therefore, that Matthew's parents seek expert testimony from Trott; they seek her expert opinion on APS' development and implementation of programs for autistic children to establish a basis for comparison.

Matthew's parents also argue that Trott should not be considered an expert because she does not hold a state credential specific to autism. See Response at 3. The Court believes, however, in accordance with Lareme v. N.Y. State Office for the Aging, that the important factor in determining whether a deponent's testimony should be considered expert testimony is the substance of the deponent's testimony and not how the parties have designated the deponent. See id. at **5-6 & n.1. As such, the Court concludes that Trott's lack of a specialized state credential pertaining to autism should not overshadow the substance of her potential testimony, which is to provide her expert opinion, based on her position of employment, education, research, teaching, and approximately thirty years of relevant experience, concerning APS' treatment of autistic students. See Response at 5-6; Affidavit ¶¶ 1, 3-8, at 1-2. The Court also finds that Trott, a specialist on educating children with special needs, can provide expert testimony regarding APS' and other school districts' development and implementation of programs for autistic children without being an autism expert -- her expertise may qualify her to testify concerning the processes of special education program development and implementation without qualifying her to testify regarding how and why particular program structures are better suited for autistic children.

Matthew's parents further contend that rule 45(c)(3)(B)(ii) does not apply to Trott, because it only applies if an un-retained expert's opinion or information does not describe events and occurrences in dispute, and results from a study that the parties did not request. See Response at 3-5. Matthew's parents maintain that they do not seek to learn about any "study" Trott may have made.

See id.  The Court believes, however, that Matthew's parents take too narrow a view of the word "study" as it is used in rule 45(c)(3)(B)(ii).  The Court believes that the term "study" refers to researched-based study, either in the past or the present, undertaken in a particular subject area, and that it encompasses, in this case, Trott's preparation for her day-to-day employment, books, articles, classes, and presentations.  See Statutory Comm. of Unsecured Creditors v. Motorola, 218 F.R.D. at 326-27 (finding untenable a party's contention that rule 45(c)(3)(B)(ii) does not apply to opinions that are not "present" opinions established as to some matter currently in dispute).

Apart from finding the contentions of Matthew's parents concerning the motion unpersuasive, the Court finds that they have not demonstrated undue hardship, which is necessary to overcome a motion to quash by an un-retained expert.  In responding to Trott's motion, Matthew's parents do not show that other means cannot be used to secure a substantial equivalent of Trott's testimony. See Response; Freidland v. Tic – the Indus. Co., 2006 WL 2583113, at *3 (stating that, with respect to rule 45(c)(3)(B)(ii), "[a] party must show that the substantial equivalent cannot be obtained through other means").  They also do not demonstrate that securing Trott's testimony, or testimony substantially equivalent to it, would involve unusual or extraordinary expense.  See Freidland v. Tic – the Indus. Co., 2006 WL 2583113, at *3 (acknowledging that, while expense alone is generally not enough to satisfy rule 45(c)(3)(B)(ii)'s undue hardship requirement, unusual or extraordinary expense might).

Moreover, the Court notes that the informative factors articulated in Kaufman v. Edelstein balance in favor of granting Trott's motion.  While Trott is not being asked to form a new opinion and does not appear to be in danger of having to continually testify, she is being called to give opinion testimony rather than testimony about facts relevant to this case, Matthew's parents have not shown

-11-

that she is a unique witness or that it is unlikely that any comparable witness will willingly testify, and she would be oppressed insofar as she would be foreclosed from bargaining for the value of her intellectual property.  See Kaufman v. Edelstein, 539 F.2d at 822; Fed. R. Evid. 45, Advisory Comm. Notes, 1991 Amend., Subdiv. (c).

The Court will grant Trott's motion.  Trott is entitled to a protective order.  She is free to decline this engagement and, if she decides to accept, is entitled to reasonable compensation.  Trott seeks a fee in the amount of $200.00 per hour.  See Motion at 1, 4-5.  Trott represents that this rate is based upon the fees that she has been  paid for seminar presentations relating to the delivery of educational supports and services to students with sensory integration deficits, including students with autism, the topic upon which she is being called to testify in this case.  See id.  The Court need not, however, decide whether $200.00 per hour is a reasonable fee.  It will quash Matthew's parents' Notice of Deposition.  If Trott decides to testify for Matthew's parents, she can come to an agreement with them regarding compensation.[3]

## II.    TROTT'S MOTION IS NOT PREMATURE.

Matthew's parents contend that it is premature for the Court to presume that they are interested in obtaining Trott's opinions.  They argue that, to the extent the actual deposition results in their solicitation of Trott's opinions, the Court could reconsider ordering payment of expert fees under rule 45(c)(3)(B)(ii).  See Response at 3 (citing In re Pub. Offering PLE Antitrust Litig., 233 F.R.D. at 80 ("Although quashing a subpoena to produce documents is rather common, quashing a subpoena ad testificandum is very rare, because until the witness is asked specific questions, usually

---

[3] Accordingly, the Court will deny Trott's request for alternative relief without prejudice to her renewing this issue if she wants to testify and cannot work out compensation with Matthew's parents.

there is nothing on which to base a motion to quash.")(quoting 9 James Wm. Moore et al., Moore's Federal Practice, § 45.04(3)(a) (3d ed. 2005)).  In this case, however, because the Court has not been presented with anything that evidences that Matthew's parents seek to ask Trott any questions that would not implicate her expertise,[4] because being deposed would require Trott to set aside her educational responsibilities for at least some period of time, and because rule 45(c)(3)(B)(ii)'s plain language does not indicate that courts should avoid quashing subpoenas that qualify deponents for the rule's protection, the Court finds that Trott's motion is not premature.  She does not have knowledge about Matthew or Tularosa's program.  The testimony sought is expert testimony.  She needs a protective order, else Matthew's parents will secure what they want in an inappropriate, free manner.  The Court does not believe that rule 45(c)(3)(B)(ii)'s purpose would be furthered by waiting to conduct a post-deposition assessment of the scope of questioning by Matthew's parents.

**IT IS ORDERED** that the Motion to Quash Deposition Notice is granted.  The Court will not compel Deponent Mary Ann Trott to testify.  If she decides to voluntarily testify, she and Matthew's parents can arrive at an agreement concerning compensation.  The Court denies her request for alternative relief without prejudice to her renewing this issue if she wants to testify and cannot work out compensation with Matthew's parents.

---

[4] As the Court noted above, asking Trott how APS develops and implements educational programs and services for autistic children for the purpose of developing a standard by which to measure the appropriateness of the Tularosa School District's programs for autistic children amounts to seeking expert testimony.  See Soc'y for Goodwill to Retarded Children v. Cuomo, 902 F.2d at 1089-90.

_____
UNITED STATES DISTRICT JUDGE


Counsel:

Gail S. Stewart
Steven Granberg Attorney at Law PA,
Albuquerque, New Mexico

-- and --

Tara Ford
Pegasus Legal Services for Children
Albuquerque, New Mexico

      *Attorneys for Plaintiffs Simon and Beverly Chavez*

Gerald A. Coppler
Coppler & Mannick, PC,
Santa Fe,  New Mexico

      *Attorney for Defendant Board of Education of Tularosa Municipal Schools*

Andrew S. Montgomery
Jeffrey J Wechsler
Montgomery & Andrews,
Santa Fe,  New Mexico

      *Attorneys for Defendants New Mexico Public Education Department and Veronica Garcia*

Michael L. Carrico
Modrall, Sperling, Roehl, Harris
  & Sisk, P.A.
Albuquerque, New Mexico

      *Attorney for Mary Ann Trott*

-14-