# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SIMON and BEVERLY CHAVEZ,
On behalf of their son,
MATTHEW CHAVEZ,

        Plaintiffs,

vs.                                      No. CIV 05-380 JB/RLP

BOARD OF EDUCATION OF TULAROSA,
MUNICIPAL SCHOOLS; the NEW MEXICO
PUBLIC EDUCATION DEPARTMENT; and
VERONICA GARCIA, Secretary of the
NMPED in her individual and official capacity,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiffs Simon and Beverly Chavez'

Motion to Alter or Amend Judgment for Public Education Department and Against Plaintiffs or, in

the Alternative, to Clarify Scope of Order Against the Plaintiffs and Memorandum in Support, filed

October 30, 2006 (Doc. 97)("Motion to Reconsider"). The Court held a hearing on the motion on

February 22, 2007. The primary issues are: (i) whether the Court erred in determining that the

Plaintiffs are not "aggrieved parties" under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. §§ 1400-1482, and in thereby dismissing the Plaintiffs' IDEA claim against

the New Mexico Public Education Department ("NMPED"); and (ii) whether the Court should

clarify that its October 19, 2006 Memorandum Opinion and Order did not dismiss the Plaintiffs'

claims for damages against the NMPED under the Americans with Disabilities Act ("ADA"), 42

U.S.C. §§ 12101-12213, and the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 701-796,

or in the alternative, whether the Court should reconsider its dismissal of the Plaintiffs' Section 504

and ADA claims against the NMPED.  After the NMPED responded to the motion, the Plaintiffs filed a reply that raised the following additional issue: whether the Court should address with specificity the survival of the Plaintiffs' 42 U.S.C. § 1983 claims for violation of equal protection and procedural due process against the NMPED.  Plaintiff's Reply to Response of Defendant New Mexico Public Education Department to Plaintiff's Motion to Alter or Amend Judgment at 10-11, filed December 4, 2006 (Doc. 101)("Reply to Motion to Reconsider").  Because the Court concludes that it erred in determining that the Plaintiffs were not aggrieved parties but determines that the Plaintiffs' § 1983 claims for violation of equal protection and procedural due process against the NMPED were properly dismissed, the Court will grant the Plaintiffs' motion in part and deny it in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs bring this action on behalf of their son, Matthew Chavez ("Matthew"), a public school student who qualifies for receipt of special education based on autism.  He was enrolled in the Tularosa Municipal Schools ("Tularosa"), a local educational agency ("LEA") within the meaning of the IDEA.  New Mexico law establishes the NMPED as the state educational agency ("SEA") that supervises Tularosa and other local school districts.

The Plaintiffs were the prevailing parties according to the Administrative Appeal Officer's March 4, 2005 decision.  See Decision of the Administrative Appeal Officer, Jane B. Yohalem, March 4, 2005 ("AAO Decision").  The Administrative Appeal Officer ("AAO") crafted a twelve-point remedy specifically designed to address Matthew's educational needs.  See id.  The Plaintiffs allege, however, that, upon initiating the hearing process, they requested the participation of the NMPED for its own alleged violations of the IDEA that resulted in denial of a free appropriate public education ("FAPE") to Matthew.  See Amended Complaint ¶¶ 1, 5, 18-22, at 1-2, 5-6, filed

May 2, 2005 (Doc. 5) ("Amended Complaint").  The NMPED allegedly declined to take part in the process, and the AAO  ruled that claims against the NMPED could not be heard within that process. See id. ¶¶ 18-22, at 5-6; AAO Decision at 3.

The Plaintiffs subsequently appealed the AAO Decision under the IDEA by filing this suit against Tularosa, the NMPED, and Veronica Garcia ("Garcia"), the Secretary of the NMPED in the federal district court.  With respect to their claims against the NMPED, the Plaintiffs contend that Matthew was denied any educational services for a period of over eighteen months.  See Amended Complaint ¶ 24, at 6.  The Plaintiffs allege that the NMPED knew that Tularosa was denying Matthew a FAPE and intentionally failed to take action to ensure the provision of a FAPE.  See Amended Complaint ¶¶ 39-45, at 8-9.  The Plaintiffs assert that the NMPED's failure to provide Matthew with a FAPE or to compel Tularosa to do so has harmed Matthew.  See id. ¶¶ 21, 33, 57, 65, at 6-7, 11-12.  The Plaintiffs contend that Tularosa is either unwilling or incapable of carrying out the AAO Decision, and that the NMPED knew or should have known that Tularosa could not provide a FAPE to Matthew, because the State's school districts, particularly in rural areas, lack trained staff, programming, or a continuum of alternative placements sufficient to provide FAPEs to autistic students.  See id. ¶¶ 13, 38, 51-52, at 4, 8, 10.  The Plaintiffs allege that the NMPED has failed to monitor the provision of FAPEs to students with autism.  See id. ¶¶ 48-50, at 9-10. Additionally, the Plaintiffs allege that the NMPED knew or should have known that there is not a continuum of alternative placements sufficient to provide a FAPE to Matthew, and that the NMPED has  no system for monitoring whether Tularosa, and other LEAs, provide or are capable of providing a continuum of alternative placements for autistic students, including Matthew.  See id. ¶¶ 54-56, at 10-11.

The Plaintiffs ask the Court to hold the NMPED jointly responsible with Tularosa for

Matthew's lack of a FAPE, and to award declarative, injunctive, and compensatory relief against the NMPED for its violations of the IDEA.  See id., Prayer at 13.  The Plaintiffs also seek judicial enforcement or amendment of the AAO Decision "entered in favor of the Plaintiffs against Defendant Tularosa" pursuant to the IDEA, and judicial review of the same administrative decision insofar as it denies the Plaintiffs' request to join the NMPED in the administrative hearing process. See id. ¶ 1, at 1.  The Plaintiffs also seek relief against the NMPED under the ADA and Section 504. See id. ¶¶ 67-68, at 13.

On June 17, 2005, the NMPED and Garcia filed a motion to dismiss all claims against them. See Motion of Defendants New Mexico Public Education Department and Veronica Garcia to Dismiss First Amended Complaint, filed June 17, 2005 (Doc. 15).  They argued that the Court should dismiss all the Plaintiffs' claims for failure to exhaust administrative remedies, lack of standing, lack of ripeness, and mootness.  See Memorandum of Defendants New Mexico Public Education Department and Veronica Garcia in Support of Motion to Dismiss First Amended Complaint at 4-16, filed June 17, 2005 (Doc. 16).  Additionally, they asserted that the Court should dismiss the Plaintiffs' IDEA claim, because the Plaintiffs are not "aggrieved parties" and because the NMPED was not afforded a reasonable opportunity to compel Tularosa to comply with the IDEA. See id. at 17-19.

Upon completion of briefing on the NMPED's and Garcia's motion to dismiss, the Court held a hearing on the motion on September 7, 2005.  During the hearing, the Court inquired as to what additional relief the Plaintiffs wanted the AAO to order as to the NMPED that the AAO did not order.  See Transcript of Hearing at 22:21-23:3 (Court)(taken September 7, 2005).[1]  The

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

-4-

Plaintiffs responded that they wanted the NMPED included in the AAO Decision as a guarantor that what the AAO ordered Tularosa to do would happen, because the Plaintiffs alleged that Tularosa could not do what was ordered.  See id. at 23:4-7 (Stewart).

On January 26, 2006, the Court held an evidentiary hearing on the Plaintiffs' Motion for Stay-Put Order or Preliminary Injunction against Defendants Tularosa and the NMPED and Memorandum in Support, filed December 20, 2005 (Doc. 37).  During the hearing, as relevant here, the Plaintiffs asserted that they never perceived the AAO Decision as granting them complete relief because Tularosa could not carry out what the AAO ordered.  See Transcript of Hearing at 240:19-24 (Stewart)(taken January 26, 2006).  The Plaintiffs further stated that, had Tularosa implemented and complied with the AAO Decision, they would have been satisfied.  See id. at 240:25-241:3.

The Court subsequently entered a Memorandum Opinion and Amended Order granting  the NMPED's and Garcia's motion to dismiss.  See Memorandum Opinion and Amended Order, filed October 19, 2006 (Doc. 96)("October 19 MOO").  In its Order, the Court concluded that the Plaintiffs had exhausted their administrative remedies against the NMPED and that their claims satisfied Article III's justiciability requirements.  See id. at 17.  The Court also determined, however, that the Plaintiffs were not "aggrieved parties" within the meaning of the IDEA and thus dismissed their IDEA claim.  See id. at 19-20.  The Court adopted the position of the United States Court of Appeals for the Fourth Circuit in Robinson v. Pinderhughes, 810 F.2d 1270, 1275 (1987), in holding that a party seeking enforcement of a favorable administrative decision is not "aggrieved" under the IDEA.  See October 19 MOO at 10-12.  The Court then analyzed the Plaintiffs' Amended Complaint and the AAO Decision, and concluded that the remedies the Plaintiffs sought were all, in actuality, an attempt to enforce the AAO Decision.  See id. at 19.  The Court therefore concluded that it should dismiss the Plaintiffs' IDEA claim against the NMPED. See id. at 19-20.

The Court further noted that, because it had already dismissed the 42 U.S.C. § 1983 claims against Garcia, it need not address those claims in the October 19 MOO.  See id. at 17.  The Court did not resolve whether a § 1983 claim based on violation of the statutory right that the final order created provides a remedy for the Plaintiffs in this case, because the Plaintiffs did not assert a § 1983 claim based on such a violation.  See id. at 14.  Finally, the Court explained that it did not need to address whether the NMPED had notice and a reasonable opportunity to comply with the AAO Decision because it already found that it should dismiss the IDEA claims against the NMPED because the Plaintiffs were not aggrieved parties.  See id. at 20 n.2.

The Plaintiffs have now moved the Court to reconsider, alter, or amend its October 19 MOO based on clear error or manifest injustice.  See Motion to Reconsider,  filed October 30, 2006 (Doc. 97). The Plaintiffs request that the Court reconsider its dismissal of their IDEA claim against the NMPED, arguing that the Court erroneously construed their Amended Complaint as seeking only judicial enforcement of the AAO Decision. See id. at 2. The Plaintiffs also request reconsideration or, in the alternative, clarification of the scope of the Order as to the Plaintiffs' claims under the ADA and Section 504. See id. at 9-11.

On December 4, 2006, the Plaintiffs timely filed a reply, in which they stated: "At this juncture, Plaintiffs amend their original Motion to Alter or Amend (Doc.101) to urge the Court to address with specificity the survival of Plaintiffs' Section 1983 claims for violation of equal protection and procedural due process against the NMPED. . . ." Id. at 10-11. The Plaintiffs thus raised the issue of the survival of their § 1983 claims for the first time in their reply.  The NMPED then filed a motion for leave to file a surreply, see Defendant NMPED's Unopposed Motion for Leave to File Surreply, filed January 23, 2007 (Doc. 107), which the Court granted, see Order on Unopposed Motion for Leave to File Surreply, filed January 31, 2007 (Doc. 108).  In its surreply,

the NMPED argued that it is an arm of the State of New Mexico and is therefore not a "person" subject to suit under § 1983.  Surreply at 2.  Subsequently, in a letter to the Court setting forth the Plaintiffs' position regarding the remaining issues to be heard at the February 22, 2007 hearing, the Plaintiffs stated that they "will not present argument on their § 1983 claims which have been dismissed."  Letter from Tara Ford to Judge Browning (dated February 20, 2007) at 2, filed February 20, 2007 (Doc. 116)("February 20 Letter").

After the Plaintiffs filed their motion to alter or to amend, the Court issued its decision denying the Plaintiffs' motion for stay-put order or preliminary injunction.  See Memorandum Opinion and Order, filed February 13, 2007 (Doc. 112)("February 13 MOO").  The Court's analysis in the February 13, 2007 Memorandum Opinion and Order touches on issues raised in the Plaintiffs' motion to alter or amend judgment.  Specifically, the Court explained that, because Matthew's parents prevailed under the IDEA at the administrative level, awarding additional equitable relief under the ADA and Rehabilitation Act would be duplicative.  See February 13 MOO at 6.  The Court also acknowledged that the Plaintiffs were seeking monetary damages for loss of future earning capacity, pain and suffering, emotional distress, loss of educational services and opportunity, and lost wages.  See id. at 7.  The Court noted that, "[w]hile monetary, tort-type damages are generally unavailable under the IDEA, consequential damages may be awarded under the ADA and Rehab Act, upon a showing of the required intent element."  Id.  The Court then clarified that "its October 19, 2006 Memorandum Opinion and Order granting PED's and Garcia's joint motion to dismiss did not dismiss Matthew's parents' ADA and Rehab Act claims to the extent that they seek damages unavailable under the IDEA."  Id.

The Court held a hearing on the Plaintiffs' motion to reconsider on February 22, 2007.  During the hearing, the Court asked the Plaintiffs what an order for systemic review should say.  See

-7-

Transcript of Hearing at 8:22-23 (Court)(taken February 22, 2007).  The Plaintiffs responded that the order, for example, should require the NMPED to monitor Matthew's current educational program to make sure that he is being provided with staff with appropriate expertise.  See id. at 8:24-9:9 (Ford).  The Plaintiffs also asked the Court to order when the NMPED must provide direct services to students such as Matthew.  See id. at 9:5-7.

The NMPED's Motion for Summary Judgment, filed August 24, 2006, (Doc. 80) is also currently pending.  Pursuant to agreement of the parties and order of the Court, the Plaintiffs have not yet responded to the NMPED's motion for summary judgment.  See Joint Motion for Scheduling Order at 4 (Doc. 90); Stipulated Scheduling Order at 7-8 (Doc. 95).  On July 6, 2007, the Plaintiffs filed a Notice of Supplemental Authority (Doc. 126), which the Court has reviewed.

## APPLICABLE STANDARD FOR DECIDING MOTION PURSUANT TO RULE 59(e)

The United States Court of Appeals for the Tenth Circuit recognizes that a court may grant a motion to reconsider only when the moving party can establish one of the following grounds: (i) an intervening change in the controlling law; (ii) availability of new evidence which could not have been obtained earlier with the exercise of due diligence; or (iii) the need to correct clear error or to prevent manifest injustice.  See Brumark Corp. v. Samson Res. Corp., 57 F.3d 941, 948 (10th Cir. 1995); B-S Steel of Kan., Inc. v. Tex. Indus., Inc., 327 F.Supp.2d 1252, 1269 (D. Kan. 2004).  A district court has considerable discretion in ruling on a motion to reconsider.  See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997).  A rule 59(e) motion is not an opportunity to rehash arguments previously addressed or to advance new arguments that could have been raised in prior briefing.  See Servants of the Paraclete v. Does I-XVI, 204 F.3d 1005, 1012 (10th Cir. 2000); B-S Steel of Kan., Inc. v. Tex. Indus., Inc., 327 F. Supp. 2d at 1269.

## LAW REGARDING IDEA

The IDEA was enacted to ensure that "all children with disabilities have access to 'a free appropriate public education . . . designed to meet their unique needs.'" Ass'n for Cmty. Living in Colo. v. Romer, 992 F.2d 1040, 1042-43 (10th Cir. 1993)(quoting 20 U.S.C. § 1400(c)). The individualized education program ("IEP"), which is tailored to meet the child's unique needs, is the primary mechanism for ensuring the child's FAPE. See id. at 1043. "[T]he touchstone of IDEA is the actual provision of a free appropriate public education." Sellers v. Sch. Bd., 141 F.3d 524, 527 (4th Cir. 1998).

Under the IDEA, the LEA generally provides direct services to each student to ensure the provision of every student with a FAPE. See 20 U.S.C. § 1413. The SEA has general supervisory responsibilities to ensure the provision of a FAPE to all disabled students. See id. § 1412(a)(11). The SEA, however, is responsible for providing direct services to disabled students in certain circumstances, such as when the LEA is unable to provide a student with a FAPE or the LEA has one or more disabled children who can best be served by a regional or State program or service-delivery system. See id. § 1413(g)(1).

In addition to the requirement of an IEP, the IDEA and its implementing regulations establish numerous procedural safeguards. See 20 U.S.C. § 1415; 34 C.F.R. §§ 300.501-300.520. These safeguards include the right to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6). Additionally, "any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented" in federal court. Id. § 1415(i)(2)(A).

A party is considered "aggrieved" if the party is dissatisfied with the findings or decision of

the administrative appeal agency.  See Padilla ex rel. Padilla v. School Dist. No. 1, 233 F.3d 1268, 1271 (10th Cir. 2000).  A party qualifies as an "aggrieved party" for purposes of further appeal, even if the party received a generally favorable result during the administrative proceedings, so long as the party is contesting those portions of the administrative rulings that were unfavorable.  Bd. of Educ. of Cabell County v. Dienelt, 843 F.2d 813, 814 (4th Cir. 1988)(holding that the plaintiffs were an "aggrieved party" entitled to appeal the administrative decision, even though they received partial reimbursement from a state agency, because the plaintiffs were denied compensation for tuition and other expenses); Diatta v. District of Columbia, 319 F. Supp. 2d 57, 64-65 (D.D.C. 2004)(stating that mother was "aggrieved" under IDEA, notwithstanding hearing officer's finding that child had been denied a FAPE, where mother was aggrieved by additional determinations as to when denial of a FAPE accrued and that the compensatory education program they sought for child was beyond IDEA's reach); Slack v. State of Del. Dep't of Public Instr., 826 F.Supp. 115, 120 (D. Del. 1993)("In this matter, however, while plaintiffs prevailed on the legal issues, they did not obtain the relief requested at the Due Process Hearing.  Other courts faced with similar partial victories have found plaintiffs aggrieved parties.").

## ANALYSIS

The Plaintiffs contend the Court should reverse its holding in its October 19, 2006 Memorandum Opinion and Amended Order, which dismissed their IDEA claim against the NMPED.  The Plaintiffs assert that they are aggrieved parties as to the portion of the AAO Decision that dismissed their claims against the NMPED and that the Court erroneously construed their Amended Complaint as limiting the relief sought against the NMPED to enforcement of the AAO Decision.  The Plaintiffs also request clarification that the October 19 MOO did not dismiss the Plaintiffs' Section 504 and ADA claims against the NMPED.  Finally, the Plaintiffs request that the

Court address the survival of their § 1983 claims for violation of equal protection and procedural due process against the NMPED.

## I.   THE COURT WILL GRANT THE PLAINTIFFS' REQUEST FOR RECONSIDERATION OF DISMISSAL OF IDEA CLAIM AGAINST THE NMPED.

While the Court believes that its decision in the October 19 MOO correctly construed the IDEA not to allow the Plaintiffs to use this case to enforce the AAO Decision, the Court, in its focus on the law, may not have adequately focused on the particular facts and procedural posture of this case. While the Court continues to believe that the Plaintiffs cannot use the IDEA to enforce the AAO Decision in federal court, the Court concludes that it may not have fully acknowledged the relief the Plaintiffs sought from the AAO and did not secure.  On reconsideration, the Court concludes that the Plaintiffs are aggrieved parties as to their request for relief arising from the NMPED's alleged failure to provide direct services.

### A.   THE PLAINTIFFS ARE AGGRIEVED PARTIES AS TO THEIR REQUEST FOR RELIEF ARISING FROM THE NMPED'S ALLEGED FAILURE TO PROVIDE DIRECT SERVICES

The Plaintiffs argue that the dismissal of their IDEA claim against the NMPED was based on a mistake of law and fact.  The Court in its initial opinion relied on the Plaintiffs' repeated concessions that, had Tularosa complied with the AAO Decision, they would have been provided a FAPE.  Based on these admissions, the Court believed that the Plaintiffs' Amended Complaint could be distilled to merely a claim to enforce the AAO Decision.  The Court, however, has taken a second look at the allegations in the Plaintiffs' Amended Complaint and finds that it erred in its initial assessment.  The Court now concludes that the allegations are sufficient to show an unfavorable result separate and apart from the Plaintiffs' request to enforce the AAO Decision against Tularosa, and hereby amends its October 19 Memorandum Opinion and Order to reflect this

-11-

revision.

As an initial matter, the AAO Decision applied to Tularosa.  The AAO concluded that the due process hearing officer did not have jurisdiction to consider the Plaintiffs' claims against the NMPED.  The AAO further ruled that, even if she had jurisdiction, the record did not support a decision against the NMPED.  Because the decision orders only Tularosa to take certain actions, an action to enforce the order would  pertain only to Tularosa.  This distinction distinguishes this case from Robinson v. Pinderhughes, 810 F.2d 1270 (4th Cir. 1987), Grace v. Lexington Sch. Comm., 762 F.Supp. 416 (D. Mass. 1991), and C.C. ex rel. Mrs. D. v. Granby Bd. of Educ., 453 F.Supp.2d 569 (D. Conn. 2006).

In Robinson v. Pinderhughes, the plaintiff filed only a due process administrative complaint against the local school board.  See 810 F.2d at 1271.  The plaintiff made no allegations that the state must be held jointly liable and must be involved in the remedy for the plaintiff to receive a FAPE. See id. at 1271.  Nor did the plaintiff there seek a separate remedy, such as monitoring, from the SEA.  See id.  The only relief that the plaintiff thus sought was enforcement of the order against the LEA. See id.  at 1271-72. See also C.C. ex rel. Mrs. D. v. Granby Bd. of Educ., 453 F. Supp. 2d at 577 (noting that the plaintiff sought relief only against school board to enforce hearing officer's decision providing relief against school board); Grace v. Lexington Sch. Comm., 762 F. Supp. at 417 (stating that the plaintiff sought injunctive relief only against school district to enforce order compelling school district to place student in private school).[2]

_____

[2] The only other case the NMPED cites in support of its argument is Antkowiak v. Ambach, 838 F.2d 635 (2d Cir. 1988).  In that case, the plaintiffs prematurely filed suit against the commissioner of the state education department in district court to force the commissioner to place the plaintiff child at a particular residential private school.  See id. at 637.  The district court found that the plaintiffs had not exhausted administrative remedies and ordered the administrative process to resume.  See id.  The plaintiffs then sought a hearing in which only the plaintiffs and the school

In contrast, here, from the beginning, the Plaintiffs have sought a remedy against the NMPED for its own violations of the IDEA that resulted in a denial of a FAPE for Matthew.  See Amended Complaint ¶ 1, at 1.  The Plaintiffs request a remedy for the NMPED's alleged failure to provide Matthew with direct services when it was made aware on September 25, 2003, that Tularosa was failing to provide a FAPE, and when it knew or should have known before the 2003-2004 school year that rural school districts, like Tularosa, could not provide a FAPE to students like Matthew.  See id. ¶¶ 38-46, at 8-9.  The Amended Complaint alleges that the NMPED failed to monitor whether autistic students, like Matthew, were receiving a FAPE and whether LEAs, like Tularosa, were capable of providing a FAPE.  See id. ¶¶ 48-50, at 9-10.  The Plaintiffs also assert that the NMPED failed to develop the appropriate training of educational staff necessary to ensure a FAPE to autistic students, like Matthew.  See id. ¶¶ 50-52, at 10.  Additionally, the Plaintiffs allege that the NMPED failed to assure the existence of a full continuum of alternative placements to meet the needs of autistic students, like Matthew.  See id. ¶¶ 54-56, at 10-11.  The Plaintiffs requested liability against the NMPED for its own actions and inactions that resulted in the denial of a FAPE to Matthew, including declarative, injunctive, and compensatory relief to remedy the NMPED's IDEA violations.  See id., Prayer, at 13-12.

---

district took part.  See id.  The school district and the plaintiffs stipulated to the plaintiff child's placement at the school, and the hearing officer agreed and ordered the plaintiff child's placement there.  See id.  Neither party appealed that decision; rather, the state commissioner sua sponte reviewed the decision.  See id. at 641.  In addition, the "unusual procedural posture in which it unfolded prior to appeal" distinguishes Antkowiak v. Ambach. 838 F.2d at 641. The plaintiffs resorted prematurely to the federal forum without exhausting their remedies, a hearing officer ordered relief that was beyond her jurisdiction, and the Commissioner used a compulsory review procedure even though the hearing officer's decision had not been appealed. See id.  The case is distinguishable because the plaintiffs did not seek separate relief against both the LEA and the SEA in the administrative proceedings.  As such, the NMPED has not presented the Court with a case holding that a plaintiff is not aggrieved in a case where the plaintiff receives relief from one party but not from another.

-13-

The IDEA provides that plaintiffs can bring such claims seeking relief against an SEA, like

the NMPED, for its own failures to provide direct services to disabled students.  The IDEA allows

children and their parents an opportunity to present complaints "with respect to any matter relating

to the identification, evaluation, or educational placement of the child, or the provision of a

[FAPE]."  20 U.S.C. § 1415(b)(6) (emphasis added).  When an LEA is unable to establish and

maintain programs of FAPE in compliance with IDEA, the SEA may provide special education and

related services directly to disabled children.  See 20 U.S.C. § 1413(g)(1); Ellenberg v. N.M.

Military Inst., 478 F.3d 1262, 1269 (10th Cir. 2007).  "In so doing, the SEA 'may provide special

education and related services . . . in such a manner and at such locations (including regional or state

centers) as the State agency considers appropriate.'"  Ellenberg v. N.M. Military Inst., 478 F.3d at

1269 (citation omitted).  Numerous courts have thus recognized that SEAs may be held responsible

under the IDEA for their failure to provide direct services to disabled students.  See, e.g., Gadsby

by Gadsby v. Grasmick, 109 F.3d 940, 953 (4th Cir. 1997)(holding that SEA may be held liable for

state's failure to assure compliance with IDEA); Doe by Gonzales v. Maher, 793 F.2d 1470, 1492

(9th Cir. 1986)(holding that court may order State to provide services directly to disabled child

where local agency failed to do so), affirmed by equally divided court in Honig v. Doe, 484 U.S.

305, 329 (1988); Kruelle v. New Castle County Sch. Dist., 642 F.2d 687, 696-97 (3d Cir.

1981)(holding that district court did not err in assigning state board of education responsibility for

providing child with a FAPE or in directing State Board to insure proper evaluation of child's needs

be undertaken and appropriate plan implemented); Moubry v. Indep. Sch. Dist. No. 696, 951 F.

Supp. 867, 891-92 (D. Minn. 1996)(noting that commissioner of state department of education may

be held liable under IDEA for failure to provide direct services where LEA is unable or unwilling

to establish and maintain programs of FAPE and where school district has one or more disabled

students who a regional or state center can best serve); <u>Cordero by Bates v. Penn. Dep't of Educ.</u>, 795 F.Supp. 1352, 1360 (M.D. Pa. 1992)(holding that IDEA requires states to ensure through oversight that LEAs fulfill IDEA duties, and to step in and provide direct assistance when LEAs are failing to fulfill their mandates under IDEA).

Moreover, the IDEA grants courts broad discretion to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). The court has authority to fashion relief that meets the unique circumstances of the case, including ordering a State to develop procedures for monitoring compliance of LEAs. <u>See</u> <u>Sch. Comm. of Town of Burlington v. Dep't of Educ.</u>, 471 U.S. 359, 369 (1985)(noting that the IDEA confers "broad discretion" on court to fashion appropriate relief); <u>Gadsby by Gadsby v. Grasmick</u>, 109 F.3d at 955 (observing that the language and structure of IDEA suggests that court has authority to award reimbursement costs against SEA, LEA, or both, as appropriate after considering all relevant factors); <u>Doe by Gonzales v. Maher</u>, 793 F.2d at 1492-93 (holding that the district court acted within scope of discretion in enjoining State to either draft policy on disciplining disabled students that complies with IDEA or developing procedure for monitoring compliance of LEAs). There appears to be nothing in the IDEA that limits the Court's power to grant the Plaintiffs' requested relief against the NMPED, such as requiring the NMPED to monitor Matthew's educational program and/or to develop and support a continuum of alternative placements for him.

Accordingly, on further consideration, the Court concludes that the Plaintiffs have requested relief from the NMPED that the AAO Decision denied them. The Plaintiffs are therefore "aggrieved" by the AAO Decision because they were awarded only partial relief. <u>See</u> <u>Slack v. State of Del. Dep't of Public Instr.</u>, 826 F.Supp. at 120 (holding that the plaintiffs were "aggrieved party" under IDEA because due process panel's decision reflected only partial victory for plaintiffs where

plaintiffs argued in administrative hearing that student needed private placement in 24-hour residential program at particular school but panel, while agreeing private placement was necessary, did not go further and grant 24-hour placement plaintiffs sought); <u>Chris D. v. Montgomery County Bd. of Educ.</u>, 753 F. Supp. 922, 927 (M.D. Ala. 1990)(holding that the plaintiffs were "aggrieved parties" under IDEA because hearing officer did not grant them all the relief they requested).

The NMPED nevertheless argues that the Court should focus on the provision of a FAPE, which they contend Matthew received from the AAO Decision should that decision be enforced. The NMPED thus contends that the Plaintiffs received full relief from the AAO. Although the Court initially agreed with that analysis, on further reflection, the Court finds that the Plaintiffs were only granted partial relief because the AAO denied their request for direct services from a separate party. The Plaintiffs argued in the proceedings below, and have continued to allege in their pleadings before the Court, that the only way for Matthew to receive a FAPE is if they are able to get relief against the NMPED in the form of direct services by the NMPED, such as monitoring and provision of a continuum of alternative services. <u>See</u> AAO Decision at 3, 16; Amended Complaint ¶¶ 13, 48-56, at 4, 9-11. The Amended Complaint alleges that, because Tularosa is either unwilling or unable to implement any plan without the NMPED's direct services, the AAO's order against Tularosa is insufficient to deliver a FAPE to Matthew. Amended Complaint ¶¶ 48-56, at 9-1. Thus, according to the Complaint, the AAO Decision did not provide the Plaintiffs with complete relief.

In sum, the IDEA itself allows for complaints to be brought against an SEA for the failure to provide direct services to disabled children. Numerous courts have fashioned relief against SEAs when they have been found liable under the IDEA. The Plaintiffs here requested relief against the NMPED separate from enforcement of the AAO Decision against Tularosa. Although the Plaintiffs received full relief against Tularosa, the AAO did not provide them any relief against the NMPED.

-16-

The Court therefore concludes that the Plaintiffs are "aggrieved" as to the portion of the AAO Decision that denied them relief against the NMPED.

### B.    THE NMPED WAS AFFORDED REASONABLE NOTICE AND OPPORTUNITY TO COMPEL LOCAL COMPLIANCE

The NMPED argued in its motion to dismiss that the IDEA claim against it should also be dismissed because it was not afforded a reasonable opportunity to compel Tularosa to comply with the IDEA.  In its October19, 2006 Memorandum Opinion and Amended Order, the Court declined to decide this issue, because it had already determined that it would dismiss the IDEA claim because the Plaintiffs were not aggrieved parties.  Because the Court has reconsidered and reversed its aggrieved party determination, the Court must now determine whether the NMPED was afforded notice and an opportunity to compel local compliance.

To establish that an SEA is obligated to provide direct services, a plaintiff must show the following: (i) the LEA committed a significant breach of responsibility; (ii) the plaintiff gave adequate notice to the responsible state officials of the LEA's noncompliance; and (iii) the State had a reasonable opportunity to compel local compliance.  See Doe by Gonzales v. Maher, 793 F.2d at 1492; Moubry v. Indep. Sch. Dist. No. 696, 951 F. Supp. at 898.  The Amended Complaint alleges that, on September 25, 2003, the Plaintiffs wrote to the NMPED explaining that Matthew was not attending school based on behaviors his autism caused and that Tularosa was not taking steps to provide him a FAPE.  See Amended Complaint ¶ 40, at 8.  The Plaintiffs also allege that, sometime after August 2003 and before September 20, 2004, the date the administrative due process hearing in this case began, Tularosa sought guidance from the NMPED concerning its responsibility to provide Matthew a FAPE, and that the NMPED thereafter provided case references in support of Tularosa's continuing failure to provide Matthew a FAPE.  See id. ¶¶ 43-44, at 9. The Plaintiffs did

not file their IDEA administrative due process complaint against Tularosa and the NMPED until May 2004.  See February 13 MOO at 3 (citing Parties' Stipulations for Stay-put Injunction Hearing at 2, filed January 26, 2006 (Doc. 44)).  The NMPED thus had over seven months from the time the Plaintiffs informed the NMPED by letter that Matthew was not receiving a FAPE to compel Tularosa to provide a FAPE.

The NMPED nonetheless argues that it did not have actual notice of Tularosa's failure to provide a FAPE until the AAO issued its ruling that Tularosa failed to provide a FAPE.  The Court disagrees.  When the Plaintiffs allegedly informed the NMPED on September 25, 2003, in writing, that Matthew was not attending school because of his autistic behaviors and that Tularosa was failing to provide Matthew with a FAPE, the Plaintiffs adequately informed the NMPED of Tularosa's noncompliance with the IDEA.  In fact, the state complaint procedures appear to require no more.  See 34 C.F.R. § 300.153 (signed written complaint must include statement of public agency's violation of law and facts on which statement is based, and in the case of an individual child: a description of the nature of the problem of the child, including facts relating to the problem, and a proposed resolution of the problem to the extent known and available to the party at the time the complaint is filed); N.M. A.D.C.  6.31.2.13(H)(2) (state complaint must be in writing, signed by complainant or his representative, be submitted to the SEB (or to the secretary of education, in the case of a complaint against the PED), include a statement that the SEA or public agency has violated state or federal law, and contain statement of facts on which statement is based, including efforts complainant has made to resolve complaint with agency).  Based on the Amended Complaint's allegations, the NMPED was afforded notice and an adequate opportunity to compel local compliance sufficient to establish its obligation to provide direct services and survive a motion

to dismiss.[3]  The Court will thus amend its October 19, 2006 Memorandum Opinion and Amended Order and reinstate the Plaintiffs' IDEA claim against the NMPED.

## II.   THE COURT WILL GRANT THE PLAINTIFFS' REQUEST FOR RECONSIDERATION, OR IN THE ALTERNATIVE, CLARIFICATION OF SCOPE OF ORDER ON THE PLAINTIFFS' CLAIMS UNDER SECTION 504 AND ADA.

The Plaintiffs additionally request that the Court clarify the scope of its October 19, 2006 Memorandum Opinion and Amended Order to reflect that the Plaintiffs' Section 504 and ADA claims for damages survive.  The Plaintiffs argue that it is improper to dismiss their discrimination claims at this juncture, because the NMPED's motion to dismiss was limited to argument that the dismissal of the Section 504 and ADA claims was warranted based on a failure to exhaust, lack of standing, and that the Plaintiffs' claims are moot or not ripe, arguments that the Court rejected.  In response, the NMPED argues that the Plaintiffs' Section 504 and ADA claims require proof of intentional discrimination.  The NMPED cites to its Memorandum in Support of Motion for Summary Judgment for its argument that there is no evidence of intentional discrimination in this case.  See Response by Defendant Memorandum of Defendant New Mexico Public Education Department, filed November 16, 2006 (Doc. 100); Defendant New Mexico Public Education Department in Support of Motion for Summary Judgment, filed August 24, 2006 (Doc. 81).

In its February 13, 2007 Memorandum Opinion and Order denying the Plaintiffs' motion for

_____

[3] The case upon which the NMPED relies, B.H. v. Southington Bd. of Educ., 273 F. Supp. 2d 194 (D. Conn. 2003), is distinguishable.  There, the plaintiffs did not inform the State defendants by letter that the LEA was not providing the plaintiff child a FAPE until after the due-process hearing concerning the same IEP was already pending.  See id. at 201.  In contrast, in this case, according to the allegations of the Amended Complaint, the Plaintiffs informed the NMPED of Tularosa's failure to provide Matthew a FAPE before the due-process hearing began.  Furthermore, contrary to the NMPED's argument, B.H. v. Southington Bd. of Educ. does not stand for the proposition that an SEA has notice of noncompliance only after a hearing officer has ruled that the LEA was not providing a student a FAPE.  See id. at 200-202. In addition, those plaintiffs never requested the state's involvement in the due-process hearing, unlike the Plaintiffs here.

a stay-put order, the Court clarified that "its October 19, 2006 Memorandum Opinion and Order granting PED's and Garcia's joint motion to dismiss did not dismiss Matthew's parents' ADA and Rehab Act claims to the extent that they seek damages unavailable under the IDEA." February 13 MOO at 7. Because the Court reverses its ruling in the October 19, 2006 Memorandum Opinion and Amended Order, and now finds that the Plaintiffs are aggrieved as to the portion of the AAO Decision that denied them relief against the NMPED, the Plaintiffs have not received all equitable relief that is allegedly due them. To the extent the Court's October 19, 2006 Memorandum Opinion and Amended Order can be construed as dismissing the Plaintiffs' Section 504 and ADA claims for equitable relief, the Court reverses that ruling. The Plaintiffs' Section 504 and ADA claims remain in the case at this juncture. With respect to the NMPED's argument that the Plaintiffs cannot prove intentional discrimination, the Court will reserve ruling on that issue until briefing on the NMPED's motion for summary judgment is complete.

## III.    THE COURT WILL DENY THE PLAINTIFFS' REQUEST FOR CLARIFICATION THAT THE PLAINTIFFS' SECTION 1983 CLAIMS FOR VIOLATION OF EQUAL PROTECTION AND PROCEDURAL DUE PROCESS AGAINST THE NMPED SURVIVE.

In their reply, the Plaintiffs "urge the Court to address with specificity the survival of Plaintiffs' 1983 claims for violation of equal protection and procedural due process against the NMPED which claims were asserted on facts which differed from those applicable to Secretary Garcia who did not take over her position until after some of the actions alleged had occurred." Reply to Motion to Reconsider at 10-11. The Plaintiffs, however, subsequently declined argument on this issue, acknowledging that their § 1983 claims had been dismissed. See February 20 Letter at 2. The Plaintiffs therefore appear to have conceded that their § 1983 claims against the NMPED have been dismissed.

In any event, § 1983 creates a claim against a "person" who, under color of state law, deprived another of his federal constitutional or statutory rights. 42 U.S.C. § 1983. As the Court explained in its Memorandum Opinion and Order dismissing the Plaintiffs' § 1983 claims against Secretary Garcia, "'[n]either a state nor its officials acting in their official capacities are 'persons' under § 1983.'" Memorandum Opinion and Order at 3 (Doc. 93)(quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Governmental entities that are considered "arms of the State" for Eleventh Amendment purposes are also not "persons" under § 1983. Will v. Mich. Dep't of State Police, 491 U.S. at 70. The NMPED is a state agency, and therefore, not a "person" within the meaning of § 1983.[4] Accordingly, the Plaintiffs cannot state a valid § 1983 claim against the NMPED, and the Court will deny the Plaintiffs' request to amend its order to clarify that the Plaintiffs' § 1983 claims against the NMPED remain.

**IT IS THEREFORE ORDERED** that the Plaintiffs' Motion to Alter or Amend Judgment for Public Education Department and Against Plaintiffs or, in the Alternative to Clarify Scope of Order Against the Plaintiffs is granted in part and denied in part. The Plaintiffs' requests to reinstate the Plaintiffs' IDEA claim against the NMPED, and to clarify that the Plaintiffs' Section 504 and ADA claims remain in the case and have not been dismissed, is granted. The Plaintiffs' request to clarify that their § 1983 claims against the NMPED survive is denied. Only the Plaintiffs' § 1983

---

[4] The exception that state officials sued in their official capacities may be sued for prospective injunctive relief applies only because "'official-capacity actions for prospective relief are not treated as actions against the State.'" Will v. Mich. Dep't of State Police, 491 U.S. at 71 n.10 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)). Actions against arms of the State, however, are treated as actions against the State, and thus, § 1983 claims may not be brought against the NMPED for either damages or injunctive relief. See id. at 70-71; McLaughlin v. Bd. of Trs. of State Colleges of Colo., 215 F.3d 1168, 1172 (10th Cir. 2000) (governmental entity that is arm of state is not "person," and thus, § 1983 claim for damages and injunctive relief against arm of state must be dismissed).

claims against the NMPED have thus been dismissed and all other claims remain.


_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Tara Ford
   Pegasus Legal Services for Children
Albuquerque, New Mexico

-- and –

Gail Stewart
   Steven Granberg Attorney at Law, P.A.
Albuquerque, New Mexico

   *Attorneys for the Plaintiffs*

Gerald A. Coppler
   Coppler & Mannick, P.C.
Santa Fe, New Mexico

   *Attorneys for Defendant Board of Education of
      Tularosa Municipal Schools*

Stephen S. Hamilton
Jeffrey J. Wechsler
   Montgomery & Andrews
Santa Fe, New Mexico

   *Attorneys for Defendant New Mexico Public Education
      Department and Defendant Veronica Garcia*

Michael L. Carrico
   Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

   *Attorneys for Mary Ann Trott*