IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SIMON and BEVERLY CHAVEZ,
on behalf of their minor son,
MATTHEW CHAVEZ,

        Plaintiffs,

vs.                                                                          No. CIV 05-380 JB/RLP

BOARD OF EDUCATION OF TULAROSA
MUNICIPAL SCHOOLS; the NEW MEXICO
PUBLIC EDUCATION DEPARTMENT; and
VERONICA GARCIA, Secretary of the
NMPED in her individual and official capacity,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant New Mexico Public Education

Department's Motion for Summary Judgment, filed on August 24, 2006 (Doc. 80)("Motion").  The

Court held a hearing on May 22, 2008.  The primary issues are: (i) whether the New Mexico Public

Education Department ("NMPED") is entitled to summary judgment on the Plaintiffs' claims under

the Individuals with Disabilities Education Act ("IDEA"); and (ii) whether the NMPED is entitled

to summary judgment on the Plaintiffs' Americans with Disabilities Act ("ADA") and Rehabilitation

Act claims.  For the reasons stated at the hearing, and for reasons stated herein consistent with those

already stated, the Court will deny the motion for summary judgment. Because there are genuine

issues of material fact whether the student, Matthew Chavez, was otherwise qualified and whether

the NMPED denied him the benefit of an education during parts of the 2003-2004 and 2004-2005

school years because of his autism, the NMPED is not entitled to summary judgment as a matter of

law.

**FACTUAL BACKGROUND**

Matthew Chavez is a sixteen-year old public school student who qualifies for receipt of education based on autism.  See Memorandum of Defendant New Mexico Public Education Department in Support of Motion for Summary Judgment, filed August 24, 2006 (Doc. 81)("NMPED Memo."), Exhibit 3, Educational Program Summary for John Matthew Chavez at 1 (dated June 6, 2005 through September 16, 2005); First Amended Complaint for Violations of IDEA and Civil Rights Pursuant to Section 1983, ADA, and Section 504 of the Rehabilitation Act, filed May 2, 2005 (Doc. 5)("Complaint").  The IDEA regulations define autism as a

> a developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age three, that adversely affects a child's educational performance. Other characteristics often associated with autism are engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences.

34 C.F.R. § 300.8(c)(1)(i).  From 2003 until the spring of 2006, Matthew was enrolled in the Tularosa Municipal Schools ("Tularosa").  See Complaint ¶ 6, at 2-3.

NMPED supervises Tularosa and other local school districts in New Mexico.  See NMPED Memo. ¶ 4, at 2.  The Plaintiffs contend that NMPED "is also a public entity that may itself be directly responsible for education of students with disabilities in certain defined circumstances." Plaintiffs' Response in Opposition to Defendant New Mexico Public Education Department's Motion for Summary Judgment at 4, filed December 19, 2007 (Doc. 130)("Response"); 20 U.S.C. § 1413(h)(1)("Any State agency that desires to receive a subgrant for any fiscal year under section 1411(f) of this title shall demonstrate to the satisfaction of the State educational agency that . . . all children with disabilities who are participating in programs and projects funded under this subchapter receive a free appropriate public education, and that those children and their parents are

provided all the rights and procedural safeguards described in this subchapter."); 34 C.F.R. §§ 300.600 to 300.609.

NMPED argues that "[d]uring parts of the 2003-2004 and 2004-2005 school years, Student[, Matthew Chavez,] refused to attend school."  NMPED Memo. ¶ 5, at 2; Exhibit 1, Decision of the Due Process Hearing Officer ("DPHO Decision") at Findings of Fact ¶¶ 17, 20, 27, at 11-12; Exhibit 2, Decision of the Administrative Appeal Officer ("AAO Decision") at 3 (adopting the findings of fact in the DPHO Decision)).  The Plaintiffs contend that the due-process hearing officer ("DPHO") and the Administrative Appeal Officer ("AAO") "specifically found that [Matthew]'s school resistance was directly related to his disability."  Response at 5.  See DPHO Decision Findings of Fact ¶ 61, 16; AAO Decision at 5 ("It is also undisputed that Student's refusal to attend school, and the aggressive behavior characterizing that refusal, is directly related to Student's disability.").  While NMPED contends that Tularosa had an educational program "in place" for Matthew during the 2003-2004 and 2004-2005 school years, see NMPED Memo. ¶ 6, at 2; DPHO Decision Findings of Fact ¶¶ 14, 26, 28, 36, 52, at 10, 12-13, 15, the Plaintiffs counter that these services were not "'in place' for Matthew as he had no ability to access such services due to his inability to attend school for reasons directly related to his disability," Response at 6.  See DPHO Decision Findings of Fact ¶ 61, at 16; AAO Decision at 5.

NMPED contends that, at the administrative due-process hearing, the Plaintiffs prevailed on their IDEA claim.  See NMPED Memo. ¶ 10, at 3.  The Plaintiffs dispute that they prevailed at the administrative level, because they "appealed the relief awarded as inadequate to compensate student for denial of a FAPE.  Plaintiffs also appealed DPHO's refusal to accept jurisdiction of Plaintiffs['] claims against the NMPED."  Response at 7-8.  The Plaintiffs did not succeed on their Section 504

of the Rehabilitation Act claim at the administrative level, because the DPHO found that the "[p]arent has failed to prove that [the] District's responses to the problem of nonattendance were the result of deliberate indifference or that Student suffered discrimination based upon his disability as a consequence of [the] District's actions (or nonaction)." DPHO Decision at 28. The Plaintiffs contend that their nonsuccess at the administrative level on their Rehabilitation Act claim is not material, because the "DPHO refused jurisdiction over Plaintiffs' claims of discrimination against Matthew by the NMPED, as did the AAO." Response at 8. The Plaintiffs assert that "[t]he AAO was careful to limit her analysis of discrimination to discrimination based on denial of [a] FAPE and made no finding as to whether the district acted with deliberate indifference or other culpable intent." Id.; AAO Decision at 5.

The Plaintiffs contend that the NMPED refused to participate in the administrative due-process proceedings in this case. See Response ¶ 7, at 14. The Plaintiffs assert that:

> The NMPED knew or should have known that Tularosa limited educational placements to students with disabilities to inclusion placements, meaning that regardless of student disabilities and individual need, students with disabilities were educated in classes with their nondisabled peer[s] as opposed to a continuum of educational placements that would include smaller classes devoted to provision of special education services to students with disabilities.

Response ¶ 10, at 15; Exhibit 1, Chavez v. Tularosa Public Schools Due Process Hearing Transcript (dated September 20, 2004) at 47:1-49:25. The Plaintiffs argue that "[t]he NMPED knew or should have known that its [local educational agencies ("]LEAs["]] lacked capacity to meet the educational needs of school-aged students with autism but failed to take any steps to fill the gap in knowledge or training to meet the needs of school aged students with autism." Response, Exhibit 3, Letter from Gail Stewart and Tara Ford to Dr. Veronica C. Garcia (dated May 25, 2004); New Mexico State Department of Education -- Special Education Complaint Request Form (dated May 25, 2004);

Exhibit 5, Rule 1-030(b)(6) Deposition of the NMPED, Steve Oldroyd and Denise Koscielniak (dated June 28, 2005) at 110:1-153:225; Exhibit 6, Testimony in Chavez v. Tularosa (dated February 14, 2006) at 4:7-10, 16:15-17:3, 19:11-20:15, 22:1-28:25, 35:6-36:7

## PROCEDURAL BACKGROUND

On April 4, 2005, one month after the AAO issued her decision, Matthew's parents initiated this action by filing their Complaint for Violations of IDEA and Civil Rights Pursuant to Section 1983, ADA, and Section 504 of the Rehabilitation Act.  See Doc. 1.  On May 5, 2005, Matthew's parents filed their First Amended Complaint for Violations of IDEA and Civil Rights Pursuant to Section 1983, ADA, and Section 504 of the Rehabilitation Act ("First Amended Complaint").  See Doc. 5.

On June 17, 2005, Garcia filed Defendant Garcia's Motion to Dismiss First Amended Complaint, see Doc. 12, and Defendants NMPED and Garcia jointly filed the Motion of Defendants New Mexico Public Education Department and Veronica Garcia to Dismiss First Amended Complaint, see Doc. 15.  The Court granted those motions on October 4, 2006, see Doc. 93, and October 19, 2006, see Doc. 96, respectively.  The Court found that Matthew's parents had not established that Garcia's actions violated a constitutional right and that she was thus entitled to qualified immunity with respect to the § 1983 claims brought against her.  See Memorandum Opinion and Order at 1, 6-9, filed October 4, 2006 (Doc. 93).  Accordingly, the Court granted Garcia's motion to dismiss Matthew's parents' claims against her.  See id. at 9.  The Court also granted the NMPED's and Garcia's joint motion to dismiss.  See Memorandum Opinion and Order at 21, filed October 19, 2006 (Doc. 96)("October 19 MOO").  In doing so, the Court concluded that, as prevailing parties, Matthew's parents were prohibited from seeking enforcement or appeal of the

AAO's administrative decision in federal district court; the Court determined that the IDEA's appeal provision, 20 U.S.C. § 1415(i)(2)(A), did not provide the Court with subject-matter jurisdiction to hear those claims.  See id. at 1-2, 19-21.  In granting the joint motion to dismiss, the Court suggested, without making any rulings whether such a claim is possible, that Matthew's parents might seek enforcement of the AAO's decision, pursuant to Robinson v. Pinderhughes, 810 F.2d 1270 (4th Cir. 1987), by bringing a § 1983 claim based upon the statutory right that Matthew accrued under the IDEA when the AAO issued her decision.  See October 19 MOO at 7-15, 19-21.

In granting the Defendants NMPED's and Garcia's joint motion to dismiss, the Court determined that Matthew's parents had exhausted their administrative remedies under the IDEA. See October 19 MOO at 17-18.  In their joint motion to dismiss, NMPED and Garcia argued that the Court should dismiss Matthew's parents' ADA and Rehab Act claims because they had not exhausted the IDEA's administrative remedies.  See Memorandum of Defendants New Mexico Public Education Department and Veronica Garcia in Support of Motion to Dismiss First Amended Complaint at 4-13, filed June 17, 2006 (Doc. 16).  The Court recognized that, because Matthew's parents prevailed under the IDEA at the administrative level, awarding additional equitable relief under the ADA and Rehabilitation Act would be duplicative.  See Hoekstra v. Indep. Sch. Dist., 103 F.3d 624, 626-27 (8th Cir. 1996)("[E]nforcement remedies, procedures and rights under Title II of the ADA are the same as under § 504.");  Miller v. Bd. of Educ. of Albuquerque Pub. Schs., 455 F. Supp.2d. 1286, 1315 (D.N.M. 2006)(Armijo, J.)("To the extent that the AAO already awarded equitable relief under the IDEA . . . , it would appear that Plaintiff's ADA and Section 504 claims are moot insofar as they merely serve as means of duplicating the equitable relief previously awarded under the IDEA.");  Eddins v. Excelsior ISD, No. 9:96-CV-10, 1997 WL 470353 at *4 (E.D.

Tex. August 6, 1997)("Since the relevant federal regulations and case law indicate that requirements of the Rehabilitation Act may be satisfied through compliance with IDEA it appears these separate Acts create a nearly identical substantive right to receive a free appropriate public education.")(citing Jeremy H. v. Mt. Lebanon Sch. Dist., 95 F.3d 272, 287-80 (3d Cir. 1996), and Urban v. Jefferson County Sch. Dist., 89 F.3d 720, 728 (10th Cir. 1996)).    The Court also acknowledged that Matthew's parents sought monetary damages for loss of future earning capacity, pain and suffering, emotional distress, loss of educational services and opportunity, and lost wages. See First Amended Complaint ¶ 62, at 12, 13.    While monetary, tort-type damages are generally unavailable under the IDEA, consequential damages may be awarded under the ADA and Rehabilitation Act upon a showing of the required intent element.    See Sellers v. Sch. Bd. of Manassas, 141 F.3d 524, 527-29 (4th Cir. 1998); Brown v. Hobbs Mun. Sch. Dist., No. CIV-02-1305 (D.N.M.)(Browning, J.), Memorandum Opinion and Order at 11-13, filed February 19, 2004 (Doc. 62).    As such, the Court notes that its October 19, 2006 Memorandum Opinion and Order granting NMPED's and Garcia's joint motion to dismiss did not dismiss Matthew's parents' ADA and Rehabilitation Act claims to the extent that they seek damages unavailable under the IDEA.

On August 24, 2006, the NMPED filed a motion for summary judgment.    See Motion at 1. The NMPED contends that the IDEA does not impose a duty on it to provide direct services to Matthew under these circumstances.    See NMPED Memo. at 8-15.    NMPED contends that the Court should grant summary judgment on the Plaintiffs' ADA and Rehabilitation Act claims, because "the factual basis for these claims is indistinguishable from that for the IDEA claim."    Id. at 15.    The NMPED contends that the Plaintiffs cannot establish that Matthew was otherwise qualified for the benefits allegedly denied to him, and have failed to establish that the NMPED discriminated against

Matthew by reason of his disability.  See id. at 17-25.  NMPED argues that the Plaintiffs cannot

show that Matthew is otherwise qualified, because "they do not attempt to show that he qualifies for

the special education services 'in spite of' his autism."  Id. at 21.  NMPED states that the "Plaintiffs

notably do not argue that Student's 'nondisabled peers' are receiving the special education services

that he claims were denied to him."  Id.  See Complaint ¶¶ 32-33, at 7.  The NMPED notes that the

Plaintiffs contend that Matthew is "similarly situated" to his public school student peers who do not

have autism.  NMPED Memo. at 21; Complaint ¶¶ 59-60, at 11-12.  NMPED contends that "[t]he

gravamen of the Complaint is not that Student was treated worse than other public school students

in Tularosa, but that special accommodations were not made for him when he refused to attend

school and his parents felt that they could not get him to school."  NMPED Memo. at 22.  The

NMPED asserts that the

> Plaintiffs cannot establish that Student was discriminated against by reason of his autism.  In the administrative proceedings below, the DPHO rejected Plaintiffs' discrimination claim under § 504 of the Rehabilitation Act and ruled that discrimination could be proven under § 504 as well as Title II of the ADA by showing either an intent to discriminate or deliberate indifference.

NMPED Memo. at 23.  See DPHO Decision at 28.  NMPED contends that:

> In their complaint in this action, Plaintiffs charge the NMPED with "intentional discrimination" under both § 504 of the Rehabilitation Act and Title II of the ADA.  Complaint ¶¶ 67-68.  Yet Plaintiffs do not challenge the findings in the administrative proceedings below of no deliberate indifference or intent to discriminate.  See id. ¶¶ 1, 11-22.  Moreover, after a full opportunity to take discovery in this action, Plaintiffs can produce no evidence of deliberate indifference or intentional discrimination.  Plaintiffs can do no more than repeat the conclusory allegation in their complaint that Student was intentionally discriminated against by reason of his disability.  Exhibit 12.  This conclusory assertion fails to satisfy Plaintiffs' summary judgment burden of setting forth specific facts showing that there is a genuine issue for trial.

NMPED Memo. at 24.

The NMPED contends that Matthew has already been compensated for denial for educational services.  See Defendant NMPED's Reply in Support of Summary Judgment at 6, filed January 22, 2008 (Doc. 132)("Reply").  The NMPED argues that it was not given adequate notice under the IDEA that Tularosa was violating the IDEA.  See id. at 8.  The NMPED asserts that, because the AAO Decision already provided a remedy to Matthew for denial of educational services, "'awarding additional equitable relief under the ADA and Rehab Act would be duplicative.'"  Reply at 10-11 (quoting Memorandum Opinion and Order at 6, filed February 13, 2007 (Doc. 112)("February 13, 2007 Opinion and Order")).  NMPED contends that the Plaintiffs are not entitled to damages for their ADA and Rehabilitative Act Claims, because they have not produced evidence of NMPED's intentional discrimination.  See Reply at 11.

The Plaintiffs argue that the NMPED violated the IDEA.  See Response at 15-19.  The Plaintiffs contend that they do not have to prove intentional discrimination to prove a violation of the Rehabilitation Act.  See id. at 22 n.3.  The Plaintiffs acknowledge that they must demonstrate that NMPED acted with deliberate indifference to pursue a damages claim.  See id.  The Plaintiffs argue that "[s]chool aged students in New Mexico attend school."  Id. at 24.

On January 8, 2008, the Plaintiffs submitted supplemental authority.  See Plaintiffs' Notice of Supplemental Authority, filed January 8, 2008 (Doc. 131)("First Supplemental Authority").  The Plaintiffs contend that a letter issued from the Office of Civil Rights ("OCR") regarding discrimination against students with disabilities provides the "proper analysis of the 'otherwise qualified' language under Section 504 and Title II."  Id. at 1.  The Office of Civil Rights

> . . . serve[s] student populations facing discrimination and the advocates and institutions promoting systemic solutions to civil rights problems. An important responsibility is resolving complaints of discrimination. Agency-initiated cases, typically called compliance reviews, permit OCR to target resources on compliance

problems that appear particularly acute. OCR also provides technical assistance to help institutions achieve voluntary compliance with the civil rights laws that OCR enforces. An important part of OCR's technical assistance is partnerships designed to develop creative approaches to preventing and addressing discrimination.

Overview of the Agency, <u>available at:</u> http://www.ed.gov/about/offices/list/ocr/index.html.

The Plaintiffs argue that the letter "addresses the question of whether schools can deny qualified students with disabilities participation in challenging academic programs." First Supplemental Authority at 2.

The letter from the OCR stated:

**Prohibition Against Disability-Based Discrimination in Accelerated Programs**

The practice of denying, on the basis of disability, a qualified student with a disability the opportunity to participate in an accelerated program violates both Section 504 and Title II. Discrimination prohibited by these laws includes, on the basis of disability, denying a qualified individual with a disability the opportunity to participate in or benefit from the recipient's aids, benefits, or services, and affording a qualified individual with a disability with an opportunity to participate in or benefit from the aid, benefit or service in a manner that is not equal to that offered to individuals without disabilities. 34 CFR 104.4(a), (b)(1)(i), (b)(1)(ii); 28 CFR 35.130(a), (b)(1)(i), (b)(1)(ii).

Under Section 504 and Title II, a recipient may not utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 34 CFR 104.4(b)(4) and 28 CFR 35.130(b)(3). A public entity also may not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered. 28 CFR 35.130(b)(8). Public school students with disabilities who require special education and/or related services receive them either through implementation of an individualized education program (IEP) developed in accordance with Part B of the IDEA or a plan developed under Section 504. 34 CFR 104.33. It is unlawful to deny a student with a disability admission to an accelerated class or program solely because of that student's need for special education or related aids and services, or because that student has an IEP or a plan under Section 504. The practice of conditioning participation in an accelerated class or program by a qualified student with a disability on the forfeiture of special education or of related aids and services to which the student is legally

-10-

entitled also violates the Section 504 and Title II requirements stated above.

Please note that nothing in Section 504 or Title II requires schools to admit into accelerated classes or programs students with disabilities who would not otherwise be qualified for these classes or programs.  Generally, under Section 504, an elementary or secondary school student with a disability is a qualified individual with a disability if the student is of compulsory school age.  However, schools may employ appropriate eligibility requirements or criteria in determining whether to admit students, including students with disabilities, into accelerated programs or classes.  Section 504 and Title II require that qualified students with disabilities be given the same opportunities to compete for and benefit from accelerated programs and classes as are given to students without disabilities.  34 CFR 104.4(b)(1)(ii) and 28 CFR 35.130(b)(1)(ii).

Furthermore, a recipient's provision of necessary special education and related aids and services to qualified students with disabilities in accelerated classes or programs must be consistent with the Section 504 and Title II requirements regarding free appropriate public education (FAPE).

First Supplemental Authority, Exhibit 1,  Letter from Stephanie Monroe, Assistant Secretary for Civil Rights (dated December 26, 2007), available at: http://www.ed.gov/about/offices/ list/ocr/letters/colleague-20071226.html (footnote omitted)("OCR Letter").  The OCR noted, in a footnote, that "[t]he term 'related aids and services' as used here is intended to include both the Section 504 requirements at 34 CFR 104.33(c) and the equivalent requirements under the IDEA, i.e. related services, supplementary aids and services, program modifications and supports for school personnel.  See 34 CFR 300.34, 300.42, and 300.320(a)(4)."  OCR Letter at 2 n.2.

On February 22, 2008, the Plaintiffs submitted additional supplemental authority.  See Plaintiff's Second Notice of Supplemental Authority, filed February 22, 2008 (Doc. 134)("Second Supplemental Authority").  The Plaintiffs submitted Mark H. v. Lemahieu, 513 F.3d 922 (9th Cir. 2008), for the Court's consideration.  See Second Supplemental Authority at 1.  The Plaintiffs contend that Mark H. v. Lemahieu "furnishes additional authority for the Plaintiffs' ability to pursue equitable and damages relief from NMPED pursuant to Section 504 as distinct from any remedy

available under the IDEA."  Second Supplemental Authority at 2.

At the May 22, 2008 hearing, the NMPED conceded that it is responsible for providing education to students under the IDEA.  See Transcript of Hearing (taken May 22, 2008)("Tr.") at 17:21-18:6 (Court & Wechsler).[1]  The NMPED further conceded that the IDEA does not distinguish between services provided by the LEA and the state.  See id. at 18:10-18 (Court & Weschler).  The NMPED contended that, under N.M.S.A. 1978, § 22-13-5, the LEA has the primary responsibility for providing direct services to students.  See Tr. at 18:19-22 (Weschler).  The NMPED argued that Ellenberg v. New Mexico Military Institute, 478 F.3d 1262 (10th Cir. 2007), was inapplicable to this lawsuit.  See Tr. at 39:5-40:7 (Weschler).  The NMPED contended that the Plaintiffs were requesting that Matthew be provided a "very special accommodation" and that Matthew is not otherwise qualified.  Id. at 69:10-16 (Weschler).

The Plaintiffs noted that this case has "an atypical [procedural] posture," because the NMPED did not participate in the due-process hearing.  Tr. at 43:14-16 (Ford).  The Plaintiffs argued that it does not "take a due process hearing to determine that the complete failure to provide any educational services to [Matthew] violated IDEA."  Id. at 44:24-45:2 (Ford).  The Plaintiffs conceded that the additional evidence they wish to present primarily is relevant to the remedy that they seek.  See id. at 50:16-21 (Court & Stewart).  The Plaintiffs contended, however, that the additional evidence they wish to present is also relevant to the state's notice of their IDEA claim.  See id. at 50:20-23 (Stewart).  The Plaintiffs argued that Matthew is "otherwise qualified," because he is a student of compulsory school-attendance age.  Id. at 59:22-24 (Stewart).  The Plaintiffs noted

---

[1]  The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

that NMPED has not argued that New Mexico does not enforce its truancy laws.  See id. at 60:13-24

(Court & Stewart).  The Plaintiffs asserted that the NMPED's failure to act for so many months "is

evidence of the state's deliberate indifference along with other evidence that would be presented at

a trial with regard to the state's complete systematic failure and lack of infrastructure for even being

concerned about the rights of students like Matthew Chavez."  Id. at 63:4-9 (Stewart).

## LAW GOVERNING MOTIONS FOR SUMMARY JUDGMENTS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall

be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has

"the initial burden to show that there is an absence of evidence to support the nonmoving party's

case." Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F.Supp.2d 767, 774 (D.N.M. 2007)(Browning,

J.)(internal quotation marks omitted).  That is, the moving party has the initial burden to demonstrate

absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant meets that burden, then the burden shifts to the nonmovant "to present specific,

admissible facts from which a rational trier of fact could find for the nonmovant." Velasquez v.

Frontier Med., Inc., 375 F.Supp.2d 1253, 1262 (D.N.M. 2005)(Browning J.).  The nonmovant must

set forth specific facts and cannot rely only on his pleadings.  See Adler v. Wal-Mart Stores, Inc.,

144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference

to affidavits, deposition transcripts, or specific exhibits incorporated therein."  Id.

"For the purposes of summary judgment, the court assumes the evidence of the nonmoving

party to be true, resolves all doubts against the moving party, construes all evidence in the light most

-13-

favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's

favor." Velasquez v. Frontier Med., Inc., 375 F.Supp.2d at 1263 (citing Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986)).  Summary judgment is appropriate if there is no genuine issue of

material fact.  See Trujillo v. Bd. of Educ., Albuquerque Public Sch., 410 F.Supp.2d 1033, 1039

(D.N.M. 2005)(Browning, J.).   "An issue of fact is 'genuine' if the evidence is significantly

probative or more than merely colorable such that a jury could reasonably return a verdict for the

non-moving party." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  "Essentially, the

inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury

or whether it is so one-sided that one party must prevail as a matter of law." Velasquez v. Frontier

Med., Inc., 375 F.Supp.2d at 1263 (internal quotation marks and citations omitted).

## RELEVANT LAW REGARDING THE
## ADA AND THE REHABILITATION ACT

Section 504 of the Rehabilitation Act provides:

No otherwise qualified individual with a disability in the United States, as defined
in section 705(20) of this title, shall, solely by reason of her or his disability, be
excluded from the participation in, be denied the benefits of, or be subjected to
discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C.A. § 794(a).  The FAPE provided in the Rehabilitation Act is:

(b) Appropriate education.

(1) For the purpose of this subpart, the provision of an appropriate education
is the provision of regular or special education and related aids and services
that (i) are designed to meet individual educational needs of handicapped
persons as adequately as the needs of nonhandicapped persons are met and
(ii) are based upon adherence to procedures that satisfy the requirements of
§§ 104.34, 104.35, and 104.36.

34 C.F.R. § 104.33(b).  34 C.F.R. § 104.4(b)(3) provides: "Despite the existence of separate or

different aid, benefits, or services provided in accordance with this part, a recipient may not deny

a qualified handicapped person the opportunity to participate in such aid, benefits, or services that are not separate or different." Id.  The Rehabilitation Act provides: "It is the policy of the United States that all programs, projects, and activities receiving assistance under this chapter shall be carried out in a manner consistent with the principles of . . . inclusion, integration, and full participation of the individuals."  29 U.S.C. § 701(c)(3).

In New Mexico Association for Retarded Citizens v. New Mexico, 678 F.2d 847 (10th Cir. 1982), the United States Court of Appeals for the Tenth Circuit explained:

> We find no language in the statute or regulations suggesting that proof of disparate treatment is essential to establishing a Section 504 infraction in connection with the educational rights of handicapped children.  The handicapped by definition demand vastly different learning programs than the nonhandicapped.  Accordingly, the State's disparate treatment argument is rejected.
>
> Contrary to the State's assertion, there is evidence in the record tending to establish discrimination against handicapped school children. The State is, of course, obligated by both federal and New Mexico law to provide all its pre-college age children with appropriate educations. 34 C.F.R. s 104.33(a) (1980); N.M.Const. art. XII, s 1; N.M.Stat.Ann. s 22-13-5.   Under Section 504 and its regulations properly interpreted, the State is forbidden from discriminating against the handicapped in meeting this obligation.  Trial evidence demonstrates, however, that the state has, inter alia : (1) failed to adequately diagnose and identify those handicapped children requiring special education attention and program modification; (2) failed to accommodate and integrate those handicapped children into physical education, vocational counseling, learning and personal guidance programs presently serving their nonhandicapped classmates; and (3) permitted great disparity among the various school districts in their treatment of handicapped students. Such practices arguably violate Section 504.

N.M. Ass'n for Retarded Citizens v. New Mexico, 678 F.2d at 854-55 (footnotes omitted).  Thus, "modification of existing programs may be required where the financial burden would not be excessive and the accommodation would enable handicapped children to realize the benefits of the State's educational program."  Id. at 855.

Section 202 of the ADA provides: "Subject to the provisions of this subchapter, no qualified

-15-

individual with a disability shall, by reason of such disability, be excluded from participation in or

be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity. 42 U.S.C. § 12132.

"Under the ADA or the Rehabilitation Act, [the plaintiff] is obligated to show [(i)] he was

'otherwise qualified' for the benefits he sought and [(ii)] that he was denied those 'soley by reason

of disability.'" Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1135, 1144 (10th Cir. 2005).  The

Rehabilitation Act "proscribes discrimination between the nonhandicapped and the 'otherwise

qualified' handicapped." Johnson by Johnson v. Thompson, 971 F.2d 1487, 1494 (10th Cir. 1992).

"Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look

to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge . . . and

vice versa." Cummings v. Norton, 393 F.3d 1186, 1190 n.2 (10th Cir. 2005)(internal citation and

quotation marks omitted).  "A prima facie case under § 504 consists of proof that (1) plaintiff is

handicapped under the Act; (2) he is "otherwise qualified" to participate in the program; (3) the

program receives federal financial assistance; and (4) the program discriminates against plaintiff."

Hollonbeck v. U.S. Olympic Comm., 513 F.3d 1191, 1194 (10th Cir. 2008).  "The Rehabilitation

Act defines 'disability' in the same way as the ADA."  Dixon v. Regents of Univ. of N.M, 242 F.3d

388 (Table), 2000 WL 1637557  at * 4 (10th Cir. November 1, 2000).

"An otherwise qualified person is one who is able to meet all of a program's requirements

in spite of his handicap." Southeast Cmty. Coll. v. Davis, 442 U.S 397, 406 (1979).  See Johnson

by Johnson v. Thompson, 971 F.2d at 1494 (stating that: "infants required the medical treatment

sought only because they were born with [mylomengingocele, a type of spina bifida]. Thus, they

were not "otherwise qualified" to receive the medical treatment denied to them because of the

alleged discrimination."); Mallett v. Wisconsin Div. of Vocational Rehabilitation, 130 F.3d 1245,

1257 (7th Cir. 1997)(holding that a plaintiff was not "otherwise qualified" under the Rehabilitation

Act, because he "would not have been eligible to receive any rehabilitative services in the absence

of his handicap.")(citing Flight v. Gloeckler, 878 F.Supp. 424, 426 (N.D.N.Y.1995)(concluding

individual with disabilities is not "otherwise qualified" for Rehabilitation Act), aff'd, 68 F.3d 61 (2d

Cir.1995)); Baumeister v. N.M. Comm'n for the Blind, 425 F.Supp.2d 1250, 1266 (D.N.M.

2006)(explaining that the plaintiffs were not "'otherwise qualified' to receive the denied services

. . . . [because t]he agency Defendants have a statutory duty to provide vocational training and

related services to blind persons; 'Plaintiffs are entitled to such services because they are blind.'").

The Rehabilitation Act prohibits otherwise qualified disabled individuals from being treated

less favorably than nondisabled individuals.  See Johnson by Johnson v. Thompson, 971 F.2d at

1494 ("Section 504 seeks to assure evenhanded treatment; neither the language, purpose, nor history

of [section] 504 reveals an intent to impose an affirmative-action obligation' on recipients of federal

financial assistance.")(internal quotation marks omitted).  Thus, "[w]ithout a showing that the

nonhandicapped received the treatment denied to the 'otherwise qualified' handicapped, the

appellants cannot assert that a violation of section 504 has occurred."  Id.  In Doe v. Pfrommer, 148

F.3d 73 (2d Cir. 1998), the United States Court of Appeals for the Second Circuit states:

> Likewise, in this case, what [the plaintiff] ultimately seeks to challenge is not illegal
> discrimination against the disabled, but the substance of the services provided to him
> through [Vocational Educational Services for Individuals with Disabilities
> [("]VESID[")]. To provide the modifications he seeks would not serve the purpose
> of leveling the playing field with respect to the benefits under VESID available to
> the non-handicapped. Accordingly, we affirm the district court's grant of summary
> judgment on plaintiff's claims for discrimination under § 504 of the Rehabilitation
> Act and the ADA.

148 F.3d at 84.  See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)("No discrimination is

alleged; [the plaintiff] was not treated worse because he was disabled. His complaint is that he was not given special accommodation.").

In Urban v. Jefferson County Schools, District R-1, 89 F.3d 720 (10th Cir. 1996), the Tenth Circuit found that, under the IDEA, the child did not have a right to placement at a neighborhood school if he was receiving appropriate services at his current school. See 89 F.3d at 727. "Relying on the similarity between the substantive and procedural frameworks of the IDEA and section 504 [of the Rehabilitation Act] . . . [the Tenth Circuit] conclude[d] that if a disabled child is not entitled to a neighborhood placement under the IDEA, he is not entitled to such a placement under section 504." Id. at 728 (citing Smith v. Robinson, 468 U.S. 992 (1984)(noting that the IDEA and the Rehabilitation Act "are built around fundamental notions of equal access to state programs and facilities" and thus "their substantive requirements have been interpreted to be strikingly similar") and D.F. v. Western Sch. Corp., 921 F.Supp. 559, 573-74 (S.D.Ind. 1996)(holding that when a plaintiff failed to prove that an IEP violated the IDEA, the plaintiff's claims based on the ADA and the Rehabilitation Act also fail)).

Plaintiffs do not necessarily have to prove intentional discrimination to demonstrate a violation of the Rehabilitation Act. In Pushkin v. Regents of University of Colorado, 658 F.2d 1372 (10th Cir. 1981), the Tenth Circuit set out the standard for courts deciding motions for summary judgment on Rehabilitation Act claims:

> 1) The plaintiff must establish a prima facie case by showing that he was an otherwise qualified handicapped person apart from his handicap, and was rejected under circumstances which gave rise to the inference that his rejection was based solely on his handicap;
>
> 2) Once plaintiff establishes his prima facie case, defendants have the burden of going forward and proving that plaintiff was not an otherwise qualified handicapped person, that is one who is able to meet all of the program's requirements in spite of

his handicap, or that his rejection from the program was for reasons other than his handicap;

3) The plaintiff then has the burden of going forward with rebuttal evidence showing that the defendants' reasons for rejecting the plaintiff are based on misconceptions or unfounded factual conclusions, and that reasons articulated for the rejection other than the handicap encompass unjustified consideration of the handicap itself.

658 F.2d at 1387.  "Once plaintiff sets forth a prima facie case of handicap discrimination, defendant then has the burden of proving either that plaintiff was not an otherwise qualified handicapped person or that his rejection was for reasons other than his handicap."  Murphy By and Through Murphy v. Midwest City-Del City School Dist., 986 F.2d 1428 (Table), 1993 WL 53544 at *1 (10th Cir. February 17, 1993).  "Plaintiff then has the burden of demonstrating that defendant's reasons for rejecting plaintiff are based on misconceptions or unfounded factual conclusions."  Id.  The Tenth Circuit noted that,

entitlement to compensatory damages under section 504 of the Rehabilitation Act requires proof the defendant has intentionally discriminated against the plaintiff. Further, intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.

Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999).  In Powers v. MJB Acquisition Corp., the Tenth Circuit held that "entitlement to compensatory damages under . . . the Rehabilitation Act requires proof the defendant has intentionally discriminated against the plaintiff. Further, intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."  184 F.3d at 1153.  In Alexander v. Choate, 469 U.S. 287 (1985), the Supreme Court noted that the Rehabilitation Act, under some circumstances, reaches disparate impact claims:

[A]mong the instances of discrimination that the section would prohibit [are], the use of transportation and architectural barriers, the discriminatory effect of job

qualification . . . procedures and the denial of special educational assistance for handicapped children. . . . These statements would ring hollow if the resulting legislation could not rectify the harms resulting from action that discriminated by effect as well as by design.

469 U.S. at 297 & n.17 (internal quotation marks omitted).

In <u>Tennessee v. Lane</u>, 541 U.S. 509 (2004), the Supreme Court of the Untied States noted:

It is not difficult to perceive the harm that Title II is designed to address. Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights. For example, "[a]s of 1979, most States . . . categorically disqualified 'idiots' from voting, without regard to individual capacity." The majority of these laws remain on the books, and have been the subject of legal challenge as recently as 2001.  Similarly, a number of States have prohibited and continue to prohibit persons with disabilities from engaging in activities such as marrying and serving as jurors.  The historical experience that Title II reflects is also documented in this Court's cases, which have identified unconstitutional treatment of disabled persons by state agencies in a variety of settings, including unjustified commitment, <u>e.g.</u>, <u>Jackson v. Indiana</u>, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); the abuse and neglect of persons committed to state mental health hospitals, <u>Youngberg v. Romeo</u>, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); and irrational discrimination in zoning decisions, <u>Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).  The decisions of other courts, too, document a pattern of unequal treatment in the administration of a wide range of public services, programs, and activities, including the penal system, public education, and voting.  Notably, these decisions also demonstrate a pattern of unconstitutional treatment in the administration of justice.

541 U.S. at 525 (footnotes omitted).

In <u>Mark H. v. Lemahieu</u>, the United States Court of Appeals for the Ninth Circuit noted that "[t]he FAPE requirements in the IDEA and in the [Rehabilitation Act] regulations are, in fact, overlapping but different."  513 F.3d at 925.  The Ninth Circuit held that the availability of relief under the IDEA did not limit availability of damages under the Rehabilitation Act FAPE regulations, because "Congress has clearly stated its intent to preserve all remedies under [the Rehabilitation Act] for acts that also violate the IDEA."  <u>Id.</u>  The Ninth Circuit noted that 34 C.F.R. § 104.34

-20-

requires that recipients of federal funds "place disabled individuals in a 'regular educational environment' unless it can be shown that 'the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily.'"  Mark H. v. Lemahieu, 513 F.3d at 929-30 (quoting 34 C.F.R. § 104.34(a)).  The Ninth Circuit held that "Section 504 establishes an implied private right of action allowing victims of prohibited discrimination, exclusion, or denial of benefits to seek the full panoply of remedies, including equitable relief and compensatory damages."  Mark H. v. Lemahieu, 513 F.3d at 930 (internal quotation marks and bracket omitted).  The Ninth Circuit held that "Section 504 can be privately enforced to provide, in addition to prospective relief, compensatory but not punitive damages for past violations."  Id.  The Ninth Circuit also held that "availability of relief under the IDEA does not limit the availability of a damages remedy under [the Rehabilitation Act] for failure to provide the FAPE independently required by [the Rehabilitation Act] and its implementing regulations."  Id. at 935.  The Ninth Circuit found:

> § 104.33 requires a comparison between the treatment of disabled and nondisabled children, rather than simply requiring a certain set level of services for each disabled child. So, contrary to the district court's apparent concern that the § 504 regulations create free-floating "affirmative obligations," in fact the obligation created is a comparative one. In other words, school districts need only design education programs for disabled persons that are intended to meet their educational needs to the same degree that the needs of nondisabled students are met, not more.

Mark H. v. Lemahieu, 513 F.3d at 936.  The Ninth Circuit's caselaw on a damages remedy for a Rehabilitation Act violation states

> that § 504 itself prohibits actions that deny disabled individuals "meaningful access" or "reasonable accommodation" for their disabilities. . . . Those cases then go on to analyze the state of mind with regard to a denial of "meaningful access" or "reasonable accommodation" necessary to justify monetary damages. As to this latter question, we have held that plaintiffs must prove a mens rea of "intentional discrimination," to prevail on a § 504 claim, but that that standard may be met by

> showing "deliberate indifference," and not only by showing "discriminatory
> animus." . . . Thus, a public entity can be liable for damages under § 504 if it
> intentionally or with deliberate indifference fails to provide meaningful access or
> reasonable accommodation to disabled persons.

Mark H. v. Lemahieu, 513 F.3d at 938 (internal citations omitted).  Thus, in the Ninth Circuit, a

claimant "will ultimately have to demonstrate that the Agency was deliberately indifferent to the

violation of whatever requirements the family validly seeks to enforce."  Id. at 939.

In Ellenberg v. New Mexico Military Institute, 478 F.3d 1262 (10th Cir. 2007), the Tenth

Circuit stated that "our precedent does not hold that a party's discrimination claims under the

[Rehabilitation Act] and the ADA must automatically be dismissed if an IDEA claim fails."  478

F.3d at 1281.  The Tenth Circuit rejected the defendant's contention that, "if the state provides a

student with a FAPE in the least restrictive environment, it has not violated [the Rehabilitation Act]

or the ADA."  Id. at 1281 n.22.  The Tenth Circuit explained:

> Adopting [the defendant]'s reading . . . would also contradict Congress' express
> legislative mandate that the IDEA should not be "construed to restrict or limit the
> rights, procedures, and remedies available under the Constitution, the Americans
> with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other
> Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(
> l ).  At least one scholar has provided a clear articulation of the interplay between
> claims under the IDEA and those brought pursuant to § 504:
>
> "In contrast to the IDEA, Section 504 emphasizes equal treatment, not just access to
> a FAPE. In other words, the drafters of Section 504 were not only concerned with [a
> student] receiving a FAPE somewhere (as was the case with the IDEA), but also that
> a federally funded program does not treat [the student] differently because [she is
> disabled]. Under Section 504, a state special school cannot hide behind the
> justification that another public school might provide a FAPE; it must show that
> somehow [the student] does not qualify for admission. Unlike the IDEA, Section 504
> does not only look at what is a FAPE, but also what is fair."

Ellenberg v. N.M.  Military Inst., 478 F.3d at 1281-82 n.22 (quoting C. Walker, Note, Adequate

Access or Equal Treatment: Looking Beyond the IDEA to Section 504 in a Post-Schaffer Public

School, 58 Stan. L.Rev. 1563, 1589 (2006)).  The Tenth Circuit explained that: "Any other interpretation of our caselaw would mean that a state educational institution that receives public funding could openly discriminate against applicants with disabilities so long as the state offered the student a FAPE in the least restrictive environment." Ellenberg v. N.M. Military Inst., 478 F.3d at 1281-82.

## ANALYSIS

The NMPED is not entitled to summary judgment on the Plaintiffs' claims.  There are genuine issues of material fact regarding the NMPED's alleged violations of the IDEA, Rehabilitation Act, and the ADA.  The Plaintiffs have made a prima facie showing that the NMPED violated the Rehabilitation Act and the ADA.  There is a genuine issue of material fact whether the NMPED discriminated against Matthew solely because of his autism.  NMPED has the burden of proving that Matthew was not otherwise qualified, was able to meet all of the school's requirements in spite of his autism, or that his rejection from school attendance was for reasons other than his autism, and has not carried its burden.  The NMPED is not entitled to summary judgment on the Plaintiffs' Rehabilitation Act claims.  Because the Court's analysis of the Plaintiffs' ADA claims mirrors its analysis the Plaintiffs' Rehabilitation Act claims, the NMPED is not entitled to summary judgment on those claims.  The Court will deny NMPED's motion for summary judgment.

## I.   THE NMPED IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' IDEA CLAIMS.

The Court believes that there are genuine issues of material fact regarding whether the NMPED violated the IDEA during at least some portions of the eighteen month period in which Matthew was not in school.  The Court believes that the Plaintiffs provided notice to the NMPED. The record indicates that there are genuine issues of material fact regarding NMPED's alleged

violation of the IDEA precluding granting summary judgment for the NMPED at this time.  The Court is concerned about the remedy the Plaintiffs are requesting, but it does not believe that the remedy issue should be resolved at the summary judgment stage.  Thus, for the reasons stated at the hearing, and for reasons stated herein consistent with those already stated, the Court will deny the NMPED's motion for summary judgment on the Plaintiffs' IDEA claims.

## II.  THE NMPED IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' CLAIMS UNDER THE ADA AND THE REHABILITATION ACT.

Because the Plaintiffs have proven a prima facie case under the Rehabilitation Act that NMPED discriminated against Matthew based on his autism, and because  there is a genuine issue of material fact whether the NMPED violated the Rehabilitation Act by not compelling Matthew to attend school when all school-aged students are required to attend school, the NMPED is not entitled to summary judgment on the Plaintiffs' Rehabilitation Act claims.  Because the Court's analysis of the Plaintiffs' claims under the ADA mirror its analysis of the Plaintiffs' claims under the Rehabilitation Act, the NMPED is not entitled to summary judgment on the Plaintiffs' ADA claims. Because the NMPED has the burden of proving that Matthew was not otherwise qualified, was able to meet all of the school's requirements in spite of his autism, or that his rejection from school attendance was for reasons other than his autism, and has not carried its burden, the NMPED is not entitled to summary judgment on the Plaintiffs' Rehabilitation Act claims.  Because the Court's analysis of the Plaintiffs' ADA claims mirrors its analysis of the Plaintiffs' Rehabilitation Act claims, the NMPED is not entitled to summary judgment on those claims.

### A.  THE PLAINTIFFS HAVE ESTABLISHED A PRIMA-FACIE CASE FOR NMPED'S  DISCRIMINATION AGAINST MATTHEW BASED ON HIS AUTISM.

"A prima facie case under [the Rehabilitation Act] consists of proof that (1) plaintiff is

handicapped under the Act; (2) he is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." Hollonbeck v. U.S. Olympic Comm., 513 F.3d at 1194.

### 1.     Matthew Is Handicapped Under the Rehabilitation Act.

Matthew is disabled because he is autistic. See NMPED Memo. ¶ 1, at 2; Exhibit 3, Educational Program Summary for John Matthew Chavez at 1 (dated June 6, 2005 through September 16, 2005); Complaint ¶ 6, at 2-3.  NMPED concedes that Matthew is disabled.  See NMPED Memo. ¶ 1, at 2.

### 2.     NMPED Receives Federal Financial Assistance.

NMPED receives federal financial assistance.  See Complaint ¶ 8, at 3 (stating, in relevant part, "NMPED is a public entity subject to the provisions of the Americans with Disabilities Act (ADA) Title II, and is subject to the requirements of Section 504 of the Rehabilitation Act of 1973 based on its receipt of federal funding."); The New Mexico Public Education Department's Answer to Plaintiffs' First Amended Complaint ¶ 8, at 2, filed April 14, 2006 (Doc. 59)(stating that "[p]aragraph 8 of the First Amended Complaint is a legal conclusion to which no responsive pleading is required."); Response, Exhibit 7, Cannaday v. Bd. of Educ. of the Rio Rancho Pub. Schls., No. CV04-1143 MV/RLP, Defendant Public Education Department of the State of New Mexico's Responses to Plaintiffs' Second Discovery Requests at 2 (stating that "[t]he United States Department of Education's January 2000 monitoring report cited New Mexico for two areas of noncompliance under the IDEA's general supervision requirement.").

### 3.     Matthew is "Otherwise Qualified" to Attend Public School.

The NMPED contends that Matthew is not otherwise qualified under the Rehabilitation Act

and the ADA.  See NMPED Memo. at 18-23.  It argues that the "Plaintiffs cannot show that Student is 'otherwise qualified,' for purposes of either the Rehabilitation Act or the ADA . . . . [because] Plaintiffs cannot establish that Student was subject to the specific type of discrimination targeted by the Rehabilitation Act and the ADA because they do not suggest that Student's similarly situated, nondisabled peers received the special education services allegedly denied to him."  Id. at 21. NMPED asserts that what the Plaintiffs complain of "is not really discrimination at all.  The gravamen of the Complaint is not that Student was treated worse than other public school students in Tularosa, but that special accommodation were not made for him when he refused to attend school and his parents felt that they could not get him to school." Id. at 22.  See Reply at 11 (citing Bryant v. Madigan, 84 F.3d at 249 ( "No discrimination is alleged; Bryant was not treated worse because he was disabled.  His complaint is that he was not given special accommodation.").

The Plaintiffs contend that Matthew, "as a student with autism, is a student with a disability. As a school aged child, he is 'otherwise qualified' to attend public school in New Mexico." Response at 20 (citing N.M.S.A. § 22-12-2).

"An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap."  Southeast Cmty. Coll. v. Davis, 442 U.S at 406.  Under New Mexico law, all school-aged students are required to attend school.  See N.M.S.A. § 1978, 22-12-9.  New Mexico school districts are required to:

maintain an attendance policy that:

(1) provides for early identification of students with unexcused absences, truants and habitual truants and provides intervention strategies that focus on keeping truants in an educational setting and prohibit out-of-school suspension and expulsion as the punishment for truancy;

(2) uses withdrawal as provided in Section 22-8-2 NMSA 1978 only
after exhausting efforts to keep students in educational settings; and

(3) requires that class attendance be taken for every instructional day
in every public school or school program in the school district.

N.M.S.A. 1978, § 22-12-9.  At the May 22, 2008 hearing, the Plaintiffs noted that NMPED has not

argued that New Mexico does not enforce its truancy laws at all.  See  Tr. at 60:13-24 (Court &

Stewart).

It is undisputed that Matthew did not attend school "[d]uring parts of the 2003-2004 and

2004-2005 school years."  NMPED Memo. ¶ 5, at 2; Exhibit 1, Decision of the Due Process Hearing

Officer ("DPHO Decision") at Findings of Fact ¶¶ 17, 20, 27, at 11-12; Exhibit 2, Decision of the

Administrative Appeal Officer ("AAO Decision") at 3 (adopting the findings of fact in the DPHO

Decision)).  Although the NMPED contends that Matthew "refused to attend school," NMPED

Memo. ¶ 5, at 2, New Mexico law states: "Each local school board and each governing body of a

charter school or private school shall initiate the enforcement of the provisions of the Compulsory

School Attendance Law for students enrolled in their respective schools."  N.M.S.A. 1978, §

22-12-7.  The Plaintiffs have demonstrated that Matthew was "otherwise qualified" to attend school,

because under New Mexico law, school attendance is compulsory.

The benefit to which Matthew was entitled was going to school.  See 29 U.S.C.A. §

794(a)(stating that "[n]o otherwise qualified individual with a disability in the United States . . .

shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal

financial assistance.").  All school-aged children in New Mexico are qualified to receive the benefit

of going to school because school attendance is compulsory.  See N.M.S.A. 1978, § 22-12-9.

Chavez is a school-aged child.  Chavez is a school-aged child in spite of his disability.  Thus, Chavez is otherwise qualified for the benefit of school attendance because he was "able to meet all of a program's requirements in spite of his handicap." Southeast Cmty. Coll. v. Davis, 442 U.S at 406.

NMPED contends that, under the logic of Johnson by Johnson v. Thompson, Matthew is not otherwise qualified.  In Johnson by Johnson v. Thompson, the infants were only entitled to treatment because of their spina bifida.  See 971 F.2d at 1494 ("The infants required the medical treatment sought only because they were born with [a type of spina bifida]. Thus, they were not 'otherwise qualified' to receive the medical treatment denied to them because of the alleged discrimination."). Unlike the infants in Johnson by Johnson v. Thompson, who were entitled to their treatment because of their spina bifida, however, Matthew is not entitled to attend school because of his autism; he is entitled to attend school because he is a school-aged child.

Likewise, in Baumeister v. New Mexico Commission for the Blind, 425 F.Supp.2d 1250 (D.N.M. 2006), the court explained that the plaintiffs were not "'otherwise qualified' to receive the denied services . . . . [because t]he agency Defendants have a statutory duty to provide vocational training and related services to blind persons; Plaintiffs are entitled to such services because they are blind."  Chavez is not entitled to the benefit of school attendance because of his autism; he is entitled to the benefit of school because he of his age, unlike the plaintiffs in Baumeister v. New Mexico Commission for the Blind, who were entitled to the services because they were blind.

NMPED contends that the benefit Matthew requests must be an accommodation.  That is, the NMPED contends that Matthew was requesting a special accommodation -- to attend school. Under that logic, no person would ever be otherwise qualified, because the benefit would always

be considered a special accommodation to which the person was entitled because of his or her disability rather than in spite of it.  For example, if the benefit were to attend school, as in Matthew's case, but the student who was entitled to attend school was paraplegic, and the student requested a ramp to enter the school, which was an accommodation to attend school, under the NMPED's logic, the benefit to which the student would be entitled would not be school attendance; the benefit would be the ramp.  Thus, the student would only be entitled to the ramp because of his or her paraplegia, not in spite of that disability, and would never be entitled to the benefit of attending school.  This rationale would prevent any person from ever being otherwise qualified for the receipt of a benefit.

The attendance of school is not a "special accommodation" -- it is a requirement for all school-aged students in New Mexico.  Bryant v. Madigan, 84 F.3d at 249.  Moreover, the OCR recently explained that "[g]enerally, under Section 504, an elementary or secondary school student with a disability is a qualified individual with a disability if [Matthew] is of compulsory school age." OCR Letter at 2.  "Section 504 and Title II require that qualified students with disabilities be given the same opportunities to compete for and benefit from accelerated programs and classes as are given to students without disabilities." Id.  While there may be other reasons that the Plaintiffs' claims fail, and the Plaintiffs may have been responsible for getting him to school, the Court believes he fits the definition of "otherwise qualified."

### 4.   There is a Genuine Issue of Material Fact Whether NMPED Has Discriminated Against Matthew Based Solely on His Autism.

The Plaintiffs are not required to show that NMPED had discriminatory intent to demonstrate a violation of the Rehabilitation Act.  See Powers v. MJB Acquisition Corp., 184 F.3d at 1153-54; Pushkin v. Regents of Univ. of Colo., 658 F.2d at 1385 (stating that the defendant's "argument that

discrimination may not be found under [the Rehabilitation Act] in the absence of recognized discriminatory intent also fails.").  Thus, the Plaintiffs are not required to show that the NMPED intentionally discriminated against Matthew for the equitable relief that they seek.

On the other hand, for the compensatory damages that the Plaintiffs seek under the Rehabilitation Act, they must prove that NMPED had discriminatory intent.  See Powers v. MJB Acquisition Corp., 184 F.3d at 1153 (stating that "the Rehabilitation Act requires proof the defendant has intentionally discriminated against the plaintiff.").  "Intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."  Id.

The Plaintiffs acknowledge in their Response that they must prove NMPED intentionally discriminated against Matthew for compensatory damages.  See Response at 22 n.3.  They contend, however, that "[c]onsideration of deliberate indifference is not necessary to determine a violation of Section 504 or discrimination to that statute, but only in consideration of the remedies sought. . . . Plaintiffs['] claims require factual analysis and in this case there are material facts in dispute, as such Plaintiffs' discrimination claims are not subject to summary judgment."  Response at 22 n.3.  Nevertheless, the Plaintiffs' bare assertion, alone, that their claims require factual analysis does not constitute a prima-facie showing that NMPED discriminated against Matthew.

The NMPED notes that, in the administrative proceedings, the DPHO and the AAO found that the Plaintiffs had not proven that the LEA's actions were discriminatory.  See Response at 23-24.  The NMPED contends that, because the Plaintiffs have not challenged these findings, there is no proof that NMPED discriminated against Matthew by a showing of deliberate indifference or intent to discriminate.  See id. at 24.  The Court notes that the NMPED did not participate in the

administrative proceedings.  See AAO Decision at 13-15.

The Plaintiffs "may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  It is an undisputed, specific fact, however, that Matthew did not attend school "[d]uring parts of the 2003-2004 and 2004-2005 school years." NMPED Memo. ¶ 5, at 2; Exhibit 1, Decision of the Due Process Hearing Officer ("DPHO Decision") at Findings of Fact ¶¶ 17, 20, 27, at 11-12; Exhibit 2, Decision of the Administrative Appeal Officer ("AAO Decision") at 3 (adopting the findings of fact in the DPHO Decision)). "Further, intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."  Powers v. MJB Acquisition Corp., 184 F.3d at 1153.

At the May 22, 2008 hearing, the Plaintiffs asserted that the NMPED's failure to act for so many months "is evidence of the state's deliberate indifference along with other evidence that would be presented at a trial with regard to the state's complete systematic failure and lack of infrastructure for even being concerned about the rights of students like Matthew Chavez."  Tr. at 63:4-9 (Stewart). The Plaintiffs have thus brought forth specific facts showing that there is a genuine issue for trial. Because it is undisputed that Matthew did not attend school for a period of time, and under New Mexico law, school-aged students are required to attend school, there is a genuine issue of material fact whether the NMPED was deliberately indifferent to Matthew's educational needs under the Rehabilitation Act.  See N. M. S. A. 1978, § 22-12-7 ("Each local school board and each governing body of a charter school or private school shall initiate the enforcement of the provisions of the Compulsory School Attendance Law for students enrolled in their respective schools.").  The

-31-

NMPED conceded at the May 22, 2008 hearing that it has, at least, a "supervisory role" over the provision of education by local school districts.  Tr. at 14:6-7 (Wechsler).  Thus, the NMPED is not entitled to summary judgment on the Plaintiffs' claims for compensatory, monetary damages under the Rehabilitation Act, because there is a genuine issue of material fact whether Matthew's failure to attend school constitutes a violation of the Rehabilitation Act by the NMPED.

Because the Plaintiffs have made a prima-facie case under the Rehabilitation Act for a claim for equitable relief, NMPED has the burden of proving that Matthew was not otherwise qualified, was able to meet all of the school's requirements in spite of his autism, or that his rejection from school attendance was for reasons other than his autism.  See Pushkin v. Regents of Univ. of Colo., 658 F.2d at 1387.  The NMPED has not demonstrated that Matthew was not otherwise qualified, was able to meet all of the school's requirements in spite of his autism, or that his nonattendance at school was for reasons other than his autism.  The DPHO found that Matthew's "school aversion was manifested by his refusal to attend school is directly related to his disability of autism."  DPHO Decision ¶ 61, at 16.  The AAO adopted the DPHO's findings.  See AAO Decision at 3-4.  The Plaintiffs noted that NMPED has not argued that New Mexico does not enforce its truancy laws at all.  See Tr. at 60:13-24 (Court & Stewart).  Because there is a genuine issue of material fact whether the NMPED violated the Rehabilitation Act by not compelling Matthew to attend school, because all school aged students are required to attend school, the NMPED is not entitled to summary judgment on the Plaintiffs' Rehabilitation Act claims.

### B.    THE NMPED IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' ADA CLAIMS.

The Court's analysis of the Plaintiffs' ADA claims mirrors its analysis of the Plaintiffs' Rehabilitation Act claims.  "Because the language of disability used in the ADA mirrors that in the

Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge . . . and vice versa."  Cummings v. Norton, 393 F.3d at 1190 n.2.  The Plaintiffs have demonstrated that there is a genuine issue of material fact whether Matthew "was otherwise qualified for the [education] he sought and [(ii) whether] . . . he was denied those soley by reason of disability.'"  Fitzgerald v. Corr. Corp. of Am, 403 F.3d at 1144 (internal quotation marks omitted).  Because there are genuine issues of material fact whether Matthew was otherwise qualified and whether the NMPED denied him the benefit of an education "[d]uring parts of the 2003-2004 and 2004-2005 school years,"  NMPED Memo. ¶ 5, at 2, because of his autism, the NMPED is not entitled to summary judgment as a matter of law on the Plaintiffs' ADA claims.

　　　　**IT IS ORDERED** that the Defendant New Mexico Public Education Department's Motion for Summary Judgment is denied.


_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Gail Stewart
Laurel Nesbitt
Steven Grabber Attorney at Law, P.A.
Albuquerque, New Mexico

*-- and --*

Tara Ford
Pegasus Legal Services for Children
Albuquerque, New Mexico

　　　*Attorneys for the Plaintiff*

Gerald Copper
John Appal
Copper & Annick, P.C.
Santa Fe, New Mexico

*Attorneys for Defendant Board of Education of Tularosa Municipal Schools*

Andrew S. Montgomery
Jeffrey J. Wechsler
Montgomery & Andrews, P.A.
Santa Fe, New Mexico

*Attorneys for Defendants New Mexico Public Education Department and Veronica Garcia*