IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SIMON and BEVERLY CHAVEZ,
on behalf of their minor son,
MATTHEW CHAVEZ,

      Plaintiffs,

vs.                                                           No. CIV 05-0380 JB/RLP

BOARD OF EDUCATION OF TULAROSA
MUNICIPAL SCHOOLS; the NEW MEXICO
PUBLIC EDUCATION DEPARTMENT; and
VERONICA GARCIA, Secretary of the
NMPED in her individual and official capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on NMPED's Expedited Motion for Reconsideration of the Denial of Summary Judgment [Doc. 153], filed on September 8, 2008 (Doc. 158)("Motion")(brackets in original). The Court held a hearing on October 8, 2008. The primary issue is whether the Court relied on a premise that was unsupported by the law or the facts in denying Defendant New Mexico Public Education Department's Motion for Summary Judgment, filed August 24, 2006 (Doc. 80). The Court is not inclined to alter its original denial of summary judgment. The Court writes this brief opinion because it believes that Defendant New Mexico Public Education Department ("NMPED") is entitled to clarification and further explanation for the Court's denial of summary judgment and the motion to reconsider.

## BACKGROUND

The factual background of this case is set forth elsewhere. See Memorandum Opinion and Order, entered July 25, 2008 (Doc. 153). As relevant here, the NMPED moves the Court to

reconsider its denial of summary judgment.  <u>See</u> Motion at 1.  The NMPED disputes the Court's determination that the Plaintiffs have established a prima-facie case of discrimination.  <u>See id.</u> at 3.  "A prima facie case . . . consists of proof that (1) plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff."  <u>Hollonbeck v. United States Olympic Comm.</u>, 513 F.3d 1191, 1194 (10th Cir. 2008).  In particular, the NMPED asks the Court to reconsider its conclusion that there is a genuine issue of material on the fourth factor – whether the NMPED discriminated against Matthew Chavez.[1]  In its motion, the NMPED makes three principal arguments: (i) the Compulsory School Attendance Law cannot support a finding that the NMPED discriminated against Matthew Chavez, <u>see</u> Motion at 5; (ii) no rational juror could conclude that the NMPED discriminated against Matthew Chavez by failing to report his parents to the Probation Services Office, <u>see id.</u> at 8; and (iii) the compulsory education law cannot support a finding of deliberate indifference, <u>see id.</u> at 9.  At the heart of the NMPED's arguments is that the Court erroneously relied on Section 22-12-7 of New Mexico's Compulsory School Attendance Law in reaching its conclusions.  <u>See</u> Motion at 11.  The NMPED maintains that it is not possible to base a discrimination claim on the Compulsory School Attendance Law because the relevant sections – Sections 22-12-2 and 22-12-7 – do not authorize the NMPED to compel the attendance of anyone, including Matthew Chavez.  <u>See</u> Motion at 5.

       The Plaintiffs argue that the NMPED "errs by suggesting that the Court's analysis rests on

---

[1] The NMPED expressed disagreement with two aspects of the Court's finding that the Plaintiffs established a prima-facie case.  The NMPED contended that the Court erred in finding that Matthew is an "otherwise qualified" student.  Motion at 3.  The NMPED chose, however, to forgo requesting reconsideration on that issue.  <u>See id.</u> at 4.  The NMPED chose to instead focus on the fourth prong of the prima-facie case: whether a genuine issue of material fact exists that the NMPED discriminated against Matthew Chavez.  <u>See id.</u>

the idea that the NMPED failed to enforce the Act.  Rather, . . . the Court correctly understood that the fact that New Mexico provides a right to school aged children to attend school is relevant evidence when considering a claim of discrimination under Section 504." Plaintiffs' Response in Opposition to the NMPED's Expedited Motion for Reconsideration of the Denial of Summary Judgment [Doc. 153] at 2, filed September 23, 2008 (Doc. 164)("Response").  The Plaintiffs also maintain that the NMPED has authority over public education in New Mexico, and that the NMPED knew, or should have known, that Matthew Chavez was being denied a public education.  See id. at 5-6.  The Plaintiffs point out that Matthew's parents reached out to the NMPED and that Tularosa also contacted the NMPED seeking advice.  See id. at 6.

At the October 8, 2008 hearing, the NMPED contended that the "compulsory school attendance law formed the linchpin of the Court's ruling [denying summary judgment]."  Transcript of October 8, 2008 Hearing at 9:1-2 (Wechsler)("Tr.").[2]  The NMPED argued that the Compulsory School Attendance Law cannot form the basis for a discrimination claim because the law does not provide for its enforcement by the the NMPED, because the NMPED does not enforce the laws against nondisabled peers, and because no rational jury could conclude that it had discriminated.  See Tr. at 9:7-13 (Wechsler).  The NMPED contended that the statute in question is a funding statute, and that the NMPED's only means of compelling the District of Tularosa to do anything would be through funding.  See id. at 60:4-15.  Thus, to the extent that the NMPED should have used other means to force compliance on the school district, the NMPED did not have authority to use other means.  See id. at 60:16-19.

The Plaintiffs contended at the oral argument that the NMPED has supervisory authority

---

[2] The Court's citations to the transcript refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

over New Mexico's schools, drafted the regulations related to the Compulsory School Attendance Law, and has the responsibility to enforce those regulations.  See Tr. at 25:19 (Ford).  The Plaintiffs also argue that, while it may be true that the NMPED has a practice of doing nothing to ensure compliance with Section 504 or IDEA, such a practice does not "give[] the state a pass."  Tr. at 58:1-8 (Stewart).

The NMPED's final argument at the hearing was that the IDEA, as a funding statute, does not provide the NMPED with any mechanism for its enforcement besides through funding.  See Tr. at 60:4-19 (Wechsler).  The NMPED analogized the statute to highway funds and stated: "The way in which the department can take action, can force the district to do anything is through funding.  This is a funding statute and nothing more."  Id. at 60:12-15 (Wechsler).

## ANALYSIS

While the Court has carefully reconsidered its prior decision, the Court is not persuaded that it should now reverse itself and grant summary judgment in favor of the NMPED.  The NMPED's contention that it has no ability, under its supervisory capacity, to step in and play any role in the enforcement of attendance is unpersuasive.  Section 22-12-2 of the New Mexico Statutes provides: "Any parent of a school-age person subject to the provisions of the Compulsory School Attendance Law is responsible for the school attendance of that person."  N.M.S.A. 1978, § 22-12-2(c).  Section 22-12-7 gives authority to certain parties to enforce compulsory attendance, but the NMPED is not listed as one of those parties.  See  N.M.S.A. 1978, § 22-12-7 ("Each local school board and each governing authority of a private school shall initiate the enforcement of the provisions of the Compulsory School Attendance Law . . . for students enrolled in their respective school.").  The NMPED contends that, because these statutes do not grant it any authority to enforce compulsory attendance laws, it has no such authority.  In its motion, the NMPED states: "Because it is created

by statute, the NMPED has only those powers plainly granted by the legislature." Motion at 6 (citing Team Specialty Prods., Inc. v. New Mexico Taxation and Revenue Dep't., 137 N.M. 50, 107 P.3d 4 (Ct. App. 2005). The Court believes that the NMPED's contention unduly focuses on §§ 22-12-2 and 22-12-7 to the exclusion of other sections that give the NMPED authority to supervise and enforce state education laws, and to ensure compliance with federal law.

NMPED is not created by statute. Rather, the NMPED is a creature of the New Mexico Constitution. "There is hereby created a 'public education department' and a 'public education commission' that shall have such powers and duties as provided by law. The department shall be a cabinet department headed by a secretary of public education who is a qualified, experienced educator who shall be appointed by the governor and confirmed by the senate." N.M. CONST. art. XII, § 6. The New Mexico Constitution also provides that the "secretary of public education [as head of the NMPED] shall have administrative and regulatory powers and duties, including all functions relating to the distribution of school funds and financial accounting for the public schools to be performed as provided by law." Id. While the Constitution grants the NMPED "such powers and duties as provided by law," the secretary, as head of the NMPED, has "administrative and regulatory powers and duties." Id.

The text of the Constitution limits the NMPED's authority and duties to those "provided by law." The Supreme Court of New Mexico, in Bourne v. Board of Education of City of Roswell, 46 N.M. 310, 128 P.2d 733 (1942)(quoting the pre-1958 text of Article XII, § 6 of the New Mexico Constitution), interpreted the predecessor language to Article XII, § 6, which granted the State Board of Education control over all public schools "under such regulations as may be provided by law." In Bourne v. Board of Education of City of Roswell, the plaintiff argued that the State Board of Education had constitutionally granted supervisory authority over municipal boards of education

decisions regarding the hiring and firing of teachers.  See 42 N.M. at 312, 128 P.2d at 735.  The plaintiff, a school nurse whose contract was not renewed at the end of a school year, went to the State Board of Education, which reinstated her for the following school year without providing any notice to the local school board that such action was being taken.  See id. at 311, 128 P.2d at 734.  The district court found that the State School Board's actions had no legal effect, and the Supreme Court upheld the district court ruling.  See id. at 311, 128 P.2d at 734.

The Supreme Court in Bourne v. Board of Education of City of Roswell held that a statute reposed power to hire and fire teachers with the municipal school boards.  See id. at 312, 128 P.2d at 735 (citing N.M.S.A. 1938 Supp. §§ 120-906 and 120-804). The two statutes at issue in Bourne v. Board of Education of City of Roswell provided: "The [State Board of Education] shall have the same powers and duties respecting its districts and schools as are possessed by county boards of education," N.M.S.A. 1938 Supp. §§ 120-906, and "[e]xcept with respect to independent and union high school districts, the county board of education shall have supervision and control of all rural schools and districts and of sites, buildings, equipment and funds of said districts, with the power to employ and discharge all teachers and all school employees . . . ."  N.M.S.A. 1938 Supp. § 120-804.  The Supreme Court ultimately held that the statutory regime did not give the State Board of Education control over the discretion of local school boards in the matter of teacher employment.  See Bourne v. Board of Education of City of Roswell, 46 N.M. at 313, 128 P.2d at 736.

The Court interprets Bourne v. Board of Education of City of Roswell to mean that the NMPED – which has a constitutional grant of power analogous to that of entity discussed in Bourne v. Board of Education of City of Roswell – may not exercise power that state law does not confer. In this case, however, state law confers upon the NMPED the power to assure that school districts comply with federal anti-discrimination laws.

In its supervisory role, the NMPED has issued requirements for implementing the Compulsory School Attendance Law, see N.M.A.C. § 6.10.8.1, and regulations governing the provision of special-education services for disabled students, see N.M.A.C. § 6.31.2.1.-6.31.2.14. N.M.S.A. § 6.10.8.1 lists the statutory authority supporting it. The regulations arising out the Compulsory School Attendance Law state:

> A. Each school district and each individual charter school shall maintain class attendance records by class period for every instructional day for each student in each school or school program in the school district or charter school in a manner verifiable by the public education department.
>
> B. For the 2004-2005 school year, the local superintendent of each school district and the governing body or administrative head of a charter school shall provide the public education department with a report of all absences by school, including by charter school, simultaneous with the eightieth and one hundred twentieth days in a manner specified by the public education department. The report will compile the number of daily absences at the school building level, and of those absences, will indicate the number of absences that were excused and the number of absences that were unexcused. At the end of the 2004-2005 school year, the local superintendent or administrative head of a charter school will provide the public education department with a report that sets forth the number of unexcused absences for the school year that were truant and the number of unexcused absences for the school year that were habitually truant.
>
> C. For subsequent school years, the local superintendent of each school district will report absences through the accountability data system as specified by the public education department.

N.M.A.C. § 6.10.8.10.  Thus, the regulations provide a mechanism by which the NMPED can monitor the school districts' performance in enforcing attendance.  If schools do not comply with the NMPED's regulations regarding the Compulsory School Attendance Law, the NMPED may:

> "[S]uspen[d] or revo[ke] . . . a department-issued license or certificate, may [notify] the local school board, superintendent, school principal or governing body of a charter school that they have failed to meet requirements as prescribed by law or rules promulgated by the department, and may seek[] a court order to ensure compliance with the requirements of this rule."

N.M.A.C. § 6.10.8.12.  Thus, the NMPED's arguments that its hands were bound because it has no

authority to ensure compliance with the Compulsory School Attendance Law are unpersuasive. The NMPED has issued regulations and set forth enforcement mechanisms. That is enough to convince the Court that the NMPED has some ability to oversee compliance with the Compulsory School Attendance Law.

N.M.A.C. §§ 6.31.2.3-14 set forth regulations for the education of children with disabilities and gifted children. N.M.A.C. § 6.31.2.3 provides statutory authority to promulgate these regulations, and states that, under federal law, the NMPED has the responsibility to ensure that "the requirements of the IDEA and state educational standards are met in all educational programs administered by any state or local educational agency for children with disabilities aged 3 through 21." N.M.A.C. § 6.31.2.3. The statutory authority to which N.M.A.C. § 6.31.2.3 refers, in part, states:

> School districts shall provide special education and related services appropriate to meet the needs of all children requiring special education and related services. Regulations and standards shall be developed and established by the state board [department] for the provision of special education in the schools and classes of the public school system in the state and in all institutions wholly or partly supported by the state. The state board shall monitor and enforce the regulations and standards.

N. M. S. A. 1978, § 22-13-5 (brackets in original).

The Court cannot therefore credit the argument that, when it receives notice that a school district is flouting state or federal requirements, the NMPED not only may not enforce compliance with the requirements, but must refrain from attempting to remedy the situation and bring the district into compliance. The NMPED has authority, as expressed in statutes and in its own regulations, to provide for special education in schools. Not only does it have authority to issue regulations, it "shall monitor and enforce" its regulations and standards. N. M. S. A. 1978, § 22-13-5. Thus, the lack of explicit mention in the Compulsory School Attendance Law should not be read to suggest

that the NMPED is powerless to act, either directly or through its supervisory role, when it has notice that those laws are being violated.

If the District of Tularosa decided not to enforce the Compulsory School Attendance Law, or created exemptions for certain individuals on the basis of race, sex, or religion, the Court doubts that the NMPED would take the position that it could statnd by and do nothing – including even making a telephone call to the District to encourage compliance. Here, however, there is evidence that the NMPED affirmatively backed and assisted the District in the District's decision not to require Matthew Chavez' attendance.  There is evidence that the NMPED sent case law to the District to back up the District's opinion.  The Court believes that this action creates a genuine issue of material fact whether the NMPED treated Matthew Chavez differently than other students in New Mexico.

Furthermore, the Court notes that the regulations recognize that it is the NMPED's job to assure compliance with the IDEA. "The IDEA at 20 USC Sec. 1412(a)(11) requires the state educational agency in each participating state to ensure that the requirements of the IDEA and state educational standards are met in all educational programs administered by any state or local educational agency for children with disabilities aged 3 through 21." N.M.A.C. § 6.31.2.3.  The Court believes that these statutes and regulations, while not painting a complete picture of what the NMPED has authority and responsibility to do, establish that the NMPED has some ability to compel or encourage school districts' compliance with federal law, and with state laws such as the compulsory attendance laws.  Given that the NMPED has such authority, it cannot convincingly argue that it is entitled to summary judgment on the grounds that it could not have done anything about the District of Tularosa's possible non-compliance.

For the same reasons, the Court does not believe that the NMPED's only recourse in

ensuring compliance with the IDEA is by withholding funds from the school districts. At least with respect to students like Matthew Chavez, who allegedly suffered discrimination on account of his disability, the NMPED has some authority, aside from pulling the purse strings, to make sure such students are not deprived of an education.

Also unpersuasive is the contention that, because the NMPED does not enforce the compulsory attendance law on non-disabled students, the Plaintiffs' prima-facie case of discrimination must fail. In its brief, the NMPED suggests that the Court recognized this point in its Memorandum Opinion and Order denying summary judgment. See Motion at 7 ("The Court recognized in its MOO that in order to establish a prima facie case, the Plaintiffs are required to offer some evidence that the NMPED compels attendance of non-disabled students."(citing the Memorandum Opinion and Order at 17-18)(emphasis in original). The Court, however, did not make that statement. The section of the Memorandum Opinion and Order that the NMPED cites lays out part of the legal standard for discrimination cases. See Memorandum Opinion and Order at 17-18. The Court cited Johnson by Johnson v. Thompson, 971 F.2d 1487, 1494 (10th Cir. 1992), for the proposition that, "[w]ithout a showing that the non-handicapped received the treatment denied to the 'otherwise qualified' handicapped, the appellants cannot assert that a violation of section 504 has occurred." Id. The Court did not, however, take the next step of finding that the Plaintiffs must show that NMPED compels attendance for nonhandicapped students to establish a prima-facie case.

The Court stated that, because there was "a genuine issue of material fact whether the NMPED violated the Rehabilitation Act by not compelling Matthew to attend school, because all school aged students are required to attend school, the NMPED is not entitled to summary judgment on the Plaintiffs' Rehabilitation Act claims." Memorandum Opinion and Order at 32. The Court

did not intend to imply that the prima-facie case arose merely out of a disparity of active enforcement by the NMPED of the Compulsory School Attendance Law between disabled and non-disabled students. Rather, the genuine issue of material fact arises out of the facts that the NMPED is responsible for providing all students with an education, and that the Plaintiffs presented evidence that the NMPED, while being on notice that possible discrimination was occurring, failed to ensure such provision in Matthew Sanchez' case because of his disability. The NMPED could become aware of, and even encourage, a disparity of enforcement in a school district – where explicit enforcement responsibility resides. Thus, if the NMPED does not directly enforce compulsory attendance for any student, it still runs the risk that it is permitting, or in some cases, even encouraging, violations of federal anti-discrimination law. The Court believes that even if the NMPED has decided to take the stance that it will wash its hands of enforcing compulsory attendance for all students, whether disabled or not, the NMPED cannot, by doing so, shed itself of the responsibility of assuring against violations of federal law.

The Court has carefully considered the NMPED's arguments in both its briefing and from the hearing. These new arguments, while deserving of attention, do not persuade the Court that it erred in denying the motion for summary judgment. The Court therefore finds that the NMPED is still not entitled to summary judgment.

**IT IS ORDERED** that the NMPED's Expedited Motion for Reconsideration of the Denial of Summary Judgment is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Tara Ford
    Pegasus Legal Services for Children
Albuquerque, New Mexico

-- *and* --

Gail Stewart
Laurel Nesbitt
    Steven Grabber Attorney at Law, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

Gerald Copper
John Appal
    Copper & Annick, P.C.
Santa Fe, New Mexico

    *Attorneys for Defendant Board of Education
        of Tularosa Municipal Schools*

Stephen S. Hamilton
Jeffrey J. Wechsler
Andrew S. Montgomery
    Montgomery & Andrews, P.A.
Santa Fe, New Mexico

    *Attorneys for Defendants New Mexico
        Public Education Department and Veronica Garcia*