## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SIMON and BEVERLY CHAVEZ,
on behalf of their minor son,
MATTHEW CHAVEZ,

        Plaintiffs,

vs.                                                                              No. CIV 05-0380 JB/RLP

BOARD OF EDUCATION OF TULAROSA
MUNICIPAL SCHOOLS; the NEW MEXICO
PUBLIC EDUCATION DEPARTMENT; and
VERONICA GARCIA, Secretary of the
NMPED in her individual and official capacity,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' IDEA Brief in Chief, filed

August 23, 2006 (Doc. 84); (ii) Plaintiffs' Supplemental IDEA Brief, filed October 30, 2008 (Doc.

173)("Plaintiff's Supp. Brief"); (iii) Defendant NMPED's Pre-Hearing IDEA Answer Brief, filed

October 4, 2006 (Doc. 92); and (iv) NMPED's Post-Hearing IDEA Brief, filed November 3, 2008

(Doc. 181)("Defendant's Supp. Brief). The Court held a two-day evidentiary hearing on whether

to supplement the record on July 25, 2008 and August 1, 2008. The primary issues are: (i) whether

the Administrative Appeal Officer ("AAO") erred by failing to exercise jurisdiction over claims

against the New Mexico Public Education Department ("NMPED")[1]; (ii) whether the NMPED had

a duty under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-82, to

---

[1] Pursuant to the New Mexico voters' approval of an amendment to the state constitution in
the fall of 2003, the State Education Agency ("SEA") under the Individuals with Disabilities
Education Act ("IDEA"), 20 U.S.C. §§ 1400-82, was changed from the "State Department of
Education" to a cabinet-level department, named the "Public Education Department."

make certain that the Tularosa Municipal Schools,  and if not Tularosa Schools, then the NMPED provided educational services to Matthew Chavez; and (iii) whether equitable relief should include reimbursement for Matthew Chavez' mother's efforts; injunctive, declaratory, and compensatory education, and systemic relief to ensure, across the State of New Mexico, an adequate continuum of alternative placements for Matthew Chavez as a student with autism.  Because the AAO should have exercised jurisdiction over the claims against the NMPED during the administrative process, and because the NMPED was required to make certain that educational services were provided  to Matthew Chavez, the Court finds that the NMPED denied Matthew Chavez a Free and Appropriate Public Education ("FAPE").  The Court declines to order systemic relief.  The Court also finds that the remedies that Mr. Chavez and Ms. Nelson seek – compensatory education, $80,000.00,  and an order that the NMPED install a hotline – are inappropriate.  The Court finds that the harm that the NMPED caused, while real, is not amenable to a court-fashioned remedy.

## FACTUAL BACKGROUND

The following facts are relevant to the Plaintiffs' claim against the NMPED under the IDEA. Matthew is a sixteen-year-old public-school student who qualifies for receipt of special education based on autism.  See First Amended Complaint ¶ 6, at 2-3, filed May 2, 2005 (Doc. 5)(stating that Matthew was twelve-years-old in 2005).  Matthew, a high-functioning autistic student, has been eligible for special-education services beginning in preschool and continuing since that time.  See Exhibit 1 to Memorandum of Defendant New Mexico Public Education Department in Support of Motion for Summary Judgment, filed August 24, 2006 (Doc. 81)("Memo. in Support of Motion for Summary Judgment"), Decision of the Due Process Hearing Officer, Findings of Fact ¶ 2, at 7 (dated November 17, 2004) ("DPHO").  Matthew is capable of functioning academically at grade level.  See DPHO, Finding of Fact ¶ 37, at 13.  He also enjoys interaction with his peers.  See

DPHO, Finding of Fact ¶ 53, at 15.  Matthew, however, "has difficulty attending schools, does not do well with transitions and change, needs clear structure and visual support in the  school environment, and regresses behaviorally and academically when he misses school, all characteristics associated with the diagnosis of autism.  TR 59, 61, 79, 165, 191, 336, 463, 466-467, 694, 899." DPHO Finding of Fact ¶ 3, at 7.  At all relevant times, Matthew has been a physically large boy, and his parents have been unable to physically redirect him since the end of his fifth-grade school year. See DPHO Finding of Fact ¶ 29, at 12.

Matthew's parents wanted him to attend school.  See DPHO Finding of Fact ¶ 31, at 12. From 2003 until the spring of 2006, Matthew was enrolled in the Tularosa Municipal Schools.  See id.  Tularosa Schools had, however, no self-contained classrooms dedicated to instructing students such as Matthew Chavez apart from nondisabled students in the elementary or middle schools during the relevant years.  See DPHO Finding of Fact ¶ 54, at 15.  Moreover, the Tularosa Schools never placed a child in a residential treatment center during the special-education director's tenure with Tularosa Schools.  See DPHO Finding of Fact ¶ 51, at 15.

Matthew's 2002-2003 school year was "successful."  July 25 Tr. at 92:9-11 (Nelson).  See Petitioner's Exhibits, DPH Record, Tab 7, Letter from Simon and Beverly Chavez re: Request for an I.E.P. Meeting at 4 (dated September 10, 2003)("Last year was an exceptional school year for our son.  He attended school regularly and benefited greatly both academically and socially by his inclusion.")("IEP Request Letter").

Tularosa Schools had an educational program in place for Matthew during the 2003-2004 and 2004-2005 school years.  See DPHO Findings of Fact ¶¶ 14, 26, 28, 36 ¶ 52, at 10, 12-13 & 15. During parts of 2003-2004 and 2004-2005 school years, Matthew refused to attend school.  See DPHO Findings of Fact ¶¶ 17, 20, 27, at 10-12; Exhibit 2 to Memo. in Support of Motion for

Summary Judgment, Decision of the Administration Appeal Officer at 3 (dated March 4, 2005) (adopting the findings of fact of the DPHO Decision)("AAO Decision") .  Matthew's "school aversion as manifested by his refusal to attend school [was] directly related to his disability of autism."  DPHO Finding of Fact ¶ 61, at 16.

A dispute arose between Matthew's parents, Plaintiffs Simon and Beverly Chavez, and Tularosa Schools over whether Tularosa Schools was obligated to cross the threshold of the home to provide services in the parents' home to ensure that Matthew attended school.  See DPHO Findings of Fact ¶¶ 24, 32 & 33, at 11, 13.  Tularosa Schools placed Matthew in full-inclusion classes for his sixth-grade, 2003-2004, school year.  In September of 2003, Matthew began to refuse to go to school.  Regarding Matthew's resistance to attending school, Matthew's mother, Ms. Nelson, testified:

> He would not get out of bed.  He urinated in bed because he wouldn't get out to go to the toilet.  He wouldn't eat.  He wouldn't get dressed.  When we would put his shirt on him physically, he would take it off and throw it.  When we would force the shoe on his foot, he would kick it off.  And if we were in the way, too bad, we got kicked.  He would not walk out the door.  We tried to physically walk him out the door.  We could not.
>
> I tried bribing him.  I told him if he would go to school, after school, we'd go to the mall and he could pick out a new game.  I can't afford that.  I can't buy him games every day to get him to school.
>
> He wouldn't go.  So as a consequence, he wasn't allowed to watch TV.  His behaviors were huge.  He was turning over our kitchen table.  He was throwing chairs.  He was hitting me, pinching me, twisting skin.  My husband tried to hold him down to hold him back.

Transcript of Proceedings, Due Process Hearing at 989:4-25 (dated September 23, 2004)("DPHO Tr.").  See DPHO Finding of Fact ¶ 20, at 11 ("Student refused to go to school after September 5, 2005 even though his family tried to bribe and 'walk him.'  Student urinated in his bed, refused to eat and get dressed, turned over the family table and hit his parents.").

Matthew's parents requested an Individualized Education Program ("IEP") meeting, and one was held on September 16, 2003.  At the IEP meeting, Mr. Chavez and Ms. Nelson requested a plan by which someone would come into their home to help them get Matthew to school.  See Petitioner's Exhibits, DPH Record, Tab 6, September 16, 2003 IEP at 2-3.  Tularosa Schools made clear its position that, while it would provide transportation as a related service, it would not assign staff to go into the home to get Matthew to school.  See DPHO Finding of Fact ¶ 24, at 11.  Tularosa Schools did not take any steps to determine why Matthew was refusing to go to school, nor did it develop any interventions or provide homebound services.  See DPHO Findings of Fact ¶¶ 25 & 35, at 12-13.  Tularosa Schools did not provide an IEP, BIP, homebound program, or any other educational or related service to Matthew after October 2003.  See DPHO Finding of Fact ¶ 41, at 14 and citations therein.  Mr. Chavez and Ms. Nelson informed the NMPED of this dispute in an "informal letter of complaint."  Petitioner's Exhibits, DPH Record, Tab 7, Letter of Complaint at 10-11.  In that letter, Mr. Chavez and Ms. Nelson  stated that Matthew refused to attend school and that Tularosa Schools refused to help them get him to school.  See id. at 10.  The letter also states that Matthew was dis-enrolled from school.  See id. at 11.

Tularosa Schools consulted with Duane Ellis, a state employee at the NMPED, regarding Matthew's refusal to go to school, and Ellis provided copies of cases in which school districts were not required to cross the threshold of a home, thereby lending SEA validation to Tularosa Schools' failure to provide any education.  See DPHO Tr. at 228-229 (Dembrowsky).  In addition to the NMPED affirming Tularosa Schools' decision to withhold special education from Matthew after September 2003, the NMPED failed to take any action to assist the parents, despite their plea for help.  On September 25, 2003, the parents mailed a certified letter to the New Mexico State Department of Education.  See Exhibit 7 to DPHO, Letter to Department of Education at 10-11.

That letter constituted notice to the NMPED that Tularosa Schools was not providing Matthew with

a FAPE and was apparently incapable of providing him with FAPE.  That letter states, in relevant

part:

> Our son . . . is a 6th grade student at Tularosa Middle School.  Matthew's exceptionality is autism.  We have been trying to work with the school district since August 26, 2003.
>
> Let us explain our concerns.  Matthew displays many behaviors which are a component of his diagnosis.  He is refusing to attend school.  The Tularosa School District has refused to help us get him to school.  Matthew's behavior plan is outdated and the district has refused to modify it.
>
> * * * *
>
> Matthew has refused to go to school since August 26, 2003.  We attempted to walk him and ended with us and Matthew in a heap on the ground and a child with autism screaming bloody murder.  We cannot use [a former behavior-intervention tool].  We ask for an IEP meeting to address this.  We attended an IEP meeting on Sept. 16, 2003.  The school . . . refused  to modify Matthew's behavior plan.  They refused to send staff to help us. . . .  In attendance were the Middle school principal. . . , the Special Education Director . . . and the schools lawyer. . . .  We had been picking up Matthew's school work on a daily basis and instructing him at home.  Yesterday [the school-district special-education director] called to tell us there would be no more homework assignments for Matthew.  Matthew had been dropped from school. . . . We look forward to hearing from you.

Letter to Department of Education at 10-11.

On May 25, 2004, Mr. Chavez and Ms. Nelson, pursuant to the IDEA and on Matthew's

behalf, filed an administrative due-process hearing complaint against the Tularosa Schools in May

2004, alleging that Matthew was denied a FAPE, 20 U.S.C. § 1401(8).  See DPHO at 2.  The

complaint alleged claims against the Tularosa Schools and the NMPED for violation of the IDEA

and Section 504 of the Rehabilitation Act.  See id.

The NMPED refused to participate in the Due Process Hearing, and the Due Process

Hearing Officer, deferring to the NMPED's institutional refusal  to participate, refused to accept

jurisdiction over the parents' claims against the NMPED.  Accordingly, the NMPED was not a party to the due-process hearing.  See AAO Decision at 14-16.

The Due Process Hearing Officer's decision was issued on November 17, 2004.  At the due-process hearing, Matthew prevailed on part of his claim against Tularosa Schools.  See First Amended Complaint ¶¶ 1, 11, 15-16 & 63-64, at 1, 4-5 & 12.  The DPHO found that Tularosa Schools had denied Matthew a FAPE.  See DPHO at 26 ("This DPHO has found a denial of FAPE justifying an award of compensatory education for one year.").  The DPHO did not, however, find a violation of Section 504.  See id. at 28.

Tularosa Schools appealed the Due Process Hearing Officer's determination that Matthew had been denied FAPE.  Mr. Chavez and Ms. Nelson appealed the Due Process Hearing Officer's determination that the Tularosa Schools' conduct did not violate Section 504 and challenged the relief that the Due Process Hearing Officer ordered.  The remedy that Mr. Chavez and Ms. Nelson sought from Tularosa Schools on appeal was "an order requiring the District to work closely with outside consultants and service providers with expertise in autism, and in behavior management techniques and approaches appropriate for children with autism."  AAO Decision at 3.  In addition, Mr. Chavez and Ms. Nelson appealed the determination that the Due Process Hearing Officer lacked jurisdiction over claims against the NMPED.

The Administrative Appeals Officer heard the appeal of the DPHO Decision.  Matthew prevailed in his appeal to the AAO.  See AAO Decision at 18-20; First Amended Complaint ¶¶ 1, 11, 15-16 & 63-64, at 1, 4-5 & 12.  In her decision dated March 4, 2005, the AAO adopted the DPHO's Conclusions of Law, except CL 17, 20, 33, and 34, and modified CL 18.  See AAO Decision at 4-5.  Regarding Conclusion of Law 17, the AAO stated: "[T]he facts of this case do not permit a broad conclusion about the extent of the District's obligation in all cases where home

-7-

services are sought based on a physical inability to attend school. To the extent the hearing officer's discussion suggests such a broad conclusion, it is inappropriate." AAO Decision at 4. The AAO modified Conclusion of Law 18 to read: "Student was denied FAPE in the 2003-2004 and 2004-2005 school year to date due to the District's failure to amend the IEP to address Student's refusal to attend school." Id. at 4. Regarding Conclusions 33 and 34, the AAO held that "Section 504 of the Rehabilitation Act is violated virtually any time a student is denied a FAPE under the IDEA . . . . Therefore, the [AAO] concludes that the denial of a FAPE to Student also violated Section 504 and its implementing regulations." Id. at 5.

The AAO, in accepting the DPHO's finding of fact in paragraph 41, determined that Tularosa Schools had failed to provide educational services to Matthew since October 2003. See DPHO Finding of Fact ¶ 41, at 14; AAO Decision at 3. She further found that Matthew was denied FAPE in the 2003-3004 and in the 2004-2005 school year because of Tularosa Schools' failure to amend the IEP to address Matthew's refusal to attend school. See AAO Decision at 3-5, DPHO Conclusion of Law ¶ 18, at 19.

The AAO upheld the DPHO's refusal to accept jurisdiction over the plaintiff's claims against the NMPED. There were no administrative findings of facts concerning the NMPED. See AAO Decision at 4; DPHO Conclusion of Law ¶ 3, at 17.

The AAO upheld the determination that Matthew was denied FAPE and also determined that Tularosa Schools' conduct violated Section 504, reversing the Due Process Hearing Officer on that issue. The AAO accordingly ordered additional remedies. In its March 4, 2005 decision, the AAO issued a twelve-point remedy specifically designed to address Matthew's educational needs. See AAO Decision at 18-20.

The AAO found that, "[a]t this time, it appears that the local education agency can

-8-

implement the remedy ordered by the administration appeal officer for the Student." AAO Decision at 16. In accordance with the AAO Decision, in the spring of 2005, Tularosa contracted with Southwest Autism Network ("SWAN"), a non-profit organization affiliated with the University of New Mexico, to be involved in the provision of educational services to Matthew. See Defendant's Exhibit N to July 25, 2008 and August 1 Evidentiary Hearings, Puente Para Los Ninos Application at 4 (dated May 15, 2006). Also in accordance with the AAO Decision, SWAN put together a team of consultants with expertise in autism. See Transcript of Hearing on Motion for Preliminary Injunction at 55:8-56:14, 176:21-177:9, 178:7-179:3 (taken January 26, 2006)("PI Tr."); Exhibit 9 to Memo. in Support of Motion for Summary Judgment, Deposition of Patricia Osbourn at 77:5-80:21, 84:21-85:5 (taken March 23, 2006)("Osbourn Depo.")(Doc. 81-9).

The SWAN team included an expert skilled in addressing the behavioral problems of children with autism. See Osbourn Depo. at 79:5-13. The SWAN team also included an expert in structuring educational services to children with autism. See id. at 79:14-80:21. In accordance with the AAO Decision, Dr. Brian Lopez of SWAN conducted a Functional Behavioral Assessment to determine the causes of Matthew's school refusal. See Para Los Ninos Application at 4; Osbourn Depo. at 91: 2-11; PI Tr. at 179: 21-184:1.

In accordance with the AAO Decision, Matthew attended school in the Tularosa Schools during the summer of 2005, the 2005-2006 school year, and the summer of 2006. See Exhibit A to Preliminary Injunction Hearing, Educational Program Summary at 2 (dated September 20, 2005); Exhibit 5 to Plaintiffs' Motion for Stay-Put Order or Preliminary Injunction Against Defendants Tularosa and New Mexico Public Education Department and Memorandum in Support, filed December 21, 2005 (Doc. 37)("PI Motion"); Para Los Ninos Application at 4.

In August 2006, Matthew and his parents moved out of the Tularosa School District. See

Exhibit 7 to Memo. in Support of Motion for Summary Judgment, Letter from Beverly Nelson to Dr. Keaton and John Russo at 1 (dated August 9, 2006).  Matthew was not enrolled at Tularosa for 2006-2007 school year.

Before this case, there were at least two cases that were filed in New Mexico federal district court against the NMPED involving children with disabilities in the autism spectrum related to failures of Local Educational Agencies ("LEA") and the State to ensure special education services and appropriate placement options.  See Carmady v. Rio Rancho Public Schools, No. CIV 04-1134 MV/RLP (D.N.M.); Board of Educ. of Los Lunas v. Aragon, No. CIV 03-0299 JH/LFG (D.N.M.).

## PROCEDURAL BACKGROUND

Mr. Chavez and Ms. Nelson assert three claims against the NMPED pursuant to the IDEA.  First, Mr. Chavez and Ms. Nelson allege that the NMPED is an agency of the State of New Mexico that monitors Tularosa Schools and other local school districts in the State for compliance with its rules and standards.  See First Amended Complaint ¶ 8, at 3.  Consequently, under the IDEA, the NMPED, as the SEA, may be directly responsible for the provision of education to students with disabilities pursuant to 20 U.S.C. § 1413(h)(1) and 34 C.F.R. § 300.360.  Second, the NMPED knew that Matthew and other students in the autism spectrum with complex behavioral needs were not, and are not, being provided appropriate educational placements by the Tularosa Schools and other public school districts, and failed to act to require that an appropriate placement be provided or to offer an appropriate placement consistent with its obligations under IDEA and, as a result, Matthew was denied FAPE.  Third, in violation of IDEA, the NMPED supported Tularosa Schools' refusal to develop an appropriate program for Matthew, which constitutes an abdication of its supervisory responsibility to enforce IDEA in this state and to ensure that all children with disabilities are provided FAPE in accordance with the IDEA.

Mr. Chavez and Ms. Nelson do not dispute that the remedy which the AAO ordered, if implemented, would provide Matthew with the education to which he is entitled. They "do not seek to halt or in any way delay the remedies ordered which they consider to be 'stay put' in this case." First Amended Complaint ¶ 15, at 5. Rather, they seek "judicial enforcement or amendment of the administrative decision pursuant to the [IDEA]." Id. ¶ 1, at 1.

There is no appeal by the NMPED of the evidence in the administrative proceedings or the findings against the Tularosa Schools and in favor of Mr. Chavez and Ms. Nelson.

As part of this civil action, Mr. Chavez and Ms. Nelson obtained the NMPED's written responses to discovery requests. Mr. Chavez and Ms. Nelson also took the depositions of state employees.

On August 1, 2006, the Court, by order, provided for judicial review of IDEA issues by instructing the parties that briefing on these issues would be timely if filed on or before August 23, 2006. On August 23, 2006, Mr. Chavez and Ms. Nelson filed their IDEA Brief in Chief. Mr. Chavez and Ms. Nelson filed their Motion for Taking of Additional Evidence concurrently with their Brief in Chief. See Plaintiffs' Motion for the Taking of Additional Evidence and Memorandum in Support Thereof, filed August 24, 2006 (Doc. 85) In that separated Motion, Mr. Chavez and Ms. Nelson requested a hearing on additional evidence relevant to their IDEA claim.

Mr. Chavez and Ms. Nelson's Brief-in-Chief addressed the proper interpretation and application of the IDEA. The parties requested the opportunity to submit additional briefing after any additional evidence was heard. See Joint Motion for Scheduling Order at 4-5, filed September 26, 2006 (Doc. 90).

In their pre-hearing brief, Mr. Chavez and Ms. Nelson set forth a preliminary statement as to the limitations of argument. Mr. Chavez and Ms. Nelson argued that the granting of their Motion

for Taking of Additional Evidence would allow them to present evidence in support of their claims against the NMPED.  Mr. Chavez and Ms. Nelson maintained that their preliminary brief is based on the very limited evidence in the administrative record.  See Plaintiffs' Brief at 8.  Mr. Chavez and Ms. Nelson did not offer the evidence acquired in this case in its brief in chief.  Instead, Mr. Chavez and Ms. Nelson requested a full evidentiary hearing before the Court.  Mr. Chavez and Ms. Nelson stated that, in this posture, any decision against Mr. Chavez and Ms. Nelson on IDEA claims against the NMPED would be premature until such time as the Court conducts an evidentiary hearing and allows Mr. Chavez and Ms. Nelson to fully present their evidence in support of their claims against the NMPED.  See id.

Specifically, Mr. Chavez and Ms. Nelson requested the opportunity to present evidence that the NMPED was fully aware that children with disabilities in the autism spectrum whose disabilities include complex behaviors are not being provided FAPE throughout the state.  In addition, Mr. Chavez and Ms. Nelson sought to submit evidence that the NMPED knew or should have known that  Tularosa Schools had no self-contained classroom and had not placed a student in a residential private school.  Mr. Chavez and Ms. Nelson also requested the taking of additional evidence regarding the lack of appropriate placements available to Matthew in New Mexico.  Mr. Chavez and Ms. Nelson further represented that they would show, by additional evidence, that the NMPED was fully aware of the AAO's order as well as Tularosa School's noncompliance, and failed to act to require enforcement consistent with its supervisory and responsibility for direct service.

On October 4, 2006, the NMPED submitted a pre-hearing answer brief on Mr. Chavez and Ms. Nelson's claim under the IDEA.  The NMPED did not object to Mr. Chavez and Ms. Nelson's motion for a hearing on additional evidence relevant to Mr. Chavez and Ms. Nelson's IDEA claim.

The pre-hearing brief set forth the NMPED's position on Mr. Chavez and Ms. Nelson's

IDEA claim based on the evidence then of record or known to the NMPED through discovery in this action. In the NMPED's Pre-Hearing IDEA Answer Brief, the NMPED stated that it anticipated submitting a post-hearing brief setting forth its final response to Mr. Chavez and Ms. Nelson's IDEA Brief-in-Chief and position on Mr. Chavez and Ms. Nelson's IDEA claim.

The Court held a two-day evidentiary hearing on July 25, 2008 and August 1, 2008. At the hearing, the parties stated that they wished to supplement the record with the exhibits that they would be offering at the hearing. See Transcript of Evidentiary Hearing at 37:3-9 (July 25, 2008)(Doc. 157)("July 25 Tr.")(Court, Stewart & Wechsler). At the hearing, the Court explained its procedure for handling the exhibits. The Court's admission of exhibits for purposes of the hearing did not reflect a determination that the Court would supplement the record with those exhibits. See July 25 Tr. at 35:10-14 (Court).

Mr. Chavez and Ms. Nelson asserted at the Evidentiary Hearing that their evidence would establish that "as of the receipt of the September 23 letter and the subsequent phone call, the department had reason to know that the child was not in school." July 25 Tr. at 30:14-18 (Stewart). The NMPED stated that there is no direct role it can play in the administrative hearings because these hearings raise issues of direct services, which the local districts must provide. See July 25 Tr. at 22:19-25 (Wechsler). Thus, the NMPED is required to step in and provide direct services only where there has been a finding from the state that there has been a failure. See id. at 33:22-25 (Wechsler). Moreover, the NMPED accepts that, with regard to Tularosa Schools, the AAO's determination was correct. See id. at 34:3-5 (Wechsler).

Since the hearing, the parties have submitted supplemental briefing. See Plaintiffs' Supp. Brief; Defendant's Supp. Brief. In their brief, Mr. Chavez and Ms. Nelson argue that the evidence that they presented at the evidentiary hearings establishes that (i) the NMPED had notice that

Matthew Chavez was a child with a disability who was being excluded from school as a result of his disability; and (ii) the NMPED's actions and inactions failed to insure that Matthew Chavez received FAPE as required under the IDEA.  See Plaintiffs' Supp. Brief at 1.

Mr. Chavez and Ms. Nelson also contend that they have offered evidence that, on a "more 'macro' level, the NMPED did not have any 'systems' in place calculated to ensure that Matthew would receive FAPE."  Id. at 2.  Thus, they argue that the NMPED's system of monitoring during the 2003-2004 and 2004-2005 school years were not calculated to ensure appropriate supervision of Tularosa Schools.  See id.  Furthermore, Mr. Chavez and Ms. Nelson argue that they have presented evidence that the NMPED knew that a small school district like Tularosa Schools was not able to respond to the needs of children with autism, especially when those needs resulted in behavioral concerns.  See id.

Mr. Chavez and Ms. Nelson ask the Court to use its "broad authority to determine equitable relief under IDEA" and note that the IDEA authorizes courts to "'grant such relief as the court determines is appropriate.'"  Id. at 9 (quoting 20 U.S.C. § 1415(i)(2)(C)(iii) (IDEA 1997); 20 U.S.C. § 1415(i)(2)(C)(iii) (IDEA 2004)).  Pursuant to this equitable authority, Mr. Chavez and Ms. Nelson request that the Court grant $80,000.00 in reimbursement for Ms. Nelson's services in home schooling her son during the 2003-2004 and 2004-2005 school years.  See Plaintiffs' Supp. Brief at 11.  They also request that the Court "require NMPED establish a hotline number so that parents whose children with disabilities are not able to attend school can contact NMPED to request assistance from NMPED."  Id. at 12.

The NMPED, on the other hand, contends that Mr. Chavez and Ms. Nelson received a remedy for compensatory educational services and are not entitled to any further remedy.  See Defendant's Supp. Brief at 11.  The NMPED argues that the Court's Memorandum Opinion and

-14-

Order of October 19, 2006 (Doc. 96)("Oct. 19 MOO")[2] implicitly obviates a determination whether the NMPED was subject to jurisdiction in the administrative hearing because the Court held that Mr. Chavez and Ms. Nelson were not required to exhaust the State Complaint Review Procedure.  Id. at 13.  The NMPED also argues that the Court's scope of review is limited to its appellate review of the due-process hearing under 20 U.S.C. § 1415 because the DPHO decision and the AAO decision were issued pursuant to that section of the statute.  See Defendant's Supp. Brief at 13.

The NMPED argues that it is not liable for further relief to Matthew Chavez for three reasons: (i) Mr. Chavez and Ms. Nelson have failed to show that Tularosa Schools was unable to provide a FAPE to Matthew Chavez; (ii) even if Tularosa Schools were unable to provide FAPE, Mr. Chavez and Ms. Nelson have failed to provide adequate notice and a reasonable opportunity to compel compliance; and (iii) Mr. Chavez and Ms. Nelson have failed to establish that any alleged deficiency in the NMPED's monitoring resulted in a denial of FAPE to Matthew Chavez.  See Defendant's Supp. Brief at 14.  Rather, they argue, Matthew Chavez has received the educational benefits to which he is entitled under the IDEA.  See id.  The NMPED also presents policy arguments to explain why judgment in Mr. Chavez and Ms. Nelson's favor would impose financial and administrative burdens on the NMPED that Congress never intended.  See id. at 30.

Mr. Chavez and Ms. Nelson's remaining claims, including claims the ADA and under Section 504 of the Rehabilitation Act, provide for the right to a jury trial.  The Court will not address these claims in this opinion.

---

[2] The NMPED made reference to the October 23, 2006 Memorandum Opinion and Order. The Court assumes, based on the context, that the NMPED means the October 19, 2006 MOO. Later in its brief, the NMPED refers to this MOO as coming out on October 26, 2006.  The Court will assume that in both cases, the NMPED was talking about the October 19, 2006 MOO.

## LAW REGARDING THE IDEA

The IDEA provides a comprehensive scheme to ensure provision of special education to students with disabilities.  IDEA's overarching purpose is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services to meet their unique needs and prepare them for employment and independent living."  20 U.S.C. § 1400(d)(1)(A).  IDEA has seen multiple amendments, including a recent amendment effective July 2005.  IDEA as amended in 1997 governs this case.

It has been recognized that the statutory scheme now called the IDEA embodies "a strong federal policy to provide an appropriate education for every [disabled] child."  Kruelle v. New Castle County School District, 642 F.2d 687, 690 (3d Cir. 1981).  The United States Court of Appeals for the Third Circuit in Kruelle v. New Castle County School District cites various passages of legislative history in explaining that Congress passed the Act to further three interrelated purposes.  See 642 F.2d at 690.  First, "Congress sought to secure by legislation the right to a publically supported equal educational opportunity which it perceived to be mandated by Brown v. Board of Education, and explicitly guaranteed with respect to handicapped children by two seminal federal cases, Pennsylvania Association for Retarded Children v. Pennsylvania and Mills v. Board of Education."  Kruelle v. New Castle County School District, 642 F.2d at 690-91 (citing S. Rep. No. 168, 94th Congress, 1st   Sess. 6, reprinted in U.S. Code Cong. & Ad. News 1425, 1430)(legislative history of Education Act, P.L. 94-142))(footnote omitted).

Second, "Congress intended the provision of education services to increase the personal independence and enhance the productive capacities of handicapped citizens."  Kruelle v. New Castle County School District, 642 F.2d at 691 (citation and footnote omitted).  Third, Congress "acknowledged the need for an expanded federal fiscal role to aid state compliance with the court

decisions and to assure protection for the rights of handicapped children." Id.  According to the Third Circuit in Kruelle v. New Castle County School District, Congress employed a cost-benefit philosophy and decided that, "[i]nstead of saddling the public agencies and taxpayers with the enormous expenditures necessary to maintain the handicapped as lifelong dependents in a minimally acceptable institutionalized existence, Congress reasoned that the early injection of federal money and provision of educational services would remove this burden by creating productive citizens." Id. (citing S. Rep. No. 168, 94th Congress, 1st Sess., reprinted in U.S. Code Cong. & Ad. News, 1425, 1434).

      **1.**      **Basic Structures of the IDEA.**

      The IDEA is, on the surface, a funding statute.  The Supreme Court of the United States has pointed out, however, that it "confers upon disabled students an enforceable substantive right to public education in participating States."  Honig v. Doe, 484 U.S. 305, 310 (1988).[3]  The IDEA is administered through the Office of Special Education Programming ("OSEP") of the United States Department of Education.  See 20 U.S.C. §§ 1406, 1417.  States decide whether to participate in the IDEA and accept the funds that it provides.  At present, all states participate.  New Mexico was the last state to accept federal funding under the IDEA.  See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 183-184 (1982).

      The IDEA defines the term "free appropriate public education":

The terms "free and appropriate public education" means special education and related services that –

(A)  have been provided at public expense, under public supervision and direction,

---

[3] Honig v. Doe discusses the Education For all Handicapped Children Act, which was the predecessor to the IDEA.  The Education for All Handicapped Children Act was reorganized and renamed as the IDEA in 1990.

and without charge;

(B)   meet the standards of the State educational agency;

(C)   include an appropriate preschool, elementary, or secondary school education in the State involved; and

(D)   are provided in conformity with the individualized education programs required under section 1414(d) of [IDEA].

20 U.S.C. § 1401(8).  See 34 C.F.R. § 300.13.

The Supreme Court has not spoken definitely about whether, as a result of states' responsibilities under the IDEA, district courts may require SAEs to provide services directly to disabled children when the LEA has failed to do so.  In Honig v. Doe, the Supreme Court divided equally on the question.  See 484 U.S. at 607 (affirming, through an equally divided panel, the circuit court's ruling in Doe by Gonzales v. Maher, 793 F.2d 1470, 1491-92 (9th Cir. 1986), that district courts may order SAEs to provide direct services).  The United States Court of Appeals for the Ninth Circuit in Doe by Gonzales v. Maher held that a SEA is responsible for directly providing a child with FAPE when: (i) the LEA has breached its responsibility of providing services to the child; (ii) the SEA had notice of non-compliance; and (iii) the SEA had a reasonable opportunity to compel compliance before relief was ordered against the state.  See 793 F.2d at 1491-92.  The Ninth Circuit, in Doe by Gonzales v. Maher, interpreted the text of the relevant statute, explaining:

> Although the state stresses the language in 20 U.S.C. § 1414(d)(1) (1982) that speaks of the state's responsibility for direct action when the locality fails to maintain "programs" of free appropriate education, section 1414(d)(3) specifically requires direct action when a local education agency "has one or more handicapped children who can best be served by a regional or State center designed to meet the needs of such children." Id. § 1414(d)(3) (emphasis added). It would seem incontrovertable [sic] that, whenever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child "can best be served" on the regional or state level. See Kruelle v. New Castle County School District, 642 F.2d 687, 696-99 (3d Cir. 1981) (holding that the district court did not err in assigning to the state board of education the responsibility of providing a child with

an appropriate public education); <u>Georgia Association of Retarded Citizens v. McDaniel</u>, 511 F.Supp. 1263 (N.D.Ga.1981) (holding that 20 U.S.C. § 1414(d) places the responsibility on the state educational agency either to make sure that local agencies provide adequate educational services to handicapped children, or to provide directly such services themselves), <u>aff'd</u>, 716 F.2d 1565 (11th Cir. 1983), <u>vacated on other grounds</u>, --- U.S. ----, 104 S.Ct. 3581 (1984); <u>cf.</u> <u>S-1 v. Turlington</u>, 635 F.2d 342, 350 (5th Cir.) (Unit B) (holding that a state agency can be enjoined to intervene directly in a local expulsion proceeding), <u>cert. denied</u>, 454 U.S. 1030 (1981).

 <u>Doe by Gonzales v. Maher</u>, 793 F.2d at 1491-92.  As of 1997, Congress revised the statutory

language to which the Ninth Circuit referred in <u>Doe by Gonzales v. Maher</u> and moved it to another

section.  The statute's language now reads:

> A State educational agency shall use the payments that would otherwise have been available to a local educational agency or to a State agency to provide special education and related services directly to children with disabilities residing in the area served by that local educational agency, or for whom that State agency is responsible, if the State educational agency determines that the local educational agency or State agency, as the case may be –
>
> (A) has not provided the information needed to establish the eligibility of such local educational agency or State agency under this section;

(B) is unable to establish and maintain programs of free appropriate public education that meet the requirements of subsection (a) of this section;

> (C) is unable or unwilling to be consolidated with 1 or more local educational agencies in order to establish and maintain such programs; or
>
> (D) has 1 or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of such children.
>
> (2) Manner and location of education and services
>
> The State educational agency may provide special education and related services under paragraph (1) in such manner and at such locations (including regional or State centers) as the State educational agency considers appropriate. Such education and services shall be provided in accordance with this subchapter.

20 U.S.C. § 1413(g)(1)(2005).  The differences in organization in wording are not significant, and

the reasoning in Doe by Gonzales v. Maher remains unaffected.  The language upon which the Ninth Circuit relied – the language that calls for direct services when there is a student "who can best be served by a regional or State program" –  remains in the statute.

In Doe by Gonzales v. Maher, the Ninth Circuit also said the state was on notice when the child's parents or guardians gave "the responsible state officials adequate notice of the local agency's noncompliance [with IDEA requirements]."  793 F.2d at 1492.  The Ninth Circuit did not further specify what form this adequate notice must take, and did not imply that parents must wait until the LEA has failed to comply with a due-process hearing officer's order or that there must be a due-process hearing before the state incurs any responsibility.

Given that the Supreme Court, in an equally divided panel, affirmed the judgment on the issue whether "a court may order a State to provide services directly to a disabled child where the local agency has failed to do so," Honig v. Doe, 484 U.S. at 329, the reasoning in Doe by Gonzales v. Maher did not become binding on the other circuits.  See Honig v. Doe, 484 U.S. at 329 ("Because we are equally divided on the question whether a court may order a State to provide services directly to a disabled child where the local agency has failed to do so, we affirm the Court of Appeals' judgment on this issue as well.").  The Supreme Court has stated that affirmance by an equally divided court does not have precedential value and does not settle any question of law.  See Neil v. Biggers, 409 U.S. 188, 191-92 (1972);  Etting v. Bank of United States, 11 Wheat. 59, 78, 6 L.Ed. 419 (1826)(stating "the principles of law which have been argued, cannot be settled; but the judgment is affirmed, the court being divided in opinion upon it").  The reasoning in Doe by Gonzales v. Maher is therefore not binding upon the Court, and the Court uses it only as persuasive authority.

Courts have ordered the SEAs to step in and provide direct services when an LEA is unable

or unwilling to do so.  See Kruelle v. New Castle County School District, 642 F.2d at 699 (explaining that state was responsible for providing residential program for disabled child when the LEA could not provide the necessary program); St. Tammany Parish School Bd. v. State of Louisiana, 142 F.3d 776, 785 (5th Cir. 1998)(stating that the SEA is responsible for paying the cost of interim residential placement when the LEA was unable to provide adequate services for an autistic child).  District courts have broad discretion to order the relief appropriate to ensure that the child is provided with FAPE, which includes ordering remedies against the SEA when necessary. See Gadsby v. Grazmick, 109 F.3d 940, 954-55 (4th Cir. 1997).

In Kruelle v. New Castle County School District,  the United States Court of Appeals for the Third Circuit ordered the SEA to provide residential placement for a disabled child who had been denied FAPE because the district school was unable to meet his educational needs.  See 642 F.2d at 696.  Likewise, in St. Tammany Parish v. State of Louisiana, the United States Court of Appeals for the Fifth Circuit held that nothing in IDEA prevents courts from holding the SEA liable for equitable relief and that the court has discretion to assign such liability to the SEA.  See 142 F.3d at 784.

Under the IDEA, once the LEA is unable to provide FAPE, the SEA can be elevated to the public agency that "may be" responsible for providing direct services to the student.  See 34 C.F.R. §§ 300.360 to 300.372.  The SEA, not the LEA, is responsible for assuring that every child disabled within the meaning of the IDEA is provided with FAPE.  See Beard v. Teska, 31 F.3d 942, 953 (10th Cir. 1994), abrogated on other grounds by Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598 (2001); St. Tammany Parish Sch. Bd. v. State of Louisiana, 142 F.3d 776, 784 (5th Cir. 1998).  Thus, the SEA is not solely a supervisory agency, but is rather the "central point of accountability: for ensuring that students receive FAPE.

See Kruelle v. New Castle County Sch. Dist., 642 F.2d at 697.

The IDEA confers an "enforceable substantive right to public education." Honig v. Doe, 484 U.S. at 310 (referencing Board of Education of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 176 n.1)(1982)). Through the IDEA, Congress chose a highly detailed procedural scheme to ensure that children with disabilities receive the special education and related services they need. See Board of Education of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. at 205-206. The Honorable Christina Armijo, United States District Judge for the District of New Mexico, has recognized that the IDEA scheme of ensuring that all children with disabilities receive a FAPE involves parents, schools, and states: "The IDEA additionally envisions a collaborative effort by which parents, educators, state and others work together not just to create a personalized IEP through which the individual child will receive the free appropriate public education to which he or she is entitled, but also to effect systemic change." Sanders v. Santa Fe Public Schools, 383 F.Supp. 2d 1305, 1310 (D.N.M. 2004).

The NMPED is the SAE for New Mexico.   The AAO acts for it as the final state administrative review for IDEA due process.  See 20 U.S.C. § 1415(g).  The burden of proof at an IDEA administrative hearing is on the party challenging an IEP or otherwise seeking relief.  See Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 62 (2005)("The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief.").   The IDEA regulations define autism in pertinent part as

> a developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age 3, that adversely affects a child's educational performance.  Other characteristics often associated with autism are engagement in repetitive activities and stereotyped movements, resistence to environmental change or change in daily routines, and unusual responses to sensory experiences.

34 C.F.R. § 300.7(e)(1)(i) (2006).

##### 2.      Standard of Review for IDEA Administrative Decisions.

The United States District Court undertakes a "modified de novo" review of the underlying IDEA administrative decisions.  Erickson v. APS, 199 F.3d 1116, 1120 (10th Cir. 1999).  The district court must "independently review the evidence contained in the administrative record, accept and review additional evidence if necessary, and make a decision based on a preponderance of the evidence, while giving 'due weight' to the administrative proceedings below."  Murray v. Montrose County Sch. Dist. RE-1J, 51 F.3d 921, 927 (10th Cir. 1995).  In the context of New Mexico's two-tier system of IDEA administrative proceedings, the United States Court of Appeals for the Tenth Circuit recognized the difficulty that can arise when the DPHO and the AAO – or their equivalents in other states – disagree as to findings of fact.  The Tenth Circuit has directed that the district court is to give due weight to the AAO's decision on issues with which he or she disagreed with the DPHO unless the DPHO's decisions rested on credibility determinations.  See Erickson v. APS, 100 F.3d at 1121.  The district court reviewing the final state administrative IDEA decision reviews questions of law de novo.  See O'Toole v. Olathe Dist. Sch. Unified Sch. Dist. No. 233, 144 F.3d 692, 698 (10th Cir. 1998).

##### 3.      Supplementation of the Administrative Record.

The IDEA provides that the need for additional evidence is within the court's discretion.  The IDEA apparently requires, however, an evidentiary hearing to determine what evidence the court should consider adding to the record.  See 20 U.S.C. § 1415(i)(2)(C)(ii)(stating that the court "shall hear additional evidence at the request of a party").  In light of this mandatory language, the Court observes that there is some tension between 20 U.S.C. § 1415(i)(2)(C)(ii) and the exhaustion requirement under the IDEA.  The Court believes, however, that the tension is resolved through the

"modified de novo review" of the Plaintiffs' IDEA claims. <u>Murray v. Montrose County Sch. Dist.</u> <u>RE-IJ</u>, 51 F.3d 921, 927 (10th Cir.1995)(explaining that "[t]he district court must therefore independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below.").

4.    <u>Enforcing Administrative Orders Under the IDEA</u>.

In its October 19, 2006 MOO, the Court considered at length whether a party can bring an action to enforce the administrative decision. The Court agreed with Honorable Christina J. Armijo, United States District Judge, who explained, in <u>Miller v. Board of Education of the Albuquerque</u> <u>Public Schools</u>:

> The Court also must keep in mind that this case presents an unusual situation where the Plaintiffs are appealing from an administrative proceeding at which they prevailed and received some form of equitable relief as to most of the substantive issues. . . . [T]he IDEA does not give Plaintiffs the right to bring a civil action for judicial review of the administrative proceedings conducted pursuant to that statute unless and until they are "aggrieved" by the result of those proceedings. <u>See</u> 20 U.S.C. § 1415(i)(2)(A); <u>Robinson v. Pinderhughes</u>, 810 F.2d 1270, 1275 (4th Cir. 1987). It follows that there is no basis for the Court to review evidentiary rulings with respect to those issues on which the AAO found in Plaintiffs' favor and awarded adequate relief.
>
> * * * *
>
> That a student is aggrieved by a school district's failure to comply with an administrative tribunal's decision in favor of the student is a separate and distinct claim that may rest on an entirely different legal theory than the relatively straightforward IDEA. . . . <u>See</u>, <u>e.g.</u>, <u>Robinson</u>, 810 F.2d at 1274-75 (concluding that such non-compliance can be addressed under 42 U.S.C. § 1983).

2006 WL 2786759 at **14, 16. <u>See</u> Oct. 19 MOO at 14. The Court also declined to decide whether Tenth Circuit law would allow a party to bring an action under 42 U.S.C. § 1983 to enforce compliance with an administrative order that was not being implemented. <u>See</u> Oct. 19 MOO at 14

& 19 ( ("The Tenth Circuit might well find, if the issue was presented to it, that, because, the Plaintiffs have exhausted all administrative remedies and the state has still not complied with the final order, § 1983 is available in such a limited situation.").

## ANALYSIS

Regarding the IDEA claim against the NMPED, the Court now finds that the NMPED breached its duties under the IDEA to provide Matthew Chavez with FAPE for the 2003-2004 and 2004-2005 school years. Specifically, the NMPED had adequate notice that Matthew Chavez was not receiving any educational services and that Tularosa Schools was violating its duties. Rather than taking measures to compel Tularosa Schools to come into compliance with the IDEA, the NMPED took the stance that it need do nothing. The NMPED cannot properly wash its hands of its responsibility to make certain that Matthew Chavez was provided direct services.

While the Court finds that NMPED violated the IDEA, the Court also finds that this case does not present circumstances under which the Court can fashion an appropriate remedy. Thus, the Court will not grant a remedy.

## I.    THE SCOPE OF THE RECORD.

The Court must "independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below." Murray v. Montrose County Sch. Dist. RE-IJ, 51 F.3d at 927. When the Court received additional evidence, it explicitly refrained from ruling on which evidence would become part of the record and which evidence would be disregarded.

The Court has reviewed the administrative record, and has relied primarily on that record. The Court has, however, considered other argument, testimony, and exhibits that the parties have

proffered since the creation of the administrative record.  Specifically, the Court considered the following in addition to what is contained in the original administrative record: (i) July 25, 2008 Tr. at 22:19-25 (arguing that "there is no role for the NMPED to play in the administrative process")(Wechsler); 30:14-18 (arguing that "as of the receipt of the September 23 letter and the subsequent phone call, the department had reason to know that the child was not in school")(Stewart); 33:22-25 (arguing that the NMPED is required to step in and provide direct services only where there has been a finding from the state that there has been a failure)(Wechsler); 34:3-5 (conceding that, with regard to Tularosa Schools, the AAO's determination was correct)(Wechsler); 35:10-14 (noting that the Court's admission of exhibits for purposes of the hearing did not reflect a determination that the Court would supplement the record with those exhibits)(the Court); 37:3-9 (parties expressing intention to supplement the record)(Court, Stewart & Wechsler); 61:6-10 (Ms. Nelson's testimony on  her telephone conversation with Duane Ellis regarding the September 25 Complaint Letter)(Nelson); 92:9-11(testifying that Matthew's 2002-2003 school year was successful)(Nelson); 162:19-165:3 (testifying about Tularosa School's ability to provide services to students such as Matthew Chavez)(Dembrowsky); 185:2-5, 15-17, 20-25 (testifying about the pay that educational assistants received in Tularosa during the time period in which Matthew Chavez was being denied educational services)(Dembrowsky); 186:1-187:5; and 187:23-188:12; (ii) Defendant's Exhibit N to July 25, 2008 and August 1 Evidentiary Hearings, Puente Para Los Ninos Application ; (iii) Transcript of Hearing on Motion for Preliminary Injunction 55:8-56:14 (discussing the formation of the SWAN team of consultants); 176:21-177:9 (discussing the formation of the SWAN team of consultants); 178:7-179:3 (discussing the formation of the SWAN team of consultants); 179:21-184:1 91:2-11(discussing Dr. Brian Lopez' behavioral assessment of Matthew Chavez); (iv) Exhibit 9 to Memo. in Support of Motion for Summary

-26-

Judgment, Deposition of Patricia Osbourn at 77:5-80:21 (testifying regarding the SWAN team of consultants); 79:5-13; 79:14-80:21 (testifying about the SWAN team and the expert in structuring educational services to children with autism); 84:21-85:5 (testifying regarding the SWAN team of consultants); 91:2-11(discussing Dr. Brian Lopez' behavioral assessment of Matthew Chavez)(taken March 23, 2006)("Osbourn Depo."); (vi) Exhibit A to Preliminary Injunction Hearing, Educational Program Summary at 2 (dated September 20, 2005); and (v) Exhibit 7 to Memo. in Support of Motion for Summary Judgment, Letter from Beverly Nelson to Dr. Keaton and John Russo at 1 (dated August 9, 2006). These specific items of additional evidence are hereby incorporated into the record. All other items proffered to the Court were not helpful to the Court's decision and are not made a part of the administrative record.

## II.   THE AAO'S FINDINGS AS TO TULAROSA SCHOOLS ARE NOT IN DISPUTE AND THE COURT WILL ADOPT THEM AS ITS OWN.

The AAO's findings as to Tularosa Schools are not subject to dispute. The issues remaining for the Court to determine are (i) whether the DPHO and the AAO erred in declining to exercise jurisdiction over the NMPED; and (ii) whether the NMPED violated the IDEA by not compelling Tularosa Schools to comply to provide FAPE to Matthew Chavez, or by not stepping in and itself providing education services to Matthew Chavez. See September 10, 2007 Memorandum Opinion and Order (Doc. 127)("Sept. 10 MOO"). This case is not an opportunity for the parties to relitigate what happened between Tularosa Schools and the Plaintiffs. The Due Process Hearing Officer found that Tularosa Schools did not provide any educational related services to Matthew after October 2003. See DPHO Findings of Fact ¶ 24, at 11. The AAO adopted this finding of fact, and the Court will assume the finding of fact is correct. Specifically, the Court will assume that the AAO, in accepting the DPHO's findings of fact, correctly determined that Tularosa Schools had

failed to provide educational services to Matthew since October 2003.  See DPHO Findings of Fact ¶¶ 18 & 41, at 15; AAO Decision at 3-4.  Mr. Chavez and Ms. Nelson have expressly agreed with that finding, see Plaintiffs' Brief at 16, and the NMPED has not opposed that finding and conclusion or attempted to argue that it is incorrect.  Indeed, the NMPED has encouraged Tularosa Schools to comply with the AAO's decision.  See July 25, 2008 Tr. at 34:3-6 (Wechsler).

The AAO did not make findings as to the NMPED.  Thus, in the posture of this case, the Court will:  (i) make its own findings of fact as to the NMPED; and (ii) make de novo determinations of law in accordance with IDEA standards and Tenth Circuit precedent.

## III.   THE DPHO AND THE AAO HAD JURISDICTION TO HEAR CLAIMS AGAINST THE NMPED.

The Due Process Hearing Officer concluded that she did not have jurisdiction over claims made against the NMPED and that the NMPED was not a party.  See DPHO Conclusion of Law ¶ 3, at 17.  The question whether NMPED is subject to the administrative due-process procedures available under IDEA is a question of law. As such, the Court will review the AAO conclusions de novo.  See Sanders v. Santa Fe Pub. Sch., 383 F.Supp. 2d at 1309 (stating that court applies de novo review to questions of law under IDEA).  The Court believes that, as a party having potential liability under the IDEA, the NMPED belonged in the due-process hearing.

The NMPED gives two explanations for excluding itself from due-process proceedings. The NMPED believes that: (i) the issues raised against it are the issues to be considered in due-process proceedings; and (ii) no authority exists to have the SEA in due-process proceedings unless the SEA is providing direct service to the affected student.

The Court disagrees with the NMPED's reasoning.  Tularosa Schools failed to provide Matthew with any educational services for the 2003-2004 and 2004-2005 school years.  NMPED

is accused of being either complicit in that denial, or at least responsible for this resulting denial of FAPE, as it knew or should have known of the failures in Tularosa Schools, in particular for Matthew, and failed to do anything to require creation of an appropriate placement or provision of education.

Under the facts of this case, NMPED is a public agency that may be responsible for "direct service" to Matthew. Failure to include the NMPED at the administrative level defeats the purpose of the exhaustion of administrative remedies under the IDEA. Because no evidence against the NMPED was allowed in the administrative proceedings, the Court has been required to take additional evidence on this matter. The NMPED's election to sit out is analogous to a party being named in a lawsuit but deciding not to participate. The party has the right not to participate, but the party may end up being bound by determinations made in the lawsuit.

Moreover, Mr. Chavez and Ms. Nelson have raised a question regarding whether the NMPED, acting in contravention of its enforcement role in the federal/state/local scheme, supported Tularosa Schools' refusal to provide appropriate educational services to Matthew by providing administrative case decision citations to Tularosa Schools. See DPHO Tr. at 228:8-229:11 (Dembrowsky, Stewart). To find that the administrative officers have no authority to decide whether an SEA violated the IDEA produces an unreasonable result.

The due process requested against the NMPED concerned the failure to provide an appropriate educational placement and resulting denial of FAPE. 34 C.F.R. § 300.507(a) and § 300.503(a)(1) specify both matters as within the scope of due process requests. While the NMPED was not at the IEP meetings resulting in the IEPs that failed to provide FAPE, NMPED is a "public agency" as IDEA defines that term. The NMPED thus has a legal responsibility under the IDEA in circumstances such as these where the LEA either refuses or is unable to meet the child's needs.

-29-

See 34 C.F.R. § 300.22; id. § 300.507(a)(1)(providing for due-process hearings to address disputes between parents and "public agencies").  The Court therefore believes that, under the IDEA, as implemented by its regulatory language, the term "public agencies" implies applicability of due process for complaints against the NMPED.

The NMPED's justifications imply that it is aware of authority requiring its participation in due process when the SEA is providing direct services to the child.  See Mo. Dep't of Elem. and Secondary Educ. v. Springfield R-12,  358 F.3d 992, 999-1000 (8th Cir. 2004); Bitsilly v. BIA, 253 F.Supp.2d 1257, 1265 (D.N.M. 2003).  The NMPED's argument, however, is that, because it has not assumed that role, it is exempt from due process.  Not only does the language not support NMPED's construction, but the public policy implications of NMPED's argument do not support this interpretation.  To avoid subjecting itself to due-process proceedings, the NMPED's construction supports avoidance of its obligations to step in and provide FAPE for students whom the LEAs are failing to serve.

If the NMPED fails to intervene, and either compel the LEA's compliance with the IDEA or provide direct services where it is required to do so,  then it is subject to a claim.  The NMPED is a properly named defendant in this lawsuit, and the Due Process Hearing Officer had jurisdiction. The Court therefore disagrees with DPHO Conclusion of Law ¶ 3 that the Due Process Hearing Officer did not have jurisdiction over claims against the NMPED.  See AAO Decision at 13-15.

The Court also rejects the argument that the October 16 MOO implied, in any way, that the Court need not decide this issue.  According to the NMPED, when the Court ruled that Mr. Chavez and Ms. Nelson were not required to exhaust the State Complaint Review Procedure before bringing suit to appeal the AAO's order, see Oct. 16 MOO at 17, it obviated a determination of whether the NMPED was subject to the administrative proceedings below.  Again, the NMPED seems to want

to argue for a host of formal hurdles that must be overcome to sue it for violating the IDEA. While some formal hurdles certainly exist, the Court does not see any persuasive reason to erect other ones that are found nowhere in the IDEA's text or history.

## IV.   THE NMPED DENIED MATTHEW FAPE.

The heart of Mr. Chavez and Ms. Nelson's claim is that the NMPED had an obligation to compel Tularosa Schools to provide educational services to Matthew Chavez or to provide direct educational services to Matthew Chavez, because it had notice that Tularosa Schools was unwilling, unable, or both, to provide Matthew Chavez with FAPE. Mr. Chavez and Ms. Nelson also argue that the NMPED failed to provide an adequate continuum of alternative placements for Matthew, to ensure adequate services to Matthew as a child with autism, and to ensure implementation of the enforcement order. The Court finds that it is unnecessary to decide whether the NMPED failed to ensure an adequate continuum of alternative placement or adequate services to Matthew as a child with Matthew. The Court also reiterates its prior holdings that it does not have jurisdiction to hear an action to enforce the AAO decision.

### A.   THE NMPED FAILED IN ITS OBLIGATION TO EITHER COMPEL TULAROSA SCHOOLS TO PROVIDE FAPE OR TO PROVIDE DIRECT SERVICES TO MATTHEW.

The Court is not persuaded that the NMPED could, upon finding out that Tularosa Schools was providing no educational services to Matthew Chavez, refuse to do anything to encourage Tularosa Schools to comply with the IDEA, or fail to step in and provide direct services. Under the IDEA, the SAE "shall" provide direct services if the SAE "determines" that the LAE "is unable to establish and maintain programs of free appropriate public education," or "has 1 or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of such children." 20 U.S.C. § 1413(g)(1).

The language, structure, and history of the IDEA lead the Court to believe that, when an SEA finds out that an LEA, in contravention of the IDEA, refuses to offer educational services to a student with disabilities, and the SEA either does nothing, or affirmatively encourages the LEA in its noncompliance with the IDEA, the SEA may be liable for the violation.  The IDEA frames the SEAs' obligation to provide direct services under some circumstances in mandatory terms – they "shall" provide direct services if they make certain determinations, as listed in the statute. Moreover, the IDEA speaks generally of the SEAs' responsibilities in § 1412:

> State educational agency responsible for general supervision
>
> (A) In general
>
> <u>The State educational agency is responsible for ensuring that</u>--
>
> (i) <u>the requirements of this subchapter are met</u>; and
>
> (ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State or <u>local agency</u>--
>
> (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and
>
> (II) meet the educational standards of the State educational agency.

20 U.S.C. § 1412 (effective July 1, 1998 to June 30, 2005)(emphasis added).[4]  Section 1412

---

[4] To avoid confusion, the Court notes that it is applying the 1997 amendments in this case. Thus, unless otherwise noted, its citations to the statute are from that version.  The language cited here regarding the SEA's general responsibility of SEAs has not changed substantively for many years.  For example, the original version, under the Education for All Handicapped Children Act of 1975, read:

> The state educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for handicapped children within the State, including all such programs administered by any other State or local agency, will be under the general supervision of the persons responsible for educational programs for handicapped children in the State educational agency and shall meet education standards of the State educational

indicates Congress' intent to centralize, through the SEAs, responsibility for the public education

of children with disabilities in the states.  See Kruelle v. New Castle County School District, 642

F.2d at 696 ("Both a general, congressional perception of the state's primary responsibility to

provide a publicly-supported education for all children and a specific intent to centralize this

responsibility underlie [20 U.S.C. § 1412].")(footnote omitted).

     The Third Circuit in Kruelle v. New Castle County School District pointed out that the

legislative history of the Education for All Handicapped Children Act – what was later reorganized

and renamed as the IDEA – supports the proposition that "the full committee considered the

establishment of a single agency on which to focus responsibility for assuring the right to education

of all handicapped children to be of paramount importance."  642 U.S. at 696.  The portion of the

legislative history upon which the Third Circuit relied states:

> Without this requirement, there is an abdication of responsibility for the education
> of handicapped children.  Presently, in many States, responsibility is divided,
> depending upon the age of the handicapped child, sources of funding, and type of
> services delivered.  While the committee understands that different agencies may,
> in fact, deliver services, the responsibility must remain in a central agency
> overseeing the education of handicapped children, so that failure to deliver services
> or the violation of the rights of handicapped children is squarely the responsibility
> of one agency."

S. Rep. No. 168, 94th Congress, 1st Sess. 24, reprinted in U.S. Code Cong. & Ad. News 1425, 1448

(as quoted in Kruelle v. New Castle County School District, 642 F.2d at 696 ).

     The Ninth Circuit in Doe by Gonzales v. Maher, articulated helpful standards for evaluating

when SAEs are required to deliver direct educational services.  The Ninth Circuit, in Doe by

---

agency.

20 U.S.C. § 1412 (1975).  The changes to this language since the 1975 Act have been largely cosmetic, such as changing the phrase "handicapped children" to "children with disabilities" to comport with modern usage.  Otherwise, the import of § 1412 remains the same.

Gonzales v. Maher observed that, where the LEA either cannot or will not provide FAPE to a child, then the child will "best be served" by having a state or regional center provide services.  Doe by Gonzales v. Maher, 793 F.2d at 1491-92 ("[W]henever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child 'can best be served' on the regional or state level.").  In the Court's view, the IDEA can be properly read to require SEAs to ensure that the LEAs provide services or to provide direct services where the LEAs are unwilling to do, given the fact that Congress centralized responsibility for compliance with the IDEA.  Under § 1412, the SEA "is responsible for assuring that . . . all educational programs for children with disabilities in the State, including all such programs administered by any other State or local agency . . . meet the educational standards of the state educational agency."  20 U.S.C. § 1412.

Given that the SEAs are ultimately responsible for assuring that the requirements of the Act are met, see id., 20 U.S.C. § 1413(h)(1)(D) – or its successor, which reads identically – must be understood broadly so that it harmonizes with § 1412.  Section 1413(h)(1)(D) requires an SEA to provide direct services upon a determination that an LEA "has one or more child with disabilities who can best be served by a regional or State program. . . ."   20 U.S.C. § 1413(h)(1)(D).  This language, on its own, gives little guidance to states, and the regulations do not clarify it.  Section 1412, understood in light of the legislative history for the same section, gives meaning to the mandate for the SEAs to provide direct services at times.

Congress provided for some division of stewardship between LEAs and SEAs, but Congress also made sure that, at the end of the day, someone could be held responsible when breakdowns occurred and students with disabilities were deprived of educational services.  That ultimate responsibility was to fall on SEAs.  Thus, 20 U.S.C. § 1413(h) reflects the realistic notion that, while

the LEAs generally provide educational services directly to students, at times the LEAs will fail for some reason, and if the LEAs are unable or unwilling to take the steps necessary to correct their failings, the SEA still ultimately bears the responsibility for delivering educational services to children who lose out because of the LEAs' inability or recalcitrance.  If an LEA refuses to provide services that it is obligated to provide to a child, that child can "best be served" by the party bearing ultimate responsibility – the SEA – stepping in and exercising its authority, and if necessary, its control over the purse-strings.

Moreover, given that the IDEA is aimed at making sure disabled children receive educational services, if the local people will not or cannot provide them, it makes sense that those with oversight of public education  in the state and authority to proportion IDEA money take on the task of doing so, or assuring that the LEA's come into compliance and provide services to students who may be experiencing a denial of educational services.  In other words, the SEA is uniquely situated to make sure districts comply with the IDEA because it has oversight and authority over the school districts, which entails the ability to compel the districts to fulfill their responsibilities to students.  The hierarchical distribution of responsibility assures that the buck stops at some point.  Section 1412 of the IDEA expressly establishes that the buck stops with the SEA.  Thus, the Court agrees with the Ninth Circuit's statement that, "whenever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child 'can best be served' on the regional or state level."  Doe by Gonzales v. Maher, 793 F.2d at 1491-92.

For these same reasons, the Court believes that the word "determines" in § 1413(h) should not be interpreted to mean that the SAE must make a formal determination before it must provide direct services.  The NMPED's argument in this regard stems from the ambiguity that inheres in the word "determines."  No other Court appears to have analyzed the word's meaning in the context of

-35-

§ 1413(h).  Three definitions to the word "determine" appear in Webster's II, New Riverside Dictionary: (i) "To decide or settle authoritatively or conclusively;" (ii) "To limit in scope or extent: fix the limits of;" and (iii) "To ascertain the extent, position, quality, or nature of something." WEBSTER'S II NEW RIVERSIDE DICTIONARY at 194 (Berkeley Books 1984).  The Merriam-Webster Online Dictionary adds two other definitions that may be of relevance to usage in the IDEA: (i) "to find out or come to a decision about by investigation, reasoning, or calculation;" and (ii) "To come to a decision."  MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/determine (last visited November 16, 2008).  Thus, "determine" can entail an decision – perhaps even a formal one.  On the other hand, the word can mean "to find out" something by way of investigation, reasoning, or calculation.

The statute's language offers helpful guidance in choosing which definition applies here. Section 1413 lists four situations that would give rise to a need for direct services if the SEA "determines" that one of those situations exists: the LEA or SEA (i) "has not provided the information needed to establish the eligibility of such local educational agency or State agency under this section;" (ii) is unable to establish and maintain programs of free appropriate public education that meet the requirements of subsection (a) of this section;" (iii) "is unable or unwilling to be consolidated with 1 or more local educational agencies in order to establish and maintain such programs;" or (iv) has 1 or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of such children."  20 U.S.C. § 1413(h).

The second and fourth situations listed are compatible with either definition of determinable. The SEA may need to make a decision about whether an LEA is unable to provide services, or whether there is one or more child who could best be served by direct services.  The reason both of

these situations would be the basis for a decision is that an exercise of judgment or discretion – both at the heart of a making a decision –  might be needed to decide whether the situations existed.

On the other hand, there seems to be much less of a requirement of judgment or discretion for the SEA to "determine" that an LEA is "unwilling" to do something or has not provided required information to establish its eligibility.  The SEA does not "decide" an LEA is unwilling to do something.  More accurately, the SEA finds out, after investigating, that the LEA is unwilling to do something.

Thus, the reading of the word "determine" as implying a formal decision is incompatible with some parts of § 1413.  The Court assumes that the drafters of the statute intended for the word "determine" to have the same meaning for each of the four listed situations.  It therefore makes sense to adopt the meaning that allows the entire section of the statute to be read in a coherent way. The meaning which implies "finding out" best allows the statute to be read and understood in such a way.  Thus, there is no call for an official decision for the SEA to "determine" that a child will "best be served" by direct services.  Rather, the statute requires only that the SEA find out – perhaps after some investigation – that such a situation has arisen.

Such a reading of the statute better comports with its purposes as well.  To fulfill their statutorily mandated responsibility to ensure that the IDEA is implemented, the SEAs must have the flexibility to make quick decisions when they learn that disabled children are being deprived educational services because an LEA refuses or is unable to provide those services.  In other words, § 1413(h) does not restrict a SEA's ability to act to remedy problems it perceives at the local level until a formal determination is made.  Rather, § 1413(h) not only permits, but requires SAEs to get the job done when they know that an LEA is failing one or more of its disabled children and the SAE has the ability to remedy the situation.

The standard in <u>Doe by Gonzales v. Maher</u> is also useful because it represents a recognition that there may be some limitations on a state's ability or need to intervene in local affairs.  <u>See</u> 793 F.2d at 1492 ("Although the state has broad responsibilities under the EAHCA, those responsibilities are not absolute. The state is not obliged to intervene directly in an individual case whenever the local agency falls short of its responsibilities in some small regard.").  Appropriately, the Ninth Circuit noted: "The breach must be significant (as in this case), the child's parents or guardian must give the responsible state officials adequate notice of the local agency's noncompliance, and the state must be afforded a reasonable opportunity to compel local compliance." <u>Doe by Gonzales v. Maher</u>, 793 F.2d at 1492.  It makes sense that the SEA's duty to intervene and provide direct services must be predicated upon it knowing that such services are needed.  Furthermore, it would be unfair to hold the SEA liable for a violation if it did not have an opportunity to do anything to prevent the violation.

The circumstances of this case meet the criteria that the Ninth Circuit set forth in <u>Doe by Gonzales v. Maher</u>.  The situation was such that the NMPED had an obligation to step forward, and either to require Tularosa Schools to provide Matthew Chavez with a FAPE or itself provide Matthew with a FAPE.

First, Tularosa Schools, the LEA in this case, failed to provide Matthew with a FAPE for two full school-years.  That failure represents a significant breach.  The Due Process Hearing Officer concluded that "Student was denied FAPE in the 2003-2004 and 2004-2005 school year . . . due to District's failure to amend the IEP to reflect Students' refusal to attend school and the physical impossibility of getting him there."   DPHO Conclusion of Law ¶ 18, at 19.  The Due Process Hearing Officer additionally concluded that "Student was denied FAPE . . . due to the District's failure to develop an updated FBA and appropriate behavior plan (BIP) for Student once it was

apparent that the BIP developed for the 2003-2004 school year was no longer working."  Id. at 19.
The AAO modified Conclusion of Law 18 to read: "Student was denied FAPE in the 2003-2004 and
2004-2005 school year to date due to the District's failure to amend the IEP to address Student's
refusal to attend school."  AAO Decision at 4.  The Court does not perceive a significant difference
between the Due Process Hearing Officer's and the AAO's version of Conclusion of Law ¶ 18 as
far as the outcome of this case is concerned.

The parties have not disputed these administrative findings.  The NMPED, however, appears
to argue that no denial of FAPE occurred at all because Mr. Chavez and Ms. Nelson prevailed in the
administrative process, and a remedy was provided.  This argument, in essence, appears to be a form
of bootstrapping, whereby the NMPED's violation is exonerated because the other liable party,
Tularosa Schools, was already found liable and, according to the NMPED, paid its penance by
implementing the AAO remedy.  To the extent that Tularosa Schools implemented the AAO
remedy, then, it wiped out the violation that the DPHO and AAO found to have occurred.

The NMPED's line of reasoning in that regard is unpersuasive.  No one has attacked the
administrative findings that a violation of FAPE has occurred, and even if they had, the Court finds
evidence sufficient to support the finding.  Thus, Tularosa Schools' liability is established.  The
question here is therefore whether the NMPED either aided or caused this violation, and whether
it should, as a consequence, be held liable.

The Court does not believe that Tularosa Schools was unable to meet Matthew's needs.  The
Due Process Hearing Authority found that the District was "unable to meet Student's needs at this
time without intervention by on-site professionals, training and supervision by on-site professionals
with expertise in autism."  DPHO Finding of Fact ¶ 66, at 17.  The AAO adopted the Due Process
Hearing Officer's findings of fact, with the exception of finding of fact ¶ 60.  See AAO Decision

at 3.   The AAO therefore adopted this finding that Tularosa Schools was unable, without intervention, to meet Matthew's educational needs.  At the same time, the AAO recognized that its decision did not include a finding that Tularosa Schools could not adequately serve the student.  See AAO Decision at 15.  Part of the AAO's remedial order involved Tularosa Schools bringing in professional assistance, and the AAO expressed its belief that: "At this time, it appears that the local education agency can implement the remedy ordered by the administrative appeal officer for this student." Id. at 15.

Mr. Chavez and Ms. Nelson assert that Matthew could not receive a FAPE from Tularosa Schools because it lacked personnel qualified to teach him and it did not have a  program available to meet his needs.  See Plaintiffs' Brief at 12.  Nevertheless, the Court accepts the AAO's determination that the district was capable of implementing the remedy set forth in the AAO Decision.  In addition to the administrative record, upon which the AAO relied in formulating the belief that Tularosa Schools could, with professional help, provide educational services to Matthew Chavez, the Court also heard testimony from Tularosa Schools that it had such capabilities.  See, e.g., July 25, 2008 Tr. at 162:19-165:3 (Dembrowsky, Stewart).   Dembrowsky, who was the director of special education at Tularosa Schools, testified, among other things, that Tularosa Schools received extensive support and training from the region, and that it was capable of providing FAPE to Matthew Chavez.  See id. (Dembrowsky, Stewart).

Whether Tularsoa Schools was unable to provide services is not determinative, however, because it has been established that, at the time that Matthew was being denied FAPE, the district was unwilling to provide the necessary services.  "It would seem incontrovertible [sic] that, whenever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child 'can best be served' on the regional or state level."  Doe by

-40-

Gonzales v. Maher, 793 F.2d at 1491-92.  Under the IDEA, the SEA is responsible for direct services when a child can best be served on the regional or state level.  See id.  The NMPED is responsible for providing direct services when it has notice of such situations.  See id.; 20 U.S.C. § 1413(h)(1).  The NMPED's policy of sitting out and waiting for the dispute to percolate through the administrative proceedings does not exonerate the NMPED of its responsibility.

Second, the NMPED was on notice that the LEA was not providing FAPE to Matthew.  The AAO erred in implying that the SEA cannot be put on notice until the LEA has failed to carry out a due-process hearing officer's order.  See AAO Decision at 15.  The NMPED argues that it is only required to provide direct services when there has been an official finding of failure.  See July 25 Tr. at 33:22-25.  The Court sees no reason to graft a new requirement on the statute that the "determination" be "official" or "formal."   Rather, the Court understands that 20 U.S.C. § 1413(g)(1), fairly read, requires SAEs to provide direct services when they know failures are occurring at the local level, and when the SAE had a reasonable opportunity to compel local compliance.

The delays that Matthew Chavez experienced in receiving educational services are illustrative of how ill-advised it would be to require an official finding that a student is denied FAPE before the NMPED can act.  The two-tiered administrative process can be ponderous, and, even if the parties remain actively engaged in assuring a rapid resolution, time and educational services can be lost.  In this case, the DPHO's decision finding a denial of FAPE did not come down until November 17, 2004.[5]  This was more than a year after Tularosa ceased to provide educational

_____

[5] The NMPED has argued that Mr. Chavez and Ms. Nelson delayed the final decision of the DPHO.  Even if the Court accepts that as true, the overall concern remains the same.  The administrative process inevitably entails delays, even if the parties work as expeditiously as possible.  The NMPED should not be encouraged to wait until an administrative determination is released

services to Matthew Chavez.  To hold that the NMPED need do nothing until at least the announcement of the DPHO's official determination that a denial of FAPE has occurred would enshrine a policy that could allow months, and sometimes years, to pass by with a child receiving no education before the NMPED picks up any obligation to intervene.  That is contrary to one of the main purposes of the IDEA, which is to counteract the historical lack of education being provided to handicapped individuals.

Mr. Chavez and Ms. Nelson provided notice to the NMPED.  Mr. Chavez and Ms. Nelson wrote to the NMPED on September 25, 2003, and informed the NMPED that Matthew was not attending school because of behaviors flowing from autism and that Tularosa Schools was taking no steps to provide a FAPE to Matthew.   See Letter of Complaint at 10-11.  The Letter of Complaint gave details on the circumstances surrounding Matthew's refusal to attend school, Tularosa Schools' refusal to agree get Matthew to school, and Matthew's dis-enrollment.  See id. Moreover, the letter was not the only notice that the NMPED had regarding Matthew's situation and the fact that he was not attending school.  Duane Ellis spoke by telephone at least once with Ms. Nelson about the Letter of Complaint and told her "good luck." See July 25 Tr. at 61:6-10 (Nelson). Duane Ellis also communicated with Tularosa Schools and sent case citations supporting the contention that the district had no responsibility cross the threshold of Matthew's home to get him to school.  See DPHO Tr. at 228:18-229:11 (Dembrowsky, Stewart).

The NMPED therefore was apprised on multiple occasions of the difficulty occurring with Matthew Chavez.  The Court does not find support in the statutory scheme for the contention that the NMPED either was able, or even obligated, to sit back and watch events unfold before it took

before evaluating whether a disabled child needs its assistance in receiving educational services.

-42-

some steps to compel Tularosa Schools to bring its actions into conformity with federal law until after there was a formal determination by the DPHO that Matthew was being denied FAPE.  When a child covered by the act is not going to school at all, and the NMPED has ample notice of it, it has adequate notice for purposes of the IDEA.

Third, because the NMPED was put on notice about Tularosa Schools' failure to provide a FAPE for Matthew in September 2003, NMPED had ample time to compel Tularosa Schools to provide Matthew with a FAPE or to provide direct services to Matthew before the onset of the administrative proceedings in May 2004.  Instead, however, of ensuring that Matthew received a FAPE, the NMPED took at least some steps to actively uphold Tularosa Schools' refusal to develop a plan to provide Matthew with a FAPE when it informed Tularosa Schools that it had no obligation to retrieve Matthew from his home and provide case law on the topic.  Because the AAO was correct that Matthew Chavez was not provided FAPE, and because the NMPED was ultimately responsible for ensuring that Matthew was provided FAPE, the NMPED violated the IDEA.

The Court emphasizes that it is not critical of how New Mexico structures its provision of educational services to students in New Mexico.  The State remains largely free to administer educational services in the way that it deems best.  The NMPED must be careful, however, to remember that, when the state takes millions of federal dollars, it may have to tweak its system to make sure the State – even if the local school districts provide otherwise provide direct services – is providing FAPE to its disabled students.

**B.     THE COURT WILL NOT DECIDE WHETHER NMPED FAILED TO ENSURE IMPLEMENTATION OF THE AAO ORDER OR WHETHER IT FAILED TO ENSURE A CONTINUUM OF ALTERNATIVE PLACEMENT TO MATTHEW.**

Mr. Chavez and Ms. Nelson argue that they have offered sufficient evidence for the Court

to find that the NMPED failed to adequately implement the AAO order and that it failed to ensure a continuum of alternative placement for Matthew.  The Court, however, declines to make these findings.  In its October 19, 2006 MOO, the Court held that Mr. Chavez and Ms. Nelson could not bring an action to enforce the AAO decision if they were not an aggrieved party.  See Oct. 19 MOO at 19.  In the October 19 MOO, the Court did not foreclose the possibility of such an enforcement action under 42 U.S.C. § 1983.  See id. ("The Tenth Circuit might well find, if the issue was presented to it, that, because, the Plaintiffs have exhausted all administrative remedies and the state has still not complied with the final order, § 1983 is available in such a limited situation."); Robinson v. Pinderhughes, 810 F.2d at 1275; Miller v. Bd. of Educ. of Albuquerque Pub. Schs., 2006 WL 2786759, at *22; A.T. v. N.Y. Educ. Dep't, 1998 WL 765371, at *7; Metro. Sch. Dist. v. Buskirk, 950 F. Supp. at 902; Moubry ex rel. Moubry v. Indep. Sch. Dist. No. 696, 951 F. Supp. at 885, 886 n.13; Grace B. v. Lexington Sch. Comm., 762 F. Supp. at 418; Reid v. Bd. of Educ., Lincolnshire-Prairie View Sch. Dist. 103, 765 F. Supp. at 969.  Mr. Chavez and Ms. Nelson do not bring such a 42 U.S.C. § 1983 claim here, and thus, the argument regarding the NMPED's failure to ensure implementation of the AAO order is tantamount to an attempt to re-litigate the enforcement question that the Court has already decided.

While the Court reconsidered its October 19 MOO to the extent that it later found that Mr. Chavez and Ms. Nelson were aggrieved parties with respect to whether NMPED failed offer direct services where it had a duty to do so, see Sept. 10 MOO, the Court reaffirmed its explanation of the governing legal principles,  see id. at 11.  Specifically, the Court stated:

> While the Court believes that its decision in the October 19 MOO correctly construed the IDEA not to allow the Plaintiffs to use this case to enforce the AAO Decision, the Court, in its focus on the law, may not have adequately focused on the particular facts and procedural posture of this case.  While the Court continues to believe that the Plaintiffs cannot use the IDEA to enforce the AAO Decision in

federal court, the Court concludes that it may not have fully acknowledged the relief the Plaintiffs sought from the AAO and did not secure.

Sept 10 MOO at 11. Under those principles, the Court does not have jurisdiction to hear an enforcement action of the favorable AAO Decision.

In arguing for a finding that the NMPED failed to ensure a continuum of alternative placements throughout the state of New Mexico, Mr. Chavez and Ms. Nelson invite the Court to take on the task of forcing systematic changes to the way in which the NMPED operates. The Court is concerned that doing so is beyond the scope of this lawsuit. Perhaps that is the reason why even Mr. Chavez and Ms. Nelson have noted: "[T]he Court could, but need not, find that NMPED failed . . . to ensure a continuum of alternative placement to Matthew." Plaintiffs' Supp. Brief at 2. The Court agrees with Plaintiffs that it need not decide the issue. The Court will instead limit its attention to the claims upon which its jurisdiction is based: namely, Mr. Chavez and Ms. Nelson's contention that they were aggrieved by the finding and decision of the AAO. See 20 U.S.C. § 1415(i)(2)(A). The evidence presented on the claim properly before the Court deals with whether the NMPED failed in its duties to Matthew Chavez under the IDEA.

For similar reasons, the Court does not believe that it needs to delve into whether the NMPED had adequate monitoring processes. Mr. Chavez and Ms. Nelson are arguing about "macro" level problems in the NMPED and its methods of monitoring for compliance. See Plaintiffs' Supp. Brief at 2 (noting that there was evidence of "macro" level deficiency in the monitoring system and evidence that the NMPED did not respond to the concerns of parents of disabled children). The Court, however, declines Mr. Chavez and Ms. Nelson's invitation to begin tinkering, on a systemic level with the way the NMPED operates except to the extent that Mr. Chavez and Ms. Nelson have proved an actual violation of the IDEA that deprived Matthew Chavez

of FAPE.  This case is not the proper setting for the Court to go beyond deciding whether the NMPED violated the IDEA as to Matthew Chavez and to begin ordering the NMPED to revamp the way it operates on a system-wide level.  Mr. Chavez and Ms. Nelson have not shown that systematic changes and different monitoring processes are needed to remedy the wrong as to Matthew Chavez. The problem was not that the Matthew Chavez flew under the NMPED's radar.  Rather, the problem was that the NMPED failed to act when it knew that Matthew Chavez was not receiving educational services.

## V.    THE REQUESTED REMEDIES ARE INAPPROPRIATE.

Mr. Chavez and Ms. Nelson request three remedies, all of which are inappropriate in this case.  First, they requested that the Court order compensatory education.  Second, they request $80,000.00 in reimbursement for teaching services that Ms. Nelson rendered during the eighteen-month period in which Matthew was denied educational services.  Third, they request that the Court order the NMPED to install a hotline, which parents of disabled children can call and notify the NMPED of LEA's failings or possible deprivations of FAPE.

With regard to compensatory education, the Court finds that such a remedy would be duplicative of what was provided in the AAO Decision.  The AAO set forth a detailed, twelve-point remedy to help Matthew Chavez to catch up.  The Court makes no comment as to whether Tularosa Schools faithfully implemented the remedy while Matthew Chavez remained in Tularosa or whether Albuquerque Public Schools is now providing FAPE.  The Court concludes only that it does not make sense for the Court to re-order the same remedy for the NMPED's IDEA violation.

With regard to reimbursement, the NMPED argues that Mr. Chavez and Ms. Nelson are asking for compensatory or tort damages – which IDEA prohibits –  in the guise of equitable reimbursement.  Their position is not without merit. While the Tenth Circuit has not explicitly

decided whether compensatory damages are available under the IDEA, see  Moseley v. Board of Educ. of Albuquerque Public Schools, 483 F.3d 689, 693 (10th Cir. 2007), it noted that the majority of circuits have held that the IDEA does not permit compensatory damages, see id. (citing Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 28 (1st Cir. 2006); Gean v. Hattaway, 330 F.3d 758, 774 (6th Cir. 2003); Sellers v. Sch. Bd., 141 F.3d 524, 526-27 (4th Cir. 1998); Charlie F. v. Bd. of Educ., 98 F.3d 989, 991 (7th Cir. 1996); Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir. 1996)).  The Courts of Appeals finding that the IDEA prohibits money damages have based their holding on a Supreme Court decision that interpreted the language of the IDEA's predecessor statute, which stated that courts may "grant such relief" as they deem "appropriate." School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass., 471 U.S. 359, 369 (1985).

In School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass., the Supreme Court held that such power must be interpreted in light of the Act's purposes.  See id. According to the Supreme Court, the Act's purpose "is principally to provide handicapped children with 'a free appropriate public education which emphasizes special education and related services designed to meet their unique needs.'" 471 U.S. at 369 (citations omitted).  Given that purpose, the Supreme Court found that the Act contemplated that "such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children, but the Act also provides for placement in private schools at public expense where this is not possible."  Id.

Given that private school would have been appropriate because the LEA denied a student FAPE, and that the parents' unilateral decision to pay for private education was subsequently vindicated, the Supreme Court in, School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass., held that tuition reimbursement for private school was appropriate.  See 471 U.S.

at 369.  The Supreme Court did not appear to be opening the door to tort-style money damage claims

by holding that reimbursement would be allowed.  It explained:

> "[T]he [LEA] repeatedly characterizes reimbursement as 'damages,' but that simply
> is not the case. Reimbursement merely requires the [LEA] to belatedly pay expenses
> that it should have paid all along and would have borne in the first instance had it
> developed a proper IEP.  Such a post hoc determination of financial responsibility
> was contemplated in the legislative history:

Id. at 370.

Various circuit courts interpreted this Supreme Court case as precluding tort-style money

damages under the IDEA. See, e.g., Sellers by Sellers v. School Bd. of City of Mannassas, Va., 141

F.3d 524, 526-27 (4th Cir.1998).  As the Honorable J. Harvey Wilkinson, Circuit Judge for the

Fourth Circuit, explained in Sellers by Sellers v. School Bd. of City of Mannassas, Va.:

> Tort-like damages are simply inconsistent with IDEA's statutory scheme. The
> touchstone of a traditional tort-like remedy is redress for a broad range of harms
> "associated with personal injury, such as pain and suffering, emotional distress, harm
> to reputation, or other consequential damages." United States v. Burke, 504 U.S.
> 229, 239 . . .  (1992)(interpreting Title VII). By contrast, the touchstone of IDEA is
> the actual provision of a free appropriate public education.

141 F.3d at 527.

The Court notes that the NMPED has made arguments similar to those that the LEA made

in School Committee of Town of Burlington, Mass. v. Department of Educ. Of Mass., which is that

the request for reimbursement is actually a request for damages.  There is merit to the argument that

the reimbursement that Mr. Chavez and Ms. Nelson seek more closely resembles consequential

damages.  Rather than spending money to place Matthew in an suitable program, his mother kept

him at home.  While she may have provided educational services – and the record does not

adequately catalogue the extent or value of these services – she does not show that she paid out-of-

pocket expenses.

At the same time, it would seem hollow to tell Ms. Nelson that, under Supreme Court precedent, if she had paid the money to place Matthew in a private program or paid a consultant to help Matthew receive the educational benefits to which he was entitled, she would qualify for reimbursement, whereas, if she chose, either by economic necessity or otherwise, to provide the services herself, she could not be reimbursed her losses incurred for doing so.  It would seem that a fair reading of  School Committee of Town of Burlington, Mass. v. Department of Educ. Of Mass. would leave open the possibility that, like the parents in that case, Mr. Chavez and Ms. Nelson here could prove what it cost Ms. Nelson to provide services, and reimburse her those costs.  Even if that were the case – and the Court does not explicitly decide that it is –  it does not matter, because Mr. Chavez and Ms. Nelson have not provided sufficient proof in the record regarding what reimbursement they are entitled to receive.  Rather, they have offered testimony about the market value of the services that Ms. Nelson rendered.  See July 25, 2008 Tr. at 185:2-5, 15-17, 20-25; 186:1-187:5; and 187:23-188:12 (Dembrowsky).  To discuss payment for the value of services starts to sound a lot like compensation rather than reimbursement.  That is not sufficient to prove that Mr. Chavez and Ms. Nelson should receive any reimbursement.  Because the Court believes that its focus in fashioning equitable relief for an IDEA violation should be on ensuring Matthew Chavez' education rather than on compensating his mother for her services, the Court will not use the thin evidence that Mr. Chavez and Ms. Nelson proffered for the value of Ms. Chavez' services to create equitable relief.

Regarding the hotline, Mr. Chavez and Ms. Nelson have cast this remedy as one that will prevent Matthew from being deprived of FAPE in the future.  Mr. Chavez and Ms. Nelson offer no proof, however, that Matthew Chavez or students like him would be better off if the NMPED were forced to expend already scarce resources to run a hotline.  Parents and LAEs already have the

ability to call or write the NMPED.  Ellis testified that he received between 700-1000 calls per year at NMPED.  <u>See</u> Ellis Depo. At 7:13-14.  In this case, there has been no argument that the NMPED did not receive Mr. Chavez and Ms. Nelson's communications.  Rather, the argument is that Plaintiffs successfully relayed their concerns to the NMPED, and that the NMPED then sat on its hands and did nothing or supported Tularosa Schools' failure to provide FAPE.  The problem here was not notice, but failure to act properly on that notice.  Given the facts, the existence of a hotline would have had no impact on NMPED's actions as to Matthew Chavez.  The Court also does not think that such a hotline is necessary to prevent a future problem for Matthew Chavez.  The problem to avoid in the future is the NMPED's refusal to get involved early in the failures such as those in Tularosa Schools' case.  Perhaps the Court's finding that the NMPED's refusal in this case violated the IDEA will be helpful to the NMPED avoiding similar mistakes as to Matthew Chavez in the future.

Part of this lawsuit involved determining that such calls and letters can constitute notice to the NMPED that it may need to provide direct services.  Having a special, dedicated hotline does little, if anything, to add meaning to that.  The Court therefore declines to order the NMPED to install a hotline to field phone calls that can just as easily be directed to the NMPED.

## VI.   THE COURT DOES NOT FIND AN APPROPRIATE REMEDY FOR THE IDEA VIOLATION  IN THIS CASE.

Although the Court has rejected Mr. Chavez and Ms. Nelson's requested remedies, it has power to fashion an appropriate remedy under the right circumstances.  The Court finds, however, that those circumstances do not exist this case.  The primary injury asserted here was a denial of FAPE.  The Court holds that the NMPED failed to provide FAPE, and that it had adequate notice and opportunity to compel Tularosa Schools to comply or to step in and provide direct services to

Matthew Chavez.  At the same time, the evidence shows that, while Matthew was out of school for the relevant time period, his mother, commendably, appears to have kept him on track.  The AAO remedy, including the compensatory education, have also helped Matthew to regain lost ground. Given that Mr. Chavez and Ms. Nelson have not proved expenses that they had to cover to keep Matthew on track during the eighteen-month period during which he was denied FAPE, the Court does not have the option of awarding reimbursement, which might be proper.  The Court therefore awards no damages or other relief to Mr. Chavez and Ms. Nelson.[6]

 **IT IS ORDERED** that the AAO's conclusion that she did not have jurisdiction over the NMPED is error.  The Court finds that Defendant New Mexico Public Education Department was a proper party to the administrative process, that it denied Matthew Chavez FAPE for the 2003-2004 and 2004-2005 school years, and that the NMPED violated the Individuals with Disabilities Education Act.  The Court will not, however, order remedies or compensation for this violation.  Mr. Chavez and Ms. Nelson may apply for fees and costs under applicable law and the local rules if fees and costs are appropriate.

---

[6] The Court realizes that it is an unfulfilling result to find liability and, at the same time, award no remedy.  The NMPED argues that, if the Court could not provide relief, the Court did not have jurisdiction to hear the case in the first place.  Such a conclusion is contrary to common sense. The Court accepted jurisdiction based on Mr. Chavez and Ms. Nelson's contention that the NMPED failed to fulfill its duty to Matthew Chavez, under the IDEA, to ensure that he was receiving FAPE. In other words, Mr. Chavez and Ms. Nelson asserted the deprivation of a right created by federal statute, and the Court properly heard their claims.  The fact that, after all is said and done, the Court finds that Mr. Chavez and Ms. Nelson have proved a violation and an injury that, under these circumstances, cannot be properly and appropriately remedied and compensated, does not change the fact the Court had jurisdiction to hear the case.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gail Stewart
Laurel Nesbitt
Steven Grabber Attorney at Law, P.A.
Albuquerque, New Mexico

-- and --

Tara Ford
Pegasus Legal Services for Children
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Gerald Coppler
Coppler & Mannick, P.C.
Santa Fe, New Mexico

     *Attorneys for Defendant Board of Education of Tularosa Municipal Schools*

Andrew S. Montgomery
Jeffrey J. Wechsler
Montgomery & Andrews, P.A.
Santa Fe, New Mexico

     *Attorneys for Defendants New Mexico Public Education Department and Veronica Garcia*