IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SIMON and BEVERLY CHAVEZ,
on behalf of their minor son,
MATTHEW CHAVEZ,

       Plaintiffs,

vs.                                                                                    No. CIV 05-0380 JB/RLP

BOARD OF EDUCATION OF TULAROSA
MUNICIPAL SCHOOLS; the NEW MEXICO
PUBLIC EDUCATION DEPARTMENT; and
VERONICA GARCIA, Secretary of the
NMPED in her individual and official capacity,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

     **THIS MATTER** comes before the Court on the Plaintiffs' Motion for a New Trial on Disability Discrimination Claims and Memorandum in Support, filed November 24, 2008 (Doc. 226). Having carefully considered the arguments raised in the briefing, the Court finds that it has sufficient information to make a determination without a hearing. The primary issues are: (i) whether allowing Defendant New Mexico Public Education Department ("NMPED") to present a defense to the discrimination claim based in part on an interpretation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-82, which the Court later found to be incorrect was plain error justifying a new trial; and (ii) whether Final Jury Instruction No. 21, which discussed certain IDEA requirements, constituted plain error justifying a new trial. Because the NMPED's IDEA-based evidence and arguments were valid evidence negating the stringent standards for proving discrimination under the Rehabilitation Act, 29 U.S.C. § 794(a)(2), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and because there is

overwhelming evidence otherwise supporting the jury's verdict, the Court will not grant a new trial.

## PROCEDURAL BACKGROUND

From November 10-14, 2008, the Court held a jury trial on Plaintiffs Simon Chavez and Beverly Nelson's claims that the NMPED discriminated against their son, Matthew Chavez, by denying him educational benefits in violation of the Rehabilitation Act, and Title II of the ADA. During discussions about jury instructions, the Court dealt with the extent to which the parties would be allowed to discuss the IDEA and the manner in which the jury instructions would refer to the IDEA. The NMPED proposed a jury instruction that reflected its theory that, under the IDEA, it could not intervene before the administrative proceeding had played out. See Defendant New Mexico Department of Public Education Proposed Jury Instructions, NMPED's Requested Instruction No. 22, at 24, filed November 4, 2008 (Doc. 184). The Plaintiffs objected to the form of the instruction, and argued that, "if we are going to get into that much detail about the IDEA, then it needs to be the language in the statute." Trial Transcript at 329:4-6 (taken November 12, 2008)(Stewart)("Nov. 12 Tr.").[1]

The Court sustained the Plaintiffs' objection to the proposed jury instruction and informed the NMPED that the Court was not inclined to agree with the NMPED's interpretation as reflected in the proposed jury instruction and would not include the NMPED's interpretation in the jury instructions. See Nov. 12 Tr. at 329:9-14 (Court). The Court stated, however, that it would permit the NMPED to argue what its policy is under IDEA, and offer its policy as a defense to the discrimination charges. See id. at 330:1-10 (Court). The Court asked the Plaintiffs if they were comfortable with the Court's approach, and they stated that they were. See id. at 329:20-24 (Court

---

[1] The Court's citations to the transcript of the trial refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

& Stewart).

The Plaintiffs note that, for a significant portion of its defense, the NMPED set forth the theory that, under the IDEA, Local Education Agencies ("LEAs") have responsibility for direct services, while the NMPED merely provides oversight to the local school districts. See Motion at 5. The NMPED also argued that the IDEA funds have strings attached, and that the NMPED could not interfere with the local school district. See Motion at 5. The NMPED also put on testimony that it would have been improper for the NMPED to step in during the administrative process that was being pursued under the IDEA. Finally, NMPED argued that the Plaintiffs' communications with the NMPED were not sufficient to put the NMPED on notice that it should act on Matthew's behalf because it represented only one side of the story. See Motion at 6.

The Court also used a jury instruction which summarized certain aspects of IDEA law. That jury instruction stated:

> Public school districts have an obligation to provide a free appropriate public education ("FAPE") to students with a disability. A FAPE is defined as an education at no cost to a student that is specifically designed to meet the student's needs, and that provides him with some educational benefit. The NMPED is responsible for general supervision of the provision of FAPE to disabled students by school districts in New Mexico and, in certain circumstances, direct provision of FAPE to disabled students in New Mexico.
>
> The educational services that are required to provide a FAPE are determined on a case-by-case basis by a student's Individualized Education Program ("IEP") Team. If a parent or school district is dissatisfied with any aspect of a students' IEP, they may request a due process hearing before an impartial due process hearing officer appointed by the NMPED.

Court's Final Jury Instruction No. 21.

Shortly after the trial, the Court issued a Memorandum Opinion and Order on the Plaintiffs' IDEA claims in this case. See Memorandum Opinion and Order, entered November 17, 2008 (Doc. 219)("MOO"). In its November 17 MOO, the Court interpreted the IDEA in a way that differed

substantially from the interpretation that the NMPED testified it had relied upon at trial. Specifically, the Court held that the NMPED was a proper party to the administrative process, that it denied Matthew FAPE for the 2003-2004 and 2004-2005 school years, and that the NMPED violated the IDEA.  See MOO at 51.

Within ten days of entry of final judgment, the Plaintiffs filed this Motion, in which they ask the Court to order a new trial.  The Plaintiffs now contend that, given the Court's analysis of the IDEA, allowing the NMPED to give its interpretation of the IDEA as a defense amounted to plain error because NMPED used inaccurate interpretations of the law that were contrary to the Court's MOO as its defense against the discrimination claims.  See Motion at 6.  The Plaintiffs argue that the Court's November 17 MOO created a change in controlling law and that the Court's pronouncements on the IDEA would have limited the NMPED's defenses to the discrimination claim.  According to the Plaintiffs, if the Court's MOO had come out before the trial, it would have foreclosed arguments that: (i) under the IDEA procedures, the NMPED could not act upon the parents' information that Matthew was out of school; (ii) under the IDEA, the NMPED did not have responsibility for provision of direct services; and (iii) under the IDEA, the NMPED could not participate in the administrative proceedings.  See Motion at 7.

The Plaintiffs also assert that they were severely prejudiced during the trial because they were procedurally unable to object to the NMPED's representations about the IDEA.  Specifically, they contend that they were "hamstrung because they could not fight the battle over IDEA in front of the jury as it was a legal question already fully presented to the Court through briefs, argument and additional evidence."  Motion at 7-8.

In light of the defense that the NMPED presented, the Plaintiffs argue that Jury Instruction No. 21 "left the jury without clear guidance on the fundamental question of the ability and

responsibility of NMPED to act to ensure FAPE to Matthew." Motion at 9. They contend that "this error is so serious that it goes to the very integrity of the trial." Id. The Plaintiffs concede, however, that they did not object to the final instructions. Nevertheless, the Plaintiffs maintain that, given that the Court allowed the NMPED to put on a defense based on an interpretation of the IDEA that the Court rejected in its later ruling, and given the introduction of Jury Instruction No. 21, the Court should order a new trial.

The NMPED responds that the Plaintiffs have mischaracterized its defense and that they improperly strive to unite the Court's IDEA decision with the jury's decision on the discrimination claim. See Response of Defendant New Mexico Public Education Department to Plaintiffs' Motion for a New Trial on Disability Discrimination Claims and Memorandum in Support, filed December 10, 2008 (Doc. 231)("Response"). The NMPED states that, at trial, it presented evidence that it did not discriminate against Matthew because: (i) the core dispute between the Chavez family and Tularosa Municipal Schools was over the contents of an Individualized Education Plan ("IEP"); (ii) the NMPED understood, consistent with all of the other witnesses at trial, that only the IEP team could change the IEP; (iii) the NMPED provided an impartial procedure for the Chavez family to challenge the contents of an IEP; (iv) the NMPED informed the Chavez family of the procedures and of their rights; (v) the NMPED urged the district of Tularosa to take specific action to address Matthew's needs; (vi) the Plaintiffs made an informed decision to continue to work with Tularosa Schools; (vii) the delays in addressing the Plaintiffs' claims were for non-discriminatory reasons; (viii) the NMPED had rules in place to ensure a rapid and fair resolution of the dispute between the Chavez family and Tularosa Schools; (ix) once given the opportunity, the NMPED rapidly resolved the issues and, in an administrative proceeding, found in favor of the Plaintiffs, issuing a detailed comprehensive order to compensate Matthew for his lost education; (x) the NMPED refused the

district of Tularosa's request to alter the order; (xi) the NMPED administrative order facilitated an extraordinary education for Matthew; and (xii) the NMPED paid for the education provided to Matthew.  See Response at 6.

The NMPED insists that the Court's IDEA opinion does not constitute new law necessitating a new trial.  They note that the IDEA did not govern the Plaintiffs' claims at trial.  The NMPED also argues that the Plaintiffs failed to object.  The NMPED asserts that, given the Plaintiffs' failure to object at trial, the objection is waived unless there is plain error resulting in manifest injustice.  See Response at 7 (quoting United States v. Herndon, 982 F.2d 1411, 1414-15 (10th Cir. 2008)).  The NMPED maintains that, under the plain-error standard, the Plaintiffs have not pointed to authority for the proposition that the Court was clearly obliged under the circumstances to exclude the allegedly objectionable evidence.  See Response at 7.

The NMPED also argues that it is not possible to know conclusively on what basis the jury reached its conclusion, because the NMPED presented multiple defense theories that could support the verdict.  See Response at 9.  When viewing the verdict in the light favorable to the prevailing party, the NMPED argues that the verdict should therefore be upheld.  The NMPED contends that it presented various plausible theories, and that the Plaintiffs cannot meet their burden of showing that the jury's verdict is based on the IDEA interpretations rather than on one of the various other defenses.

In reply, the Plaintiffs state that the NMPED's response is premised on speculation that the jury might have ignored what they refer to as its "main defense at trial."  Plaintiffs' Reply in Support of Motion for New Trial on Disability Discrimination Claims at 1, filed December 23, 2008 (Doc. 241)("Reply").  They insist that the jury verdict "is only explainable by the jury's reliance on NMPED's defense that it could not act.  Otherwise, the uncontroverted evidence of denial of the

benefit of public education should have resulted in a finding of discrimination." Reply at 5. Specifically, the Plaintiffs argue that any other basis for the jury's verdict makes no sense because "the controlling fact (denial of the benefit of public education) was uncontroverted and that controlling fact establishes discrimination *unless* the defendant has no *power* or *responsibility* to assure the benefit." Id. (emphasis in original).

The Plaintiffs also maintain that they could "neither have effectively or rightfully argued 'the law' of the IDEA with . . . [NMPED's] lay witnesses in order to educate the jury" that the witnesses were testifying based on an erroneous understanding of federal law. Reply at 3. The Plaintiffs state that they could not challenge the testimony of the witnesses, who were "the very employees who are charged, under the public education structure of New Mexico, with implementation of IDEA and state laws on education," because the testimony "resonated and could not be 'challenged.'" Reply at 3.

## THE LAW REGARDING MOTIONS FOR A NEW TRIAL

Although motions for a new trial are generally committed to a Court's discretion, they are disfavored and should be granted with caution. See Richins v. Deere and Co., 231 F.R.D. 623, 625 (D.N.M. 2004)(Browning, J.). "In considering a motion for a new trial on the grounds of prejudicial error, the alleged trial court errors must be clearly erroneous, as well as prejudicial and must have affected the substantial rights of the parties." Atencio v. City of Albuquerque, 911 F. Supp. 1433, 1437 (D.N.M. 1995)(quoting Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1148-49 (10th Cir. 1978), cert. denied, 439 U.S. 862 (1978)). The party asserting the error bears the burden of showing clear error and prejudice to substantial rights. See Blanke v. Alexander, 152 F.3d 1224, 1236 (10th Cir. 1998); United States v. Mitchell, 113 F.3d 1528, 1532 (10th Cir. 1997); K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1156 (10th Cir. 1985); Atencio v. City

of Albuquerque, 911 F. Supp. at 1437.

## **ANALYSIS**

The Plaintiffs have not met their burden of showing that the Court should set the jury verdict aside and grant a new trial.  The Plaintiffs did not preserve their objections, given that they failed to object at the time of trial, and they have not offered an adequate reason why their failure to object should be excused. Furthermore, the standard for proving discrimination based on ability under the ADA and the Rehabilitation Act is high, and the Court believes there is overwhelming evidence supporting the jury's verdict.  A new trial is therefore not merited.

**I.      THE NMPED's DEFENSE WAS NOT A SURPRISE.**

The Plaintiffs suggest that the NMPED's defense at trial was as surprise, and that they did not anticipate what the NMPED would say and thus could not have been expected to object.  That picture does not, however, accurately or fairly characterize what the parties knew going into the trial.  Both sides knew that the IDEA issues were not going to be decided at trial, but would have to be mentioned to some extent for the parties' stories to make sense to the jury.  The Plaintiffs and the Court knew that the NMPED's position was that it had no obligation to intervene in the due process proceeding.  The Plaintiffs knew that the NMPED's witnesses were going to say that at trial.  Yet the Plaintiffs did not object.

The Plaintiffs did not object to the NMPED talking about its interpretation of the IDEA because the Plaintiffs wanted to talk about the IDEA.  It would have been difficult, if not impossible, for the Plaintiffs to talk about Matthew's IEPs without talking about the IDEA.  The Plaintiffs were the ones that brought up the IDEA in the case in chief to explain that the NMPED sat on its hands while the administrative proceedings were ongoing.  It would have been hard for either side to tell its story without reference to the IDEA.  Also, in the proposed jury instructions, the Plaintiffs did

not object to instructions on the IDEA. Rather, they objected to the form of the instruction. See Nov. 12 Tr. at 329:4-6 (Stewart). The Court sustained their objection and precluded the NMPED from entering an instruction setting forth the NMPED's interpretation of the IDEA. The Plaintiffs told the Court that they were comfortable with what the Court did in regarding that jury instruction. They discussed the IDEA in voir dire. While the trial was not an IDEA trial, it would have been difficult for the Plaintiffs to have described their claim without reference to the IDEA. Because they wanted to discuss the IDEA, they allowed the NMPED to discuss in a limited way the IDEA, too.

The Plaintiffs made a strategic decision to allow discussion about the IDEA to go to the jury. They are in a poor position to object now. It is unlikely that, if there were a new trial, the case could be reasonably tried differently.

## II. THE COURT SIGNALED DURING TRIAL THAT IT DID NOT AGREE WITH THE NMPED'S INTERPRETATION OF THE IDEA.

The Plaintiffs also suggest that the Court's ruling on the IDEA portion of the case, coming after the trial, was a surprise, and that the trial would have proceeded differently if they had known how the Court was going to rule on that issue. It should not have been. The Court indicated early on that it was inclined to disagree with the NMPED's interpretation of the IDEA. See Nov. 12 Tr. at 329:9-14 (Court). It is for that reason that the Court sustained the Plaintiffs' objection to NMPED's proposed jury instruction about the IDEA. The Court decided not to permit the NMPED to put its interpretation into a jury instruction. The Court rewrote the instruction so that it would not reflect the NMPED's interpretation.

## III. THE PLAINTIFFS OVERSTATE THE AMOUNT OF TIME DEVOTED TO THE NMPED'S POSITION ON IDEA AT TRIAL.

While the NMPED no doubt discussed its interpretation of the IDEA as an excuse for not intervening, the Plaintiffs paint a picture that has the IDEA defense as the primary topic of

discussion at the trial. See Reply at 4 ("NMPED's defense that it 'could not' act permitted the entire case."); id. (arguing that the NMPED "relie[d] on IDEA as its main defense"). The IDEA was not a hidden topic, but it also was not the main topic. The NMPED had many defenses, and considerably more time was devoted to those defenses than to the IDEA defense.

The Court does not believe that the NMPED's defense of its interpretation of the IDEA was a major issue in the case. Moreover, rather than objecting to the testimony, the Plaintiffs extensively cross-examined the NMPED's witnesses about their position. In the end, the jury decided that the NMPED did not intend to discriminate against Matthew and deny him benefits on the sole basis of his disability. The limited discussion about the NMPED's interpretation of the IDEA did not affect the Plaintiffs' substantial rights and was not fundamentally unfair.

**IV.    THE NMPED'S DEFENSE REGARDING ITS INTERPRETATION OF THE IDEA WAS A VALID MEANS OF ATTEMPTING TO PROVE THE NMPED DID NOT INTENTIONALLY DISCRIMINATE AGAINST MATTHEW SOLELY ON THE BASIS OF HIS DISABILITY.**

The Court sees no clear or plain error which would justify a new trial in this case. More precisely, the errors that the Plaintiffs raise on this motion for a new trial do not represent errors. They did not object to the Court's allowing the IDEA-based defense at trial. Indeed, they wanted to speak about the IDEA as well when it suited them. The objection they now bring in the motion for a new trial, although not explicitly framed up in such terms, must be that the Court erred in allowing the NMPED to present its case the way it did. The NMPED, however, put on a proper defense, with relevant evidence, and the evidence they presented supports the verdict that the jury returned.

The Plaintiffs' arguments for granting a new trial based on the NMPED's use of the IDEA in its defense is rooted largely in a misunderstanding of what they were required to prove for their

ADA claim. Given the elements of proof in a discrimination claim under Title II of the ADA and under the Rehabilitation Act, which include intentional discrimination based solely on disability, the NMPED was entitled to offer up its explanation for why it did what it did. Moreover, having observed the trial, the Court believes that the NMPED offered overwhelming evidence that it did not act intentionally discriminate against Matthew on the basis of his disability. There was plenty of evidence to support a proper finding by the jury that the NMPED was not liable under Title II of the ADA and under the Rehabilitation Act.

In Jury Instruction No. 19, the Court laid out the standard under which the jury was to evaluate the Plaintiffs' discrimination claim. The Court instructed the jury that

> To find that [the Plaintiffs] have established their claim of disability discrimination under the Rehabilitation Act or the ADA, and that NMPED discriminated against Matthew Chavez on the basis of his disability, The Plaintiffs must prove each of the following elements by a preponderance of the evidence:
>
> 1. Matthew Chavez is a person with a disability within the meaning of the Rehabilitation Act and the ADA;
>
> 2. Matthew Chavez was otherwise qualified to participate in public education;
>
> 3. That the NMPED receives federal financial assistance;
>
> 4. That the NMPED discriminated against Matthew Chavez by excluding or denying him the benefits of a service, program, or activity that it provided to nondisabled students;
>
> 5. That the NMPED discriminated against Matthew Chavez <u>solely</u> on the basis of his disability; and
>
> 6. For you to find that [the Plaintiffs] are entitled to damages, that the NMPED <u>intentionally discriminated by acting with deliberate indifference</u> to Matthew Chavez' right to receipt of public education free from discrimination on the basis of disability.
>
> If you find that each of the elements on which [the Plaintiffs] have the burden of proof has been proved, your verdict should be for [the Plaintiffs]. If, on the other

      hand, [the Plaintiffs] have failed to prove any of these elements, your verdict should be for the NMPED.

Jury Instruction No. 19 (emphasis added).

      In the Court's view, the key hurdles which the Plaintiffs needed to overcome to carry the day were the intent requirement and the requirement that Matthew's disability be the sole reason for denying Matthew services or benefits provided to non-disabled students. Given the theory upon which the Plaintiffs brought their discrimination claim, it was not surprising that they were unable to convince the jury. They bore the difficult burden of proving to the jury that the state bureaucracy in charge of overseeing public education in New Mexico intentionally denied Matthew benefits solely because of Matthew's disability by deciding not to immediately intervene when Matthew's parents got in a dispute with the local educators regarding what the local educators' duties were regarding Matthew. The NMPED's defense was, in part, that its policy was to allow the local educators and the family to work out the specifics of Matthew's education plan, and to provide a forum for administrative hearings if necessary. The Court held that such a defense was not adequate to absolve the NMPED of its duties under the IDEA. Nevertheless, the Court believes the defense was an effective and proper means of negating the intent and "solely" requirements of the ADA and the Rehabilitation Act.

      As is evident in their Reply, the Plaintiffs would write the intent element out of the ADA and out of the Rehabilitation Act. They argue: "Discrimination is simply the denial of the public benefit . . . . NMPED continues to misunderstand that denial of the benefit of public education is the discrimination and mistakenly posits that 'the principle question posed to the jury was whether, as a factual matter, the NMPED acted for discriminatory reasons.'" Reply at 5 (quoting Response). The Plaintiffs believe that

> [t]he only way the jury could have halted at the question of discrimination is reliance on NMPED's legal defense that NMPED was prohibited by IDEA from acting. Any other basis for this jury's verdict makes no sense because the controlling fact (denial of the benefit of public education) was uncontroverted and that controlling fact establishes discrimination unless the defendant has no power or responsibility to assure the benefit.

Reply at 5. Accordingly, the Plaintiffs contend that the jury never reached the "intent" question because they erroneously decided first that there was no discrimination at all.

Admittedly, the Special Verdict Form separates out the discrimination, "solely," and intent requirements into different items. The first item asked: "Did Defendant New Mexico Department of Public Education discriminate against Matthew Chavez by excluding or denying him the benefits of a service, program, or activity that it provided to nondisabled students?" Special Verdict Form at 1. The jury returned an answer of "no" to this query and, as instructed, signed the form and returned it. The jury's finding that no discrimination occurred, however, rests on solid evidentiary ground, even if the jury did not reach the questions of intent and "solely" as reflected in the Special Verdict Form.

First, the IDEA defense that the NMPED offered was proper, given that it constituted a valid explanation for why the NMPED did what it did. Second, on the question of discrimination, the Court instructed the jury that "[d]enial of the benefit of public education, <u>on the basis of disability</u>, is discrimination." Jury Instruction No. 20 (emphasis added). The Plaintiffs understand Jury Instruction No. 20 as stating that denial of a public education establishes discrimination. They ignore the fact that the denial of the benefit must be done on the basis of disability. The Court could have properly decided that the NMPED acted for some other reason – including because the NMPED thought it could not or should not act until the dispute percolated up through the administrative process. To put it more bluntly, the jury could have – and, based on the evidence,

-13-

likely did so – found that the NMPED did not deny Matthew any benefit because Matthew was disabled, but rather because the NMPED was committed to the bureaucratic process which it had been accustomed to following in seeing disputes such as the one underlying this case resolved. Alternatively, the jury could have found that the NMPED did not deny any benefit to Matthew, but that NMPED was just very slow in remedying a denial for which the district of Tularosa was responsible.

Ultimately, the Plaintiffs had a relatively weak case against the NMPED. While the Court realized the case was weak and would be difficult to prove at trial, the Court believed – and continues to believe – there was a sufficient dispute to allow the claims to proceed to a jury. Nevertheless, it was not surprising that the jury did what it did. The evidence presented to the jury overwhelmingly supports the jury's verdict. There is therefore no reason to disturb what the jury did.

## V. THE INTRODUCTION OF JURY INSTRUCTION NO. 21 DID NOT INJECT PLAIN ERROR INTO THE TRIAL.

Rule 51 of the Federal Rules of Civil Procedure instructs that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). "A party may assign as error . . . an error in an instruction actually given, if that party properly objected." Fed. R. Civ. P. 51(d)(1). Nonetheless, "a court may consider a plain error in the instructions that has not been preserved as required by rule 51(d)(1) if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2).

In this case, the Plaintiffs failed to object, as required under rule 51(d)(1). They state that, while they failed to formally object, they raised concerns, in dialogue with the Court, about

importing IDEA law into the trial and into the instructions.  See Motion at 9.  Raising generalized concerns without making a record of objections and without "stating distinctly the matter objected to and the grounds for the objections" is insufficient.  Fed. R. Civ. P. 51(c)(1).  The Plaintiffs have not provided citations to the record to substantiate their objections.  The Plaintiffs have instead left the burden of searching the extensive record in this case for any indication that their objection has merit.  The belated objection to Jury Instruction No. 21 is therefore viable only if the objection fits under the plain-error standard.  The Plaintiffs attempt to bring their objection under the plain-error exception by pointing out that Jury Instruction No. 21 wrongfully injected IDEA law into the trial, that NMPED "misrepresented" the law under the IDEA, and that the Court's subsequent MOO constituted controlling authority which put the nail in the coffin of the NMPED's version of the IDEA.

The Court disagrees with the Plaintiffs' understanding of the application of the plain-error exception to this case and with their contention that Jury Instruction No. 21 injected any – much less plain – error into the trial.  The cases that perhaps come closest to presenting circumstances similar to those present in this case are discussed in Cadena v. Pacesetter Corp., 224 F.3d 1203 (10th Cir. 2000).  In Cadena v. Pacesetter Corp., the United States Court of Appeals for the Tenth Circuit explained that it has allowed such untimely objection in the "narrow" and "rare" situation "when the interests of justice require," and when an instruction or set of instructions is "'patently plainly erroneous and prejudicial.'"  224 F.3d at 1211 (quoting Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 553 (10th Cir. 1999)).

In its discussion in Cadena v. Pacesetter Corp., the Tenth Circuit cited three cases in which the Tenth Circuit remanded for a new trial because the jury was improperly instructed in light of Supreme Court decisions handed down after judgment was entered.  The Tenth Circuit cautioned

-15-

against reading those three cases as establishing a rule that a new trial should be granted every time the Supreme Court of the United States issues an opinion subsequent to judgment that calls into question or renders incorrect the instructions given to the jury at trial. See Cadena v. Pacesetter Corp., 224 F.3d at 1211. The Tenth Circuit in Cadena v. Pacesetter Corp. noted that one of the three cases was a criminal case in which it had applied the plain-error standard. Id. (citing Spring v. United States, 80 F.3d 1450, 1464-66 (10th Cir. 1996)). The two civil cases, on the other hand, involved application of an exception for where "justice requires." Those two cases specifically dealt with the situation in which it would have been futile, under the governing law at the time, for a party to object to an instruction. See Cadena v. Pacesetter Corp., 224 F.3d at 1211.

The Tenth Circuit's analysis in Cadena v. Pacesetter Corp.[2] suggests that this case does not

---

[2] Although rule 51 has been amended since Cadena v. Pacesetter Corp. and the cases it cites, the Court believes those cases continue to be good law, at least to the extent that they deal with rule 51. Before 2003, the Tenth Circuit had judicially created exceptions to the requirement that parties preserve objections to jury instructions for when justice requires, and for when an instruction is patently plainly erroneous and prejudicial. The 2003 amendments to the Federal Rules of Civil Procedure included revisions "to capture many of the interpretations that have emerged in practice." Advisory Committee Notes, 2003 Amendments to rule 51, at 236 (2008 ed.). Part of those revisions to capture judicial practice included the addition of a plain-error exception. See id. at 537.

The Court does not believe that the 2003 amendment to rule 51 either narrowed or expanded the Tenth Circuit's approach to allowing untimely objections to jury instructions in exceptional circumstances. More recent Tenth Circuit opinions continue to articulate the same standards and to cite pre-2003 cases. See, e.g., Johnson ex rel. Estate of Cano v. Holmes, 455 F.3d 1133, 1141 (10th Cir. 2006)("Because the personal representative failed to object to the jury instructions at trial, we review only for plain error . . . . Under that standard, we will affirm unless the instructions were 'patently, plainly erroneous and prejudicial. . . .'")(quoting Greene v. Safeway Stores, Inc., 210 F.3d 1237, 1245 (10th Cir. 2000)(quoting in turn Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1190 (10th Cir. 1997)(internal quotation marks omitted)).

The Advisory Committee Notes to the 2003 Amendments state: "Many circuits have recognized that an error not preserved under rule 51 may be reviewed in exceptional circumstances. The language adopted to capture these decisions in subdivision (d)(2) is borrowed from Criminal Rule 52." Advisory Committee Notes, 2003 Amendments to rule 51, at 237. In other words, the update to rule 51 was calculated to reflect the majority of the circuit courts' decisions, not override those decisions. Moreover, the factors that the advisory committee discusses reflect similar considerations to those that the Tenth Circuit has given when determining whether to indulge an

present circumstances making it appropriate to grant a new trial. The intervening change in law to which the Plaintiffs point is not a controlling decision that calls into question or renders Jury Instruction No. 21 incorrect or calls it into question. Rather, the intervening law on which the Plaintiffs rely, which is an opinion that this Court issued, does not contradict the generic IDEA principles set forth in Jury Instruction No. 21. If Jury Instruction No. 21 were read to the jury today, rather than on November 14, 2008, it would still be correct. The Plaintiffs appear to recognize this fact, because they never explicitly state that the instruction was erroneous. Rather, their objection – which is even more difficult to sustain, in the Court's view – is that the instruction, while correct, somehow confused the jury in light of the way in which the NMPED represented the details of the IDEA. In other words, the Jury Instruction left the jury without clear guidance on the NMPED's actual responsibilities and abilities under the IDEA.

The Court does not, however, believe the jury was confused. The Court is reluctant to label as "plain error" an instruction which accurately represents the law. The Court notes that it did not adopt the NMPED's proposed instruction regarding its interpretation of the IDEA. See Defendant New Mexico Department of Public Education Proposed Jury Instructions, NMPED's Requested Instruction No. 22, at 24, filed November 4, 2008 (Doc. 184). The Court, however, allowed the NMPED to testify to the jury that its interpretation of the IDEA – an interpretation with which the Court ultimately disagreed – formed part of the reasons for doing what it did with regard to

---

unpreserved objection to jury instructions. Specifically, the advisory committee mentions four factors which will shape a court's decision in civil cases: (i) the obviousness of the mistake; (ii) the importance of the error; (iii) the costs of correcting an error; and (iv) the impact a verdict may have on nonparties. See id. at 237. Given the posture that the 2003 amendments take in trying to reflect what the majority of circuit courts were doing, and the fact that the Tenth Circuit appears to have fit in the majority of circuits who recognized something like a plain-error exception, the Court believes that the principles articulated in Cadena v. Pacesetter Corp. continue to have force and are harmonious with the post-2003 version of rule 51.

Matthew.  The Plaintiffs do not contend that the Court instructed the jury incorrectly regarding the standard for proving discrimination under the ADA and the Rehabilitation Act.  That standard, which involves a plaintiff proving intentional discrimination based solely on the basis of disability, is difficult to meet.

The NMPED could rightfully argue that its interpretation of the IDEA supplied its reason for not intervening in the local dispute sooner.  In light of the instructions which the Court read to the jury, the Court believes the jury had a clear picture of what it was deciding, and the limited role the IDEA played in this case.  Even if the NMPED was ultimately incorrect in its interpretation of its "responsibilities" and "abilities" under the IDEA, Motion at 9, the jury was not asked to decide what the NMPED's responsibilities and abilities were under the IDEA.  The jury was asked to decide, in part, whether the NMPED acted with discriminatory intent.  In that context, Jury Instruction No. 21 and NMPED's explanation of its understanding of IDEA law bore properly on that inquiry.

The Court therefore concludes that there was no plain error in the trial.  The limited discussion of the NMPED's interpretation of the IDEA was not a surprise to the Plaintiffs.  Some discussion of the IDEA was inevitable, given the theory upon which the Plaintiffs rested their claims.  The parties may not have received a perfect trial, but they received a fair trial.

**IT IS ORDERED** that the Plaintiffs' Motion for a New trial on Disability Discrimination Claims and Memorandum in Support is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gail Stewart
Laurel Nesbitt
Steven Grabber Attorney at Law, P.A.
Albuquerque, New Mexico

-- and --

Tara Ford
Pegasus Legal Services for Children
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Gerald Coppler
Coppler & Mannick, P.C.
Santa Fe, New Mexico

    *Attorneys for Defendant Board of Education of Tularosa Municipal Schools*

Andrew S. Montgomery
Jeffrey J. Wechsler
Montgomery & Andrews, P.A.
Santa Fe, New Mexico

    *Attorneys for Defendants New Mexico Public Education Department and Veronica Garcia*